UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Cr. No. 08-360 (RCL) |
| | : | |
| v. | : | |
| | : | |
| PAUL ALVIN SLOUGH, | : | |
| NICOLAS ABRAM SLATTEN, | : | |
| EVAN SHAWN LIBERTY, | : | |
| DUSTIN LAURENT HEARD, and | : | |
| DONALD WAYNE BALL, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S REPLY MEMORANDUM
REGARDING DEFENDANT SLATTEN'S STATUS AS A PARTY**

The government hereby replies to Defendant Slatten's Response to the Government's Memorandum regarding Defendant Slatten's Status as a Party (Dkt. #269).[1]

**I.   Introduction.**

The prior *Kastigar*[2] litigation spawned an anomaly: both the government and Slatten sought the same relief—dismissal of the indictment. Crucially, however, the parties sought dismissal for different reasons. The government sought dismissal because two pieces of evidence against Slatten presented to the grand jury appeared to have been tainted and we could not say with confidence that, in light of the untainted evidence against him, admission of the tainted evidence was harmless beyond a reasonable doubt. (This request was denied.) We, thereafter, intended to seek a new indictment.

---

[1] The government is filing a redacted copy of this pleading on the public record and an unredacted, sealed copy with the court and parties pursuant to paragraph 3 of the Court's April 13, 2009 Order (Dkt. #83).

[2] *Kastigar v. United States*, 406 U.S. 441 (1972).

Slatten, along with his co-defendants, made a much broader argument. They argued that the bulk of the evidence presented to the grand jury was tainted and also that the government had made impermissible and pervasive non-evidentiary use of the defendants' compelled statements. Judge Urbina, agreeing with Slatten and his co-defendants, found widespread evidentiary and non-evidentiary taint. He granted the defendants' motion to dismiss the indictment and denied the government's motion.

Left undisturbed, the ruling would have precluded the re-indictment of Slatten, as Judge Urbina's sweeping findings of taint took nearly all our evidence against Slatten (including the evidence that we believe is untainted) off the table. At oral argument of the government's appeal, we explained it this way: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. #264, Tab 5 at 10-11. In order to challenge Judge Urbina's broad findings of taint, the government had to appeal his judgment dismissing the indictment, even though we deemed the indictment to be defective, on a limited basis, with respect to Slatten.

Accordingly, the government appealed Judge Urbina's judgment, and the court of appeals vacated it. We did not, as Slatten seems to suggest, seek an advisory opinion. The indictment of Slatten, therefore, presently stands. He is a party to this case.

Notwithstanding Slatten's histrionics questioning the government's "integrity" (Dkt. #269 at 1) and accusing us of "fabrications" (*id.* at 24), our position regarding Slatten's status has not changed. And we followed the appropriate procedural path to reach the proper result.

II.   **Following proper appellate procedure, the government successfully appealed Judge Urbina's order dismissing the indictment, including its dismissal as to Slatten.**

During the prior *Kastigar* hearing the government concluded that a limited portion of the evidence against Slatten appeared to have been tainted by two witnesses' exposure to Slatten's compelled statement. The evidence involved the testimony of fellow Blackwater guards Matthew Murphy and Adam Frost. In the grand jury, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Since we could not be sure—beyond a reasonable doubt—that this testimony had not affected the grand jury's decision to return the indictment, we moved to dismiss the indictment without prejudice vis-à-vis Slatten (Dkt. #167).

As we made clear at the time, we intended to seek a new indictment against Slatten based on the remaining, non-tainted evidence, which included: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Slatten, along with his co-defendants, also moved to dismiss the indictment. They argued that virtually all of the evidence presented to the grand jury was tainted (Dkt. #159). Judge

Urbina granted the defendants' motion and explicitly denied the government's.[3] The decision to grant one motion and deny the other is, despite Slatten's attempt to gloss over it (Dkt. #269 at 7 n.4), significant. By granting the defendants' motion to dismiss, Judge Urbina found that great swaths of the government's evidence against Slatten was tainted—not just the testimony cited by the government                                    Most notably, Judge Urbina found that essentially all of Murphy's and Frost's testimony was tainted. That broad ruling would have precluded the government from seeking to re-indict Slatten.

