**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **1:08-cr-00360-RCL** |
| | ) | |
| **PAUL ALVIN SLOUGH,** | ) | |
| **NICHOLAS ABRAM SLATTEN,** | ) | |
| **EVAN SHAWN LIBERTY, and** | ) | |
| **DUSTIN LAURENT HEARD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

**DEFENDANTS' RESPONSE TO THE GOVERNMENT'S**
**SUBMISSION REGARDING LOGISTICS OF _KASTIGAR_ HEARING**

Defendants agree with the government that a _Kastigar_ hearing is necessary in this case.

Defendants also agree that the government should file its pre-hearing _Kastigar_ brief and

appendices on November 18, 2013.  However, the Court should give Defendants sufficient time

to evaluate the voluminous record the government plans to file and submit a responsive brief,

which will narrow the issues in dispute and lead to a more efficient and orderly _Kastigar_ hearing.

Defendants cannot do so if the _Kastigar_ hearing is held on December 2, 2013, a mere two weeks

after the government proposes to file its brief.  Instead, Defendants respectfully request that the

Court schedule the _Kastigar_ hearing for February 3, 2014, or as soon thereafter as the Court is

available (_see_ Dkt. No. 306), and permit them to file a responsive pre-hearing brief on

January 15, 2014, well in advance of the _Kastigar_ hearing.

**I.  THE COURT SHOULD ORDER AND SCHEDULE A _KASTIGAR_ HEARING**

Defendants agree with the government that a _Kastigar_ hearing is required in this case.  In

previous litigation, it was established that Defendants gave statements that "are conceded to have

been compelled within the meaning of" *Garrity v. New Jersey*, 385 U.S. 493 (1967). *United States v. Slough*, 641 F.3d 544, 547 (D.C. Cir. 2011). Because Defendants were subsequently prosecuted, the *Kastigar* framework applies and the government must prove that "all of the evidence it proposes to use was derived from legitimate independent sources," *United States v. North*, 910 F.2d 843, 854 (D.C. Cir. 1990) ("*North I*"), and that "no use whatsoever was made of any of the immunized testimony either by the witness or by the [prosecutor] in questioning the witness," *id.* at 872.

It is also undisputed that the government presented in the grand jury, and intends to present at trial, testimony from certain Blackwater witnesses who admittedly were exposed to Defendants' compelled *Garrity* statements. *See* Government's Submission Regarding Logistics of *Kastigar* Hearing (Dkt. No. 305) ("Gov't Sub.") at 2 (acknowledging that the government will present charts for each witness whose grand jury testimony "overlaps with the defendants' compelled statements"). The government has also provided Defendants with filter interviews of Iraqi witnesses, whose statements the FBI case agent summarized for the grand jury, indicating that some of those witnesses may have been exposed to Defendants' compelled statements, directly or indirectly.

These circumstances are more than sufficient to establish a "'firm foundation' resting on more than 'suspicion'" that the government's case may rest on evidence directly or derivatively tainted by exposure to Defendants' compelled statements. *United States v. North*, 920 F.2d 940, 949 n.9 (D.C. Cir. 1990) ("*North II*"). Accordingly, the Court should order and schedule a *Kastigar* hearing in this matter.

## II.     PRE-HEARING BRIEFING AND TIMING OF *KASTIGAR* HEARING

Defendants agree that the government should be required to file a pre-hearing brief setting forth its view of the "taint status of all evidence that was presented to the grand jury," including appendices containing the grand jury record and the government's view of the extent of any overlap between witness testimony and Defendants' compelled statements, as well as any independent basis for that testimony.  Gov't Sub. at 1-2 (describing proposed brief and appendices).  The government represents that its proposed appendices will consist of roughly 3,500 pages of transcripts and other materials.  *Id.*

However, Defendants would like a meaningful opportunity to respond to the government's brief.  Defendants are likely to take different positions than the government on the government's burden of proof and how the government may satisfy that burden.  It is possible, however, that Defendants will agree with the government that there is an independent source for certain witness testimony and decline to challenge it, thereby narrowing the issues in dispute and streamlining the *Kastigar* hearing.  The answers to these questions will depend on the evidence and argument set forth in the government's brief.

Defendants need more than two weeks to analyze the government's brief and voluminous appendices, draft a responsive brief, and prepare for the *Kastigar* hearing.  For instance, the government represents that it will highlight the entire 2,500 page grand jury record with its view of what testimony overlaps with Defendants' compelled statements and present the allegedly independent bases for that testimony.  Defendants must analyze the same voluminous record (a significant portion of which Defendants do not possess yet, *see* Dkt. No. 306) against 250 pages of filter team witness interview FBI 302s, 150 pages of filter grand jury testimony, and 550 pages of prior *Kastigar* testimony to determine (1) whether any additional testimony not

identified by the government overlaps with the compelled statements, and (2) whether in fact there is an independent basis for the testimony sufficient to overcome the taint. Defendants cannot conduct this analysis and file a responsive brief in time for the Court to give it fair consideration prior to a December 2, 2013 *Kastigar* hearing.