The only way the government could challenge Judge Urbina's sweeping findings was to appeal his order. Unless a party appeals an order, it "may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary. [citation omitted]'" *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999); s*ee also Haley v. City of Boston*, 657 F.3d 39, 53 (1st Cir. 2011) ("Because the City never filed its own notice of appeal, its effort to make this favorable ruling even more favorable comes to naught."); *Lawhorn v. Allen*, 519 F.3d 1272, 1285 n.20 (11th Cir. 2008) ("a party who has not appealed may not bring an argument in opposition to a judgment or attack the judgment in any respect").

The Supreme Court explained this principle in *Greenlaw v. United States*, 554 U.S. 237

---

[3] On December 31, 2009, Judge Urbina ordered the following:

**ORDERED** that the defendants' motion to dismiss the indictment based on the government's violations of *Kastigar* and *Garrity* is **GRANTED**; and it is

**FURTHER ORDERED** that the indictment is dismissed against all defendants; and it is

**ORDERED** that the government's motion to dismiss the indictment against defendant Slatten without prejudice is **DENIED as moot**.

Dkt. #218 (emphasis in original). If Slatten had wanted Judge Urbina's order denying the government's motion to dismiss reversed, his proper recourse would have been to take a cross-appeal.

(2008). Over the government's objection, the district court imposed a sentence that was much less severe than required by law. *Id.* at 241. Although the government did not appeal, the defendant did, seeking to reduce his sentence. Without cross appealing, the government merely argued that the sentence should not be reduced because it was already lower than required by law. *Id.* at 242. The Eighth Circuit rejected the defendant's request to reduce his sentence and, instead, imposed the more severe sentence that should have been imposed in the first instance. *Id.*

The Supreme Court vacated that judgment noting, "[u]nder that unwritten but longstanding rule, an appellate court may not alter a judgment to benefit a nonappealing party." *Id.* at 244. *See also United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) ("we note that although Dyer's standing to challenge the search was debated before the district court, the government has not appealed the district court's determination that standing existed and has thus waived the issue"); *United States v. Luskin*, 16 F. App'x 255, 262 (4th Cir. 2001) ("If the Government had desired to challenge the propriety of the district court's . . . order granting § 2255 relief, it should have appealed from that order. Its failure to appeal precludes us from considering the merits of the court's order granting Luskin's § 2255 motion."); *United States v. Carolina Parachute Corp.*, 907 F.2d 1469, 1472 (4th Cir. 1990) (recognizing that under principles of collateral estoppel and res judicata, the government's failure to appeal from a final order precludes it from re-litigating issues resolved by the order).

Here, it was not possible to seek Slatten's re-indictment as long as Judge Urbina's

findings of widespread taint stood. We, therefore, appealed his order (Dkt. #235),[4] seeking to have it vacated. As this Court has explained,

> To "vacate," which is to "annul[ ] or set[ ] aside," is to void the effect of a prior legal determination—such as a judgment. *Black's* at 1584. A court might vacate a judgment for an error in instructing on an affirmative defense, or *it might vacate a judgment in light of a pervasive error that infected the entire proceedings*.

*United States, ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, 865 F.Supp.2d 1, 6 (D.D.C. 2011) (emphasis added). The government sought to have Judge Urbina's order vacated "in light of a pervasive error [misapplication of *Kastigar* principles] that infected the entire proceedings." *Id.*

The government pursued this course even though we believed (and still believe) that the original indictment was defective on a limited basis with respect to defendant Slatten. It was the only way to overcome Judge Urbina's sweeping findings, which otherwise precluded the re-indictment of Slatten. We had to follow a two-step process: first, we had to challenge Judge Urbina's findings of widespread taint by appealing his judgment; second, once Judge Urbina's findings were vacated, we would then be able to move to dismiss the indictment against Slatten and seek his re-indictment.[5]

Slatten's arguments to the contrary rest on mistakes of fact and of law. At the threshold, Slatten seems to think that, to the extent we included him in the appeal, it was only to get something akin to an advisory opinion (Dkt. #269 at 18). This is not true and, in any event,

---

[4] The order appealed from was described as follows: "By an Order and Memorandum Opinion dated December 31, 2009, the district court dismissed the indictment" (Dkt. #235). Notably the government appealed the order, not a "part thereof." Fed. R. App. P. 3(c)(1)(B).