Accordingly, Defendants respectfully ask the Court to order the government to file its *Kastigar* pre-hearing brief on November 18, 2013, to order Defendants to file a responsive brief on January 15, 2014, and to schedule the *Kastigar* hearing for February 3, 2014, or as soon thereafter as the Court's schedule permits.[1]

## III.   SCOPE OF *KASTIGAR* HEARING

Based on the preliminary positions in the government's submission, the parties appear to have significant differences of opinion regarding the scope and nature of the *Kastigar* hearing in this matter.

First, the *Kastigar* hearing should occur before trial and should address all evidence that the government intends to rely upon in this case. The Court should reject the government's request to limit the *Kastigar* hearing to evidence presented to the grand jury, and to later conduct, during or even after trial, an unspecified number of "limited *Kastigar* hearings" to address additional trial evidence. Gov't Sub. at 3. Although the timing of a *Kastigar* hearing is within the Court's sound discretion, "a pre-trial hearing is the most common choice." *See North I*, 910 F.2d at 872-73. "The logic behind this approach is obvious." *United States v. Slough*, No. 08-

---

[1] The Court should reject the government's request that the Court "adjust[] accordingly" the filing date of its pre-hearing brief based on when the Court reschedules the *Kastigar* hearing. Gov't Sub. at 2. The government represents that it "will be prepared" to file its brief by November 18, 2013, and should be held to this deadline. *Id.* The only purpose that would be served by the government's request is tactical gamesmanship—*i.e.*, to preserve an artificial two-week period between the government's brief and the hearing and deny Defendants adequate time to prepare.

CR-360, Mem. Op. at 22 (Sept. 8, 2009) (Urbina, J.) (Dkt. No. 230).  As a matter of judicial

economy, it makes "little sense to force the defendants, the court and jurors to endure the cost

and uncertainty of what could be a lengthy trial while the validity of the indictment remains in

question." *Id.*  Moreover, "[e]ven if the indictment is not dismissed, a pretrial hearing provides

the parties guidance on what evidence will be inadmissible at trial on Fifth Amendment grounds,

thus minimizing the risk that the trial will be tainted with evidence derived from immunized

testimony." *Id.*

     Thus, contrary to the government's suggestion, Gov't Sub. at 3, the "most efficient"

course would be to hold a single *Kastigar* hearing on all evidence well in advance of trial.  The

government's proposed piecemeal approach, in which the government would recall the grand

jury witnesses at a later date to attempt to clear their trial evidence, would involve substantial

duplication, inconvenience to the witnesses, and prejudice to Defendants.  Defendants need to

know, prior to trial, what evidence is in or out.  Requiring Defendants to conduct mini-*Kastigar*

hearings during trial would be burdensome and interfere with Defendants' ability to defend

themselves at trial.[2]  Holding mini-*Kastigar* hearings during trial would also dramatically

increase the length of the trial and place greater burdens on jurors who will face extended periods

of inactivity during the mid-trial *Kastigar* proceedings.

     Second, where, as here, the exposure of witnesses to compelled statements is conceded or

in reasonable dispute, *Kastigar* entitles Defendants to an adversarial hearing.  *North II*, 920 F.2d

at 943 ("Most important, the defendant is entitled to a *hearing* at which he would be able to

challenge the prosecution's case for non-use.") (emphasis in original).  The government cannot

---

[2] The government, on the other hand, has a filter team that would conduct any *Kastigar* hearings while the trial team is able to focus exclusively on the trial.

satisfy its burden through hearsay submissions of what its witnesses have said or would say. *See North I*, 910 F.2d at 866, 868; *United States v. Poindexter*, 951 F.2d 369, 375-76 (D.C. Cir. 1991). Rather, Defendants are constitutionally entitled to adversarial testing of government witnesses—to probe their recollection through cross-examination and test whether it is actually untainted and wholly independent as the prosecutors claim. *See North II*, 920 F.2d at 943-44; *Poindexter*, 951 F.2d at 375-76. In the absence of adversarial testing, the government may not rely on its admonishments that witnesses testify from their personal knowledge to disprove taint. *See North I*, 910 F.2d at 868 ("[T]he District Court's reliance on warnings to witnesses (to avoid testifying as to anything they had learned from North's immunized testimony) was not sufficient to ensure that North's testimony was not used."); *see also Poindexter*, 951 F.2d at 375-76 (district court's warning to witness not to "go into other people's testimony. Just from what you know of your own knowledge" was insufficient). Likewise, without the opportunity for cross-examination, the government cannot refute taint through the submission of transcripts or summaries, because any taint in a witness's recollection would not necessarily appear on the face of the transcript. *See North I*, 910 F.2d at 867-68; *see also North II*, 920 F.2d at 943-44. Adversarial testing is indispensable to proving both the effectiveness of the government's warnings and the sterility of a facially-untainted transcript.[3]