[5] This point can be more starkly illustrated if one were to consider a situation where Slatten was the sole defendant. In that scenario, if the government moved to dismiss on a limited basis but the court dismissed finding widespread taint, it would still be necessary to appeal the dismissal if we intended to seek re-indictment. In other words, we would be required to appeal the dismissal of an indictment (against Slatten alone) that we considered deficient in order to preserve our ability to seek re-indictment.

would have been legally deficient. *See, e.g., In re North*, 842 F.2d 340, 342 (D.C. Cir. 1988) ("The request also falls in the category of a request for an advisory opinion, to which Article III courts do not respond."). As discussed above, Judge Urbina's order and broad findings—namely its disqualification of all of Murphy's and Frost's testimony—would stand vis-à-vis Slatten unless appealed by the government and vacated by the court of appeals.

As Slatten seems to see it, because the government separately moved to dismiss the indictment against him, we somehow did not appeal Judge Urbina's order of dismissal—and the court of appeals, for its part, thus did not vacate Judge Urbina's order as to Slatten. *See* Dkt. #269 at 18 ("the Government's stated understanding was that the dismissal of the indictment as to Slatten was not at issue in the appeal at all, but that its future steps regarding a possible re-indictment of Slatten could be affected by the Court of Appeals' ruling on the merits of the dismissal with respect to the other defendants"). But that, of course, is counterfactual: the government explicitly included Slatten in its appeal so that the (hoped for) reversal of Judge Urbina's judgment would apply to Slatten as well as the other defendants. Indeed, we had no choice: we had to appeal the judgment as to Slatten in order to have it "'vacat[ed],'" "'annul[ed] or set[ ] aside.'" *Miller*, 865 F.Supp.2d at 6.[6]

Slatten equates the government's concession that the current indictment of Slatten is defective because of the presentation to the grand jury of the testimony ▨▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ with acquiescence in Judge Urbina's sweeping

---

[6] Slatten's argument regarding law of the case (Dkt. #269 at 20) demonstrates precisely why the government had to and did appeal Judge Urbina's order vis-à-vis Slatten even though we recognized that the indictment was defective, albeit for a much more limited reason. Had we not appealed the judgment with respect to Slatten, Judge Urbina's findings vis-à-vis Slatten would have been the law of the case for him regardless of the result of an appeal regarding his co-defendants.

findings of extensive taint. *See generally* Dkt. #269 at 13, 14, 17. The two are not the same: the government recognized the former but disputed and appealed the latter. *Cf. Hofmann v. De Marchena Kaluche & Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011) ("As a general rule, a party has no standing to appeal an order or judgment to which he consented. A party may appeal such an order, however, if the order allegedly deviates from the terms of the parties' agreement . . ." [citations omitted]). Slatten's faulty mixing of these concepts forms the foundation for the bulk of his argument that the government did not appeal Judge Urbina's order and correspondingly that the court of appeals did not vacate that order. *See generally* Dkt. #269 at 8, 15, 16.

Furthermore, the government never stated an understanding that "the dismissal of the indictment as to Slatten was not at issue on appeal." On the contrary, the government believed that it must appeal the judgment dismissing the indictment against Slatten to make re-indictment feasible, understood that it did precisely that, and enunciated this position consistently throughout the appellate process. For example, the government specifically appealed the judgment dismissing the indictment against Slatten (Dkt. #235).[7] As we explained to the court of appeals,

> In dismissing the indictment against all defendants, the court dismissed as moot the government's motion to dismiss against Slatten. [citation omitted]. Although we are not revisiting our view that this indictment is insufficient as to Slatten, we hold open the prospect of reindicting him with untainted evidence not presented to this grand jury. *Slatten thus remains in this appeal* because the court's broad disqualification of evidence                                                       bears not only on whether the case may proceed against the other defendants, but on the viability of any future indictment of Slatten as well.

---

[7] Slatten's characterization of his inclusion in the notice of appeal as "nominal" (Dkt. #269 at 16), much like his implicit argument that he was essentially a shadow party to the appeal, has no basis in appellate practice or law.