Thus, Defendants disagree with the government's suggestion that it can satisfy its *Kastigar* burden regarding the testimony of 34 Iraqi witnesses whose statements were

---

[3] The need for adversarial testing was made abundantly clear by the testimony of Matthew Murphy, a former Blackwater security guard, at the previous *Kastigar* hearing. Murphy testified at the *Kastigar* hearing that his testimony was based solely on his personal recollection despite having been exposed to Defendants' compelled statements. Under cross-examination, however, Murphy acknowledged that in fact a significant aspect of his grand jury testimony was influenced by exposure to Defendant Slough's statement. *United States v. Slough*, 677 F. Supp. 2d 112, 146 (D.D.C. 2009), *vacated,* 641 F.3d 544 (D.C. Cir. 2011).

summarized in the grand jury by the FBI case agent, as well as two other unidentified witnesses,

by presenting the hearsay testimony of the FBI filter agent.  Gov't Sub. at 4.  Any Iraqi witness

who may have been exposed to the compelled statements, directly or indirectly, and whose

testimony overlaps with or was motivated by those statements, must be screened for taint

through the crucible of cross-examination.

Likewise, Defendants disagree with the government's suggestion that it need not present

any live testimony from witnesses who testified at the previous *Kastigar* hearing, and instead can

simply "mak[e] their prior *Kastigar* hearing testimony part of the record here."  Gov't Sub. at 4.

This suggestion ignores the fact that these witnesses have been interviewed by the current filter

and trial teams since the prior *Kastigar* hearing and have provided new information that must be

tested through the adversarial process.[4]

In sum, given the logic of evaluating all of the government's evidence for taint at a single

pre-trial *Kastigar* hearing and the requirement of adversarial testing, Defendants have serious

---

[4] For instance, the government interviewed Matthew Murphy at least twice since his prior *Kastigar* testimony.  Murphy was not interviewed by any previous filter team.  The current filter team, however, interviewed Murphy for two days (resulting in a 10-page FBI 302) regarding the extent of his exposure to tainted information and how it may have affected his testimony and recollection of the relevant events.  The current trial team also interviewed Murphy (resulting in a 15-page FBI 302).  Murphy acknowledged under cross-examination during the previous *Kastigar* hearing that significant portions of his testimony were tainted and influenced by exposure to Defendants' immunized statements.  *See Slough*, 677 F. Supp. 2d at 144-48.  Yet Murphy appears to have provided information to the current trial team about at least one of the topics he previously admitted was tainted.  Moreover, the current filter team redacted tainted information from Murphy's prior grand jury testimony before it was read to the new grand jury.  These redactions were voluminous and covered significantly more testimony than redactions by the original filter team.  Defendants are entitled to explore through the adversarial process, based on the newly disclosed filter interview, whether the government sufficiently redacted all tainted material from Murphy's grand jury testimony and the validity of Murphy's claims of an independent source for his testimony.  Similar issues exist with each of the witnesses who testified at the original *Kastigar* hearing.

doubts that the government will be able to satisfy its *Kastigar* burden "in less than two weeks."

Gov't Sub. at 1, 5.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to order the government

to file its *Kastigar* pre-hearing brief on November 18, 2013, to order Defendants to file a

responsive brief on January 15, 2014, and to schedule the *Kastigar* hearing for February 3, 2014,

or as soon thereafter as the Court's schedule permits.

Respectfully submitted,


By: /s/ Brian M. Heberlig

Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Defendant Paul A. Slough*

Thomas G. Connolly (No. 420416)
Steven A. Fredley (No. 484794)
Wiltshire & Grannis LLP
1200 Eighteenth Street N.W., Suite 1200
Washington, D.C. 20036
(202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*

William Coffield (No. 431126)
Coffield Law Group LLP
1330 Connecticut Ave. N.W., Suite 220
Washington, D.C.  20036
(202) 429-4799
*Counsel for Defendant Evan S. Liberty*

David Schertler (No. 367203)
Danny Onorato (No. 480043)
Schertler & Onorato, LLP
575 Seventh Street N.W., Suite 300 South
Washington, D.C.  20004
(202) 628-4199
*Counsel for Defendant Dustin L. Heard*


Dated:  October 24, 2013