Dkt. #264, Tab 3 at 51 n.19 (emphasis added). Similarly, in our appellate briefs the government asked that the indictment (not some subset thereof) be reinstated: "[The indictment] should be reinstated" (Gov. Brief at 124 (Tab 1)), and "For the reasons explained here and in our opening brief, the indictment should be reinstated." Gov. Reply Brief at 61 (Tab 2). Last, at oral argument the government explained that we had appealed the judgment with respect to Slatten to make re-indictment feasible. Dkt. #264, Tab 5 at 8-11.

Slatten attempts to support his allegation that the government did not challenge findings related to him by taking a comment made at oral argument out of context (Dkt. #269 at 18, 22). He cites the government's comment that the court of appeals need not "address any of the individual testimony against Slatten," while omitting the very next words out of the government's mouth: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. #264, Tab 5 at 10. Clearly the comment about "individual testimony" was a reference to the testimony ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—not to all testimony related to Slatten. This interpretation of the comment is consistent with the government's explicit statement in our brief that we were challenging Judge Urbina's findings as they affected testimony related to Slatten: "all of Frost's and Murphy's testimony, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ bears not only on whether the case may proceed against the other defendants, but on the viability of any future indictment of Slatten as well." Dkt. #264, Tab 3 at 51 n.19; *see also* Tab 2 at 13 (citing Murphy's and Frost's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (emphasis added).

Significantly, the discussion of testimony regarding ▓▓▓▓▓▓ exposes perhaps Slatten's most egregious misstatement of the record: his claim that all "the testimony of Frost

and Murphy against Slatten . . . ▮▮▮ (Dkt. #269 at 8). On the contrary, there is evidence regarding Slatten, independent of the witnesses' testimony ▮▮▮ which the government did not concede was tainted. That is why we appealed Judge Urbina's findings that virtually all the evidence regarding Slatten was tainted.[8]

### III. The Court of Appeals clearly directed that Judge Urbina's Order dismissing the indictment (against Slatten and the others) be vacated.

On June 6, 2012, the court of appeals issued its mandate in this case. In it, the court: "ORDERED and ADJUDGED that the judgment of the District Court appealed from in this cause is hereby vacated and the case is remanded, in accordance with the opinion of the court filed herein this date" (Dkt. #252).

> When remanding an action for further proceedings, a federal circuit court generally includes, along with any written opinion, a mandate directing the district court to take certain action. *See Black's Law Dictionary* 980 (8th ed. 2004) (defining "mandate" as "[a]n order from an appellate court directing a lower court to take a specified action."). "No principle of law is better established than the rule that a District Court is bound 'by the decree of the Court of Appeals and must carry it into execution, according to the mandate.'" [citations omitted]

*Miller*, 865 F.Supp.2d at 4-5.

---

[8] Similarly, the government's briefing (Dkt. #264, Tab 3 at 51 n.19) and above-referenced statement at oral argument undercut Slatten's repeated claim that on appeal the government asserted no errors related to him. *See* Dkt. #269 at 13, 14, 16 & n.9, 17. Slatten's list of excerpts from the government's briefs (Dkt. #269 at 19) are not to the contrary. They either deal with the harmlessness analysis (which does not apply to Slatten) or solely with the testimony ▮▮▮ which is concededly tainted.

**A.    The mandate is clear:  Judge Urbina's order dismissing the indictment was vacated.**

The mandate states, "the judgment of the District Court appealed from in this cause is hereby vacated and the case is remanded, in accordance with the opinion of the court filed herein this date" (Dkt. #252).  The judgment that had been "appealed from in this cause" was Judge Urbina's December 31, 2009 Order dismissing the indictment against all five defendants—including defendant Slatten.  *See* Notice of Appeal (Dkt. #235).  "Where the text of a mandate is clear, the district court is without authority to act contrary to those instructions."  *Miller*, 865 F.Supp.2d at 5.  Accordingly, the order dismissing the indictment against all five defendants was vacated.  This means that the indictment (also against all five defendants) was reinstated.

**B.    If the Court were to conclude that the mandate did not clearly require that Judge Urbina's order dismissing the indictment with respect to Slatten be vacated, the opinion demonstrates that the court of appeals intended that result.**

When confronted with an "ambiguous mandate, the Court turns to the Circuit Court's opinion to determine whether any further guidance is available."  *Miller*, 865 F.Supp.2d at 6.  Here, the opinion makes it quite clear that the court of appeals intended for its rulings to apply to Slatten.

In its opinion, the court of appeals stated that Judge Urbina "made a number of systemic errors based on an erroneous legal analysis."  *Slough*, 641 F.3d at 550.  Those errors, which included the finding of pervasive evidentiary and nonevidentiary taint, applied to defendant Slatten in equal force, as he himself has acknowledged.  Dkt. #264, Tab 2 at 5-6.  Nowhere in its opinion did the court of appeals state or even suggest that the "systemic errors" did not apply to Slatten.  In fact, one of Judge Urbina's central "systemic errors"—his finding that all of Frost's and Murphy's testimony was tainted (*Slough*, 641 F.3d at 550-51)—directly affects Slatten, as Frost and Murphy are two of the key witnesses against him.  Since the court of appeals clearly

11

meant its rulings to apply to Slatten, it must have intended that Judge Urbina's order vis-à-vis Slatten be vacated as well; otherwise, it would have merely been issuing an advisory opinion.

When the opinion is consulted, including its recognition that Slatten may be re-indicted (*id.* at 547), it is clear that the court of appeals did not intend to vacate Judge Urbina's order only with respect to certain defendants and not Slatten. It intended to vacate the order in its entirety.

**C.    If the Court were to conclude that neither the mandate nor the opinion clearly demonstrates that the court of appeals intended to vacate the order dismissing the indictment, the Court should still find that Slatten is a party to this case.**

If the court of appeals' mandate is unclear, even after consulting its opinion, this Court must determine what should be done:

> On remand, the job of the Court is to "scrupulously avoid implementing the mandate in a manner that exceeds, or limits, the appellate decision." [citation omitted] In this instance, where the mandate and opinion do not provide an unmistakable direction for further proceedings, the Court will not finely parse the applicable language to fashion a clear appellate instruction that the Circuit Court did not see fit to articulate itself.
>
> \*    \*    \*
>
> Having found no evidence in the Circuit Court's mandate that the Court *must* proceed in any particular manner, the Court now turns to whether it *should* limit the scope of a new trial.

*Miller*, 865 F.Supp.2d at 7-8 (emphasis added). To paraphrase the Court, if, after consulting the opinion, it still finds the court of appeals' mandate unclear, the question becomes whether Slatten "should" be a party to this matter. A review of the record shows that this question should be answered affirmatively.

First, to find that Slatten is not a party to this matter would be the equivalent of concluding that the court of appeals had, *sub silentio*, affirmed Judge Urbina's order dismissing the indictment against him. As discussed above, since the court of appeals faulted Judge Urbina's *Kastigar* analysis, there is no reason to believe that it intended to implicitly affirm a

12

portion of his order. Moreover, inasmuch as the court of appeals anticipated the re-indictment of Slatten, stating that he was only "out of the case for now," *Slough*, 641 F.3d at 547, it could not have intended to affirm Judge Urbina's order, which would have precluded the re-indictment of Slatten. Additionally, a *sub silentio* affirmance would be at odds with Slatten's own understanding of the situation. He sought an *en banc* rehearing of the panel decision—hardly the action of a victorious litigant (Dkt. #264, Tab 7).

Second, Slatten would suffer no recognizable prejudice as a party to this case, as he explicitly acknowledged in his petition to stay the mandate that he would not "suffer substantial harm" from the delay occasioned by the appellate process. Dkt. #264, Tab 2 at 7. On the other hand, a finding that Slatten is not a party to this matter would mean that Judge Urbina's erroneous *Kastigar* findings still apply to him, rendering it impossible to re-indict him. This would be completely contrary to the public interest and the intention of the court of appeals.

Third, finding that Slatten is not a party to this case would be a miscarriage of justice. He fully participated in the appellate process; for example: (1) he is listed as a party in appellees' joint brief, which his attorney signed (Dkt. #264, Tab 3), (2) he was represented at oral argument in this matter (*id.,* Tab 5); (3) he sought *en banc* review of the panel decision (*id.,* Tab 7); and (4) he joined the request to stay the mandate pending Supreme Court review (*id.,* Tab 2). Not surprisingly, Slatten fought to have Judge Urbina's favorable ruling affirmed, since an affirmance would have freed him from further prosecution. Having failed in that endeavor, Slatten now tries to distance himself from the appeal—his version of "heads I win, tails you lose." The Court should not countenance this.

Last, the Court should find that Slatten is a party because the only argument to the contrary is based on an error in the court of appeals' opinion: "We reverse and remand as to four

of the defendants; *the government itself moved to dismiss the indictment against Nicholas Slatten, without prejudice to possible later re-indictment, and the district court's grant of the motion has taken Slatten out of the case for now*." *Slough*, 641 F.3d at 547 (emphasis added). However, the district court did not grant the government's motion to dismiss the indictment against Slatten. *See* Judge Urbina's December 31, 2009 Order (Dkt. #218). The determination of Slatten's status as a party should not turn on a demonstrable error. In fact, the mandate rule does not even apply where "'a blatant error in the prior decision will, if uncorrected, result in a serious injustice'" (citation omitted). *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005). If this error were uncorrected, it would result in a "serious injustice." *See* Dkt. #264 at 11-12.[9]

### IV.     The government has consistently posited that Slatten was a party to the appeal.

Slatten's assertion that the government is estopped from taking the position that the court of appeals vacated Judge Urbina's order is a straw man argument (Dkt. #269 at 21-23). Slatten's straw man is built with claims that the government previously endorsed Judge Urbina's order dismissing the indictment and then suddenly changed its position. This is not true.

Initially, the government moved to dismiss the indictment against Slatten because we believed the tainted evidence was not harmless beyond a reasonable doubt (*i.e.*, the good did not outweigh the bad). Judge Urbina dismissed on different grounds; he found that all of the evidence as to Slatten was tainted. We appealed that dismissal of the indictment. And we specifically said that, although we were not revisiting our view that the good did not outweigh

---

[9]     Slatten's muddled discussion of the mandate rule does not establish that he is not a party. He confuses "mandate" with "opinion" (Dkt. #269 at 11-12) and incorrectly asserts that an opinion trumps a judgment. *Id.* at 12; s*ee* Dkt. #264 at 5. Most importantly, while Slatten sets forth the unassailable proposition that a district court must follow the court of appeals' mandate, his pleading begs the question as to what the mandate requires. He offers no convincing analysis to read the mandate as removing him from the case.

14

the bad, we were challenging Judge Urbina's decision to dismiss on different grounds—that nothing was good. Although we made a separate evidentiary harmlessness argument as to Slatten's four co-defendants (and asked the court of appeals to find the untainted evidence outweighed the tainted), we still asked for reinstatement of the indictment against Slatten. *See* Notice of Appeal (Dkt. #235); Tab 1 at 124; Tab 2 at 61. That was the only way to avoid having Judge Urbina's broad disqualification of all our evidence apply even if Slatten was re-indicted.

Although Slatten ignores inconvenient facts—(1) the notice of appeal, (2) being named as a party in both sides' briefs, (3) being represented at oral argument, (4) requesting *en banc* review of the panel decision, and (5) requesting a stay of the mandate—the fact of the matter is that he was a party to the government's appeal of Judge Urbina's order (dismissing the indictment against Slatten and the others) and the court of appeals vacated that order. *See* Notice of Appeal (Dkt. #235). This is consistent with both the position held by the government in December 2009 and the position held by the government today. The government's position has never changed.

**V.     Conclusion.**

Slatten is a party to this case. The court of appeals vacated Judge Urbina's order dismissing the indictment against Slatten and his co-defendants. He is, therefore, in the same procedural posture as his co-defendants. Moreover, any confusion regarding Slatten's status should be resolved in favor of finding that he is a party to this case.

                            Respectfully submitted,

                            RONALD C. MACHEN JR.
                            United States Attorney
                            D.C. Bar No. 447-889

By:      _____/s/_____
         Gregg A. Maisel
         Chief, National Security Section
         D.C. Bar No. 447-902
         gregg.maisel@usdoj.gov

By:      _____/s/_____
         John Crabb Jr.
         Assistant United States Attorney
         N.Y. Bar No. 2367670
         john.d.crabb@usdoj.gov

By:      _____/s/_____
         David Mudd
         Special Assistant United States Attorney
         D.C. Bar No. 995154
         david.mudd2@usdoj.gov

         National Security Section
         U.S. Attorney's Office
         555 4th Street, NW, 11th Floor
         Washington, D.C.  20530
         (202) 252-7785