**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No.  1:08-cr-360-RCL |
| | ) | |
| **PAUL ALVIN SLOUGH,** | ) | |
| **NICHOLAS ABRAM SLATTEN,** | ) | |
| **EVAN SHAWN LIBERTY, and** | ) | |
| **DUSTIN LAURENT HEARD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
## FOR FAILURE TO STATE AN OFFENSE,
## OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS

Defendants, through counsel, respectfully move this Court, under Federal Rule of

Criminal Procedure 12(b)(3)(B), to dismiss the Indictment in its entirety for failure to state an

offense under the Military Extraterritorial Jurisdiction Act, 18 U.S.C. §§ 3261(a) and 3267(1).

In the alternative, Defendants respectfully move for a bill of particulars under Federal

Rule of Criminal Procedure 7(f).

Defendants respectfully request oral argument on the motion.  A supporting

memorandum of points and authorities and proposed Order are filed herewith.

Respectfully submitted,


By: ___/s/ *Brian M. Heberlig*___
Brian M. Heberlig (No. 455381)          Thomas G. Connolly (No. 420416)
Michael J. Baratz (No. 480607)          Steven A. Fredley (No. 484794)
Bruce C. Bishop (No. 437225)            Wiltshire & Grannis LLP
Linda C. Bailey (No. 985081)            1200 Eighteenth Street N.W.
Scott P. Armstrong (No. 993851)         Suite 1200
Steptoe & Johnson LLP                   Washington, D.C. 20036
1330 Connecticut Ave. N.W.              (202) 730-1300
Washington, D.C.  20036                 *Counsel for Defendant Nicholas A. Slatten*
(202) 429-3000
*Counsel for Defendant Paul A. Slough*


William Coffield (No. 431126)           David Schertler (No. 367203)
Coffield Law Group LLP                  Danny Onorato (No. 480043)
1330 Connecticut Ave. N.W. Suite 220    Schertler & Onorato, LLP
Washington, D.C.  20036                 575 7th Street, N.W. – Suite 300 South
 (202) 429-4799                         Washington, D.C.  20004
*Counsel for Defendant Evan S. Liberty* (202) 628-4199
                                        *Counsel for Defendant Dustin L. Heard*


Dated:  February 21, 2014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February 2014, I caused the foregoing

Defendants' Motion to Dismiss the Indictment for Failure to State An Offense, or in the

Alternative for a Bill of Particulars; Memorandum of Points and Authorities in Support; and

Proposed Order, to be filed with the Clerk of the Court using the CM/ECF system.  The CM/ECF

system will send notification of such filing to:

Anthony Asuncion
T. Patrick Martin
Christopher Kavanaugh
John Crabb Jr.
David Mudd
United States Attorney's Office
for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

  /s/ *Brian M. Heberlig*
Brian M. Heberlig

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  1:08-cr-360-RCL |
| | ) | |
| PAUL ALVIN SLOUGH, | ) | |
| NICHOLAS ABRAM SLATTEN, | ) | |
| EVAN SHAWN LIBERTY, and | ) | |
| DUSTIN LAURENT HEARD | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPPORT OF DEFENDANTS' MOTION TO DISMISS
## THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE,
## OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS

Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Linda C. Bailey (No. 985081)
Scott P. Armstrong (No. 993851)
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Defendant Paul A. Slough*

Thomas G. Connolly (No. 420416)
Steven A. Fredley (No. 484794)
Wiltshire & Grannis LLP
1200 Eighteenth Street N.W.
Suite 1200
Washington, D.C. 20036
(202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*

William Coffield (No. 431126)
Coffield Law Group LLP
1330 Connecticut Ave. N.W. Suite 220
Washington, D.C.  20036
 (202) 429-4799
*Counsel for Defendant Evan S. Liberty*

David Schertler (No. 367203)
Danny Onorato (No. 480043)
Schertler & Onorato, LLP
575 7th Street, N.W. – Suite 300 South
Washington, D.C.  20004
(202) 628-4199
*Counsel for Defendant Dustin L. Heard*

Dated:  February 21, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

THE INDICTMENT ................................................................................................................... 3

ARGUMENT .............................................................................................................................. 5

I.       Applicable Legal Principles ........................................................................................... 5

II.      Because the Indictment States No Facts Showing Defendants' Employment "Related to Supporting the Mission of the Department of Defense," It Fails to State an Offense Under MEJA ............................................................................................................................... 9

         A.       The government's prior statements on MEJA are insufficient to give notice or substitute for a proper indictment .......................................................................... 12

         B.       The government's grand jury presentation similarly fails to give notice or substitute for a proper indictment .......................................................................... 14

III.     In the Alternative, the Court Should Grant a Bill of Particulars ...................................... 16

CONCLUSION ........................................................................................................................... 19

# TABLE OF AUTHORITIES[1]

**Page(s)**

CASES

*Bousley v. United States*, 523 U.S. 614 (1998)........................................................7

*Fleisher v. United States*, 302 U.S. 218 (1937) (per curiam) ..........................................6

*Kiobel v. Royal Dutch Petrol. Co.*, 133 S. Ct. 1659 (2013)................................................4

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010)....................................4

*Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64 (1804).........................................4

*\* Russell v. United States*, 369 U.S. 749 (1962) ....................................................... *passim*

*Stirone v. United States*, 361 U.S. 212 (1960) ...............................................................8

*United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013) ........................................4

*United States v. Anderson*, 441 F. Supp. 2d 15 (D.D.C. 2006) ....................................17

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000)................................17

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (per curiam) .......................................17

*United States v. Bowman*, 260 U.S. 94 (1922).....................................................4

*\* United States v. Burr*, 25 F. Cas. 55 (C.C.D. Va. 1807)...............................................7, 8, 12, 18

*United States v. Cabrera-Teran*, 168 F.3d 141 (5th Cir. 1999), *abrogated on other grounds by United States v. Cotton*, 535 U.S. 625, 631 (2002) ...............................................13

*United States v. Conlon*, 628 F.2d 150 (D.C. Cir. 1980)...........................................6, 7

*United States v. Dale*, 782 F. Supp. 615 (D.D.C. 1991)................................................7

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988) ..............................................17

*United States v. DeGroote*, 122 F.R.D. 131 (W.D.N.Y. 1988) ....................................17

*United States v. Green*, 414 F.2d 1174 (D.C. Cir. 1969)...............................................17

*\* United States v. Hess*, 124 U.S. 483 (1888)...............................................6, 7, 8, 10

---

[1] Cases chiefly relied upon are marked with an asterisk.

* *United States v. Hitt*, 249 F.3d 1010 (D.C. Cir. 2001)....................................................8, 10, 13

*United States v. Mandujano*, 425 U.S. 564 (1976) ................................................................8

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) ........................................................16

* *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976) (per curiam)...................................6, 16

*United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004)..........................................................7, 10

*United States v. Sanford Ltd.*, 841 F. Supp. 2d 309 (D.D.C. 2012)....................................18

* *United States v. Sunia*, 643 F. Supp. 2d 51 (D.D.C. 2009)................................................ *passim*

*United States v. Superior Growers Supply*, 982 F.2d 173 (6th Cir. 1992) .............................6, 10

* *United States v. Thomas*, 444 F.2d 919 (D.C. Cir. 1971) ...................................................6, 9

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998) ..........................................................17, 18

*Wood v. Georgia*, 370 U.S. 375 (1962) ................................................................................8

## ACTS

Omnibus Diplomatic Security and Antiterrorism Act of 1986, Pub. L. No. 99-399,
    22 U.S.C. §§ 4801 *et seq.*......................................................................................................11

## CONSTITUTIONS

U.S. Const. amend. V..................................................................................................................8, 12, 13

U.S. Const. amend. VI ...............................................................................................................7, 12, 13

## STATUTES

18 U.S.C. § 924(c) ...................................................................................................................4

18 U.S.C. § 1112......................................................................................................................4

18 U.S.C. § 1113......................................................................................................................4

18 U.S.C. § 3261(a)(1)..............................................................................................................1, 3, 4, 9

18 U.S.C. § 3267(1)(A)(ii)(II) .................................................................................................1, 4, 5, 9, 10

18 U.S.C.§ 3267(1)(B), (C) ......................................................................................................5

22 U.S.C. § 4802(a), (c)(1) ......................................................................................................11

**R**ULES

Fed. R. Crim. P. 7(c)(1) ...................................................................................1, 2, 3, 5

Fed. R. Crim. P. 12(b)(3) .........................................................................................2, 3

Fed. R. Crim. P. 29 ......................................................................................................2

**R**ESTATEMENTS

R**ESTATEMENT** (T**HIRD**) **OF** F**OREIGN** R**ELATIONS** L**AW** §§ 402-03 ...................................................4

**O**THER **A**UTHORITIES

Government Accountability Office, *REBULIDING IRAQ: Actions Needed to Improve
    Use of Private Security Providers*, Report to Congressional Committees, GAO-05-
    737 (July 2005) .................................................................................................11

United States Department of State, *Report of the Secretary of State's Panel on Personal
    Protective Services in Iraq* (October 2007) ..........................................................11

Letter from Dep. Sec. Def. Gordon England to then-Senator Barack Obama, Dec. 7, 2007 ........11

Letter from Dep. Sec. Def. Gordon England to Rep. David Price, Sept. 27, 2007........................11

**INTRODUCTION**

All of the offenses charged in the Indictment (manslaughter, attempted manslaughter, and a mandatory 30-year firearms offense for using government-issued automatic weapons) were allegedly committed in Baghdad, Iraq.  The manslaughter, attempted manslaughter, and firearm statutes do not apply of their own force to overseas conduct.  Thus, the Indictment states prosecutable offenses only if it states offenses under the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. § 3261 *et seq.*

To constitute an offense under MEJA, Defendants' charged conduct must have been committed *"while employed by . . . the Armed Forces* outside the United States."  18 U.S.C. § 3261(a)(1) (emphasis added).  Defendants were not employees of the U.S. military—they were subcontracted by the State Department to provide diplomatic security for U.S. Embassy protectees in Baghdad.  Under MEJA, the term "employed by . . . the Armed Forces outside the United States" reaches such non-Department of Defense contractors *only* "to the extent such employment relates to supporting the mission of the Department of Defense overseas."  18 U.S.C. § 3267(1)(A)(ii)(II).  If Defendants' contract employment by the Department of State did *not* "relate[] to supporting the mission of the Department of Defense overseas," the alleged conduct charged in the Indictment is not an offense under MEJA (§ 3261(a)), or otherwise under the U.S. Code.

To state an offense under the United States Constitution and the Federal Rules of Criminal Procedure, the Indictment must contain "a plain, concise, and definite written statement *of the essential facts constituting the offense charged*."  Fed. R. Crim. P. 7(c)(1) (emphasis added); *see, e.g.*, *Russell v. United States*, 369 U.S. 749, 765 (1962).  The Indictment contains *no*

facts showing that Defendants' contract employment by the State Department related to supporting the mission of the Defense Department—the most critical element of an offense under MEJA.  Instead, the Indictment simply parrots the generic statutory definition ("which employment related to supporting the mission of the United States Department of Defense in the Republic of Iraq," Ind. ¶ 1.a (ECF No. 304, Oct. 17, 2013)), without stating a single fact showing or even suggesting that statutory language is satisfied in this case.

Because the Indictment does not allege any fact showing the essential element required to state any prosecutable offense for alleged overseas conduct, the Indictment fails to state an offense—both under Rule 7(c)(1), which requires a statement of the essential facts constituting the offenses charged, and under the United States Constitution, which requires notice sufficiently specific (a) to apprise Defendants of the charges they must defend, and (b) to identify the offense conduct for which the grand jury found probable cause to charge.  Because the Indictment's generic quotation of the statute fails to meet these requirements, the Indictment must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B).[2]

---

[2] This motion to dismiss for failure to state an offense is distinct from Defendants' Motion to Dismiss for Lack of Jurisdiction that was filed at the outset of the case (ECF No. 34, Jan. 13, 2009).  Defendants' jurisdictional motion contended that the Court lacked jurisdiction over the charged extraterritorial offenses as a matter of law, based on undisputed facts.  *See* Mem. Supp. Def. Mot. to Dismiss for Lack of Jurisdiction at 9-12 (ECF No. 34-2).  Responding that the relevant facts *were* in dispute, the government declined to make a proffer of the facts that it contended supported MEJA jurisdiction, and argued the question was one for trial, that could not be resolved on a pretrial motion to dismiss.  Gov. Opp. to Def. Mot. to Dismiss for Lack of Jurisdiction, at 9-15, 32 (ECF No. 51, Jan. 27, 2009).  Judge Urbina agreed the question could not be resolved on a pretrial motion, ruling that it must await resolution at trial, where it could be raised in a motion for judgment of acquittal under Rule 29.  Mot. Hrg. Tr., 02/17/2009, at 45-47 (ECF No. 127, filed Sept. 4, 2009).  Defendants do not challenge that ruling here.

Unlike the 2009 jurisdictional motion, this motion to dismiss for failure to state an offense does not depend on an assertion of undisputed facts or a government factual proffer.  Instead, it challenges the sufficiency of the Indictment on its face, where the Indictment does not

(Continued …)

2

"[A] bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770. Nonetheless, should the Court decline to dismiss the Indictment, Defendants respectfully request in the alternative that the Court order the government to furnish a bill of particulars with regard to the Indictment's conclusory assertion that Defendants' employment "related to supporting the mission of the Department of Defense." Ind. ¶ 1.a. Such a bill is necessary to apprise Defendants of what they must meet at trial and to prevent unfair surprise.

## THE INDICTMENT

The Indictment (ECF No. 304) charges Nicholas Slatten with fourteen counts of manslaughter (Counts 1-14, Ind. at 3-4), and each remaining Defendant with thirteen counts of manslaughter (Counts 2-14, Ind. at 3-4). The Indictment charges Paul Slough with eighteen counts of attempted manslaughter (Counts 15-32, Ind. at 4-5), and each remaining Defendant with sixteen counts of attempted manslaughter (Counts 15-30, Ind. at 4-5). The Indictment also charges each Defendant with one count of using a firearm during and in relation to a crime of violence—a charge that carries a mandatory 30-year minimum sentence—for using government-issued machine guns in a war zone (Count 33, Ind. at 6). Aiding and abetting charges accompany Counts 2-33. (Ind. at 4-6).

These charges arise out of a firefight on September 16, 2007 at the Nisur Square traffic circle in Baghdad, Iraq. Defendants, subcontractors employed by the State Department to provide protective services for State Department civilians and guests, became involved in the

---

allege facts sufficient to state an offense under MEJA (18 U.S.C. § 3261(a)), Rule 7(c)(1), and the Fifth and Sixth Amendments. Defendants filed a similar motion in October 2009 (ECF No. 146), which was still pending when Judge Urbina dismissed the original indictment on *Kastigar* grounds on December 31, 2009.

firefight in which a number of Iraqi civilians were allegedly killed or injured.[3]

The manslaughter, attempted manslaughter, and firearm statutes invoked in the Indictment[4] do not, of their own force, apply to conduct committed outside the United States.[5] The government acknowledged at the outset of this prosecution that the charged conduct in Iraq could be prosecuted only under MEJA.[6]  Accordingly, the Indictment cites MEJA, 18 U.S.C. § 3261(a)(1), in the charging paragraph of each Count,[7] and invokes MEJA at the outset, alleging that Defendants "were employed by the Armed Forces outside the United States, as defined in 18 U.S.C. § 3267(1)."  Ind. ¶ 1.

That section of MEJA defines "employed by the Armed Forces outside the United States" to mean, as relevant here, "(A) employed as— . . . (ii) a contractor (including a subcontractor at any tier) of— (I) the Department of Defense . . . ; or (II) any other Federal agency, . . . *to the*

---

[3] The relevant factual background is described in more detail in Defendants' Motion to Dismiss for Lack of Jurisdiction, at 1-8 (ECF No. 34-2).

[4] 18 U.S.C. § 1112 (manslaughter); *id.* § 1113 (attempted manslaughter); *id.* § 924(c) (using or carrying a firearm).

[5] The Supreme Court has long recognized that crimes against the person fall exclusively within the jurisdiction of the sovereign governing the territorial locus of the crime, unless Congress clearly states otherwise.  *United States v. Bowman*, 260 U.S. 94, 97-98 (1922).  In addition to the longstanding presumption against extraterritorial application of U.S. law absent clear congressional statement, *see, e.g.*, *Kiobel v. Royal Dutch Petrol. Co.*, 133 S. Ct. 1659, 1664 (2013); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, __, 130 S. Ct. 2869, 2877-78 (2010), international law limits the right of nations to enforce their criminal laws outside their borders. *See, e.g.*, *United States v. Ali*, 718 F.3d 929, 934-35 (D.C. Cir. 2013) (citing *Morrison,* the Restatement (Third) of Foreign Relations Law §§ 402-03, and *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804), "the so-called "*Charming Betsy* canon"); *see also Bowman*, 260 U.S. at 97.

[6] Gov. Opp. to Def. Mot. to Dismiss for Lack of Jurisdiction, at 5-6 (ECF No. 51, Jan. 27, 2009) (acknowledging that "[p]rior to MEJA, 'many crimes, such as sexual assault, arson, larceny, embezzlement, and fraud, did not have extraterritorial effect'") (citation omitted).

[7] Ind. at 3 (Count One); *id.* at 4 (Counts Two through Fourteen); *id.* at 5 (Counts Fifteen through Thirty); *id.* (Counts Thirty-One and Thirty-Two); *id.* at 6 (Count Thirty-Three).

*extent such employment relates to supporting the mission of the Department of Defense*

*overseas*." 18 U.S.C. § 3267(1)(A)(ii)(II) (emphasis added). The contractors must also be

present outside the United States in connection with such employment, and not be nationals or

ordinarily resident in the host nation. *Id.* § 3267(1)(B), (C).

Here, the Indictment alleges with specificity what is not in dispute: that Defendants were

employed by Blackwater Worldwide, under a contract with the United States *Department of*

*State*, to provide personal security services in Iraq (Ind. ¶ 1.a); that they were present and

residing outside the United States in connection with that employment (Ind. ¶ 1.b); and that they

were not Iraqi nationals or residents (Ind. ¶ 1.c). With respect to the critical element determining

whether Defendants were "employed by the Armed Forces," however—the element that

determines whether the alleged conduct violates U.S. law, and the only element that is in

dispute—the Indictment merely quotes the generic language of the statute: "which employment

related to supporting the mission of the United States Department of Defense in the Republic of

Iraq." Ind. ¶ 1.a.

Other than naming the country of Iraq, this quotation of the bare statutory language states

a pure legal conclusion, not a factual allegation. It contains no facts at all stating or even

suggesting that Defendants' contract employment as security guards for the *Department of State*

related to supporting the mission of the *Department of Defense* in Iraq.

## ARGUMENT

### I.  **Applicable Legal Principles**

Rule 7(c) of the Federal Rules of Criminal Procedure requires that "[t]he indictment . . .

must be a plain, concise, and definite written statement of *the essential facts constituting the*

*offense charged*." Fed. R. Crim. P. 7(c)(1) (emphasis added). "[A]ll the material facts and

circumstances embraced in the definition of the offence must be stated, or the indictment will be defective." *United States v. Hess*, 124 U.S. 483, 486 (1888).

Where, as here, an indictment tracks the generic language of the statute, it will state an offense *only* if it is "accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hess*, 124 U.S. at 487; *accord Russell v. United States*, 369 U.S. 749, 765 (1962) (quoting *Hess*); *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (per curiam).  "[I]t is not sufficient that the indictment . . . charge the offence in the same generic terms as in the definition; but it must state the species; it must descend to particulars." *Russell*, 369 U.S. at 765 (citation omitted).[8]  Simply put, for an indictment to be legally sufficient, the Constitution requires that "*facts are to be stated,* not conclusions of law alone." *Hess*, 124 U.S. at 487 (emphasis added); *accord United States v. Sunia*, 643 F. Supp. 2d 51, 71 (D.D.C. 2009) ("'[A]s nearly every circuit court of appeals has expressly held, 'a valid indictment must . . . *allege the essential facts constituting the offense*'") (emphasis in original, alteration marks omitted) (collecting authorities); *id.* at 81 ("To adequately charge [an offense,] . . . the government must do more than simply recite the language of the statute without comment.  It must also allege facts supporting the [statutory elements of the offense]." ) (following *Nance*).[9]

---

[8] *Accord Nance*, 533 F.2d at 701; *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971) (citation omitted); *see also United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980) (statutory language "must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged"); *United States v. Sunia*, 643 F. Supp. 2d 51, 81 (D.D.C. 2009).

[9] *See also United States v. Superior Growers Supply*, 982 F.2d 173, 177 (6th Cir. 1992) ("[t]o be legally sufficient, the indictment must assert *facts* which in law constitute an offense; and which, if proved, *would establish prima facie the defendant's commission of that crime*.") (citing *Fleisher v. United States*, 302 U.S. 218 (1937) (per curiam)) (emphasis added).

Specifying the factual allegations making up the charged offenses is necessary to protect a defendant's Fifth and Sixth Amendment rights to notice of the charges against him.  *See Russell*, 369 U.S. at 760-61.  The Sixth Amendment requires that a defendant be informed of the "nature and cause of the accusation." U.S. Const. amend. VI.  The Fifth Amendment's guarantees of Due Process and of Indictment by Grand Jury also require written notice of the charge against the defendant.  *See* U.S. Const. amend. V; *Russell*, 369 U.S. at 760-61; *see also Bousley v. United States*, 523 U.S. 614, 618 (1998) (real notice of the true nature of the charge is the first requirement of due process).  Thus, an indictment must contain factual specifics sufficient to inform the defendant not only of the elements of the offense charged, but also of "what he must be prepared to meet" at trial.  *Russell*, 369 U.S. at 763 (citation and quotation marks omitted); *see also Hess*, 124 U.S. at 487 (first object of indictment is to furnish the accused with "such a description of the charge against him as will enable him to make his defense").[10]  Requiring written notice of the charges fixes the target against which the accused

_____

[10] *Accord United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004); *Conlon*, 628 F.2d at 155; *United States v. Dale*, 782 F. Supp. 615, 621 (D.D.C. 1991).

These principles have been fundamental at least since Chief Judge Marshall presided over the trial of Aaron Burr:

> A description of the particular manner in which the [crime was committed] seems, also, essential to enable the accused to make his defense.  The law does not expect a man to be prepared to defend every act of his life which may suddenly and without notice alleged against him.  In common justice, the particular fact with which he is charged ought to be stated . . . .  That clause in the constitution, too, which says that in all criminal prosecutions the accused shall enjoy the right 'to be informed of the nature and cause of the accusation,' is considered as having a direct bearing on this point.  It secures to him such information as will enable him to prepare for his defence.  It seems, then, to be perfectly clear that it would not be sufficient for an indictment to allege generally that the accused had levied war against the United States.  The charge must be more particularly specified by laying what is termed an overt act of levying war.

(Continued …)

7

must defend, preventing the prosecution from shifting the nature of the charges up through or during trial, or even on appeal.  *See Russell*, 369 U.S. at 766.  The indictment must also "inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had."  *Id.* at 768 & n.15; *accord Hess*, 124 U.S. at 486.  "*For this, facts are to be stated; not conclusions of law alone.*"  *Hess*, 124 U.S. at 486 (emphasis added, citation omitted).

The Fifth Amendment also entitles the defendant to be tried only upon "indictment of a Grand Jury," *i.e.*, only for an offense for which the grand jury has found probable cause for prosecution.  U.S. Const. amend. 5.[11]  Requiring that the indictment specify the *facts* constituting the offense guarantees that the offense that is tried is the same one for which the grand jury indicted.  *See, e.g.*, *Russell*, 369 U.S. at 770; *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) ("the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury") (citation omitted); *Sunia*, 643 F. Supp. 2d at 77.[12]  If the facts constituting every element of the offense are not included, it is possible

---

*United States v. Burr*, 25 F. Cas. 55, 170 (C.C.D. Va. 1807).

[11] "Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . ."  *Wood v. Georgia*, 370 U.S. 375, 390 (1962).  The grand jury "provide[s] a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance." *United States v. Mandujano*, 425 U.S. 564, 571 (1976) (plurality); *see also Russell*, 369 U.S. at 761. "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."  *Russell*, 369 U.S. at 771 (citation omitted) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960); *accord Sunia*, 643 F. Supp. 2d at 77.

[12] *See also Burr*, 25 F. Cas. at 172 ("[T]he [defendant] can only be convicted on the overt act laid in the indictment.  With respect to this prosecution, it is as if no other overt act existed.").

the government could try the defendant, and the trial jury could convict him, for conduct that was not presented to the grand jury. *See Russell*, 369 U.S. at 770 (quoted *infra* 13); *accord Thomas*, 444 F.2d at 922-23; *Sunia*, 643 F. Supp.2d at 77.   If the *facts* necessary for conviction are not fixed in writing before trial, then the prosecutors would be free to shift theories up through and even during trial, in search of a viable set of facts to satisfy the statutory element, regardless of whether those facts were presented to the grand jury. *See Russell*, 369 U.S. at 768; *id.* at 770-71 (noting if a defendant can be convicted on something other than what is contained in the indictment, the protection of the Fifth Amendment's Indictment Clause "in reality no longer exists").

**II.    Because the Indictment States No Facts Showing Defendants' Employment "Related to Supporting the Mission of the Department of Defense," It Fails to State an Offense Under MEJA**

Here, it is undisputed that Defendants' alleged conduct in Iraq constitutes a federal offense *only* if it was committed "while employed by . . . the Armed Forces outside the United States."  18 U.S.C. § 3261(a)(1).   MEJA's definition of "employed by the Armed Forces outside the United States," in turn, makes clear that Defendants' conduct is prosecutable only "to the extent [their] employment [as State Department subcontractors] relate[d] to supporting the mission of the Department of Defense overseas."  18 U.S.C. § 3267(1)(A)(ii)(II).[13]  Thus, under

---

[13] Section 3267 provides in relevant part:

As used in this chapter:

(1)  The term "employed by the Armed Forces outside the United States" means—

(A)  employed as—

. . .

(ii)  a contractor (including a subcontractor at any tier) of—

(Continued …)

the explicit terms of the statute defining the charged federal offense, the conduct alleged in the Indictment violates U.S. law only if, and "to the extent that," Defendants' contract employment "relate[d] to supporting the mission of the Department of Defense."  *Id.*

The Indictment, however, contains no facts whatsoever showing Defendants' contract employment by the Department of State "relate[d] to supporting the mission of the Department of Defense."  The Indictment's quotation of the statutory language, Ind. ¶ 1.a, states only a conclusion of law, not a factual allegation.  *See Hess*, 124 U.S. at 487 ("[F]acts are to be stated, not conclusions of law alone.").  It does not allege any fact stating or even suggesting that Defendants' contract employment to provide personal security to State Department protectees "relate[d] to supporting the mission of the Department of Defense."  The complete absence of any such factual allegations fails to apprise Defendants of what they must defend at trial, *see, e.g., Russell*, 369 U.S. at 763, 765; *Hess*, 124 U.S. at 486; *Pickett*, 353 F.3d at 67, and fails to ensure that the factual offenses the government will attempt to prove at trial are the same ones for which the grand jury found probable cause to indict.  *See Russell*, 369 U.S. at 770; *Hitt*, 249 F.3d at 1016; *Sunia*, 643 F. Supp. 2d at 77.  The Indictment's mere statutory quotation also does not "inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction."  *Hess*, 124 U.S. at 487; *accord Russell*, 369 U.S. at 768 & n.15.[14]

---

(I)  the Department of Defense . . . ; or

(II)  any other Federal agency . . . to the extent such employment relates to supporting the mission of the Department of Defense overseas;

(B)  present or residing outside the United States in connection with such employment; and

(C)  not a national of or ordinarily resident in the host nation.

[14] *See also Superior Growers*, 982 F.2d at 177 ("To be legally sufficient, the indictment

(Continued …)

The Indictment's failure to allege any facts showing that Defendants' employment related to supporting the Department of Defense's mission leaves Defendants at a loss as to what they must meet at trial on this element—the element that determines whether the charged conduct is prosecutable under United States law.  Without specification in the Indictment of alleged facts showing that Defendants' *State Department* employment related to supporting the *Department of Defense's* mission,[15] Defendants have no notice of what the government will attempt to prove at

_____

must assert *facts* which in law constitute an offense; and which, if proved, *would establish prima facie the defendant's commission of that crime.*").

[15] Diplomatic security—the function for which Defendants were contracted by the State Department—is, by statute, a State Department function.  *See* 22 U.S.C. § 4802(a), (c)(1); *see generally* Omnibus Diplomatic Security and Antiterrorism Act of 1986, Pub. L. No. 99-399, 22 U.S.C. §§ 4801 *et seq.*; U.S. Department of State Foreign Affairs Manual Volume 12— Diplomatic Security at 2 (12 FAM 010).

Providing diplomatic security—either generally or in Baghdad in Fall 2007—is not a mission of the Department of Defense.  *See* Government Accountability Office, *REBUILDING IRAQ: Actions Needed to Improve Use of Private Security Providers*, Report to Congressional Committees, GAO-05-737, at 10-12 (July 2005) ("[I]t is not part of the U.S. military's stated mission to provide security to these organizations," *i.e.*, "U.S. civilian government agencies") (ECF No. 34-22, Jan. 13, 2009); United States Department of State, *Report of the Secretary of State's Panel on Personal Protective Services in Iraq*, at 5, Principal Finding No. 6 (October 2007) ("The U.S. Military in Iraq does not consider it feasible or desirable under existing conditions in Iraq for the Department of Defense to take on responsibility for provision of PPS [personal protective services] support to the Embassy.") (ECF No. 34-23, Jan. 13, 2009); Letter from Dep. Sec. Def. Gordon England to then-Senator Barack Obama, Dec. 7, 2007, at 3 (USAO_009046) ("I am informed that these private security contractors were not engaged in employment supporting the DoD mission overseas") (ECF No. 56-3, Feb. 3, 2009); Letter from Dep. Sec. Def. Gordon England to Rep. David Price, Sept. 27, 2007, at 2 (USAO_009042) ("I am informed that the Blackwater USA private security contractors working under a Department of State contract were not engaged in employment that was in support of the DoD mission.") (ECF No. 56-4, Feb. 3, 2009).

This difference in the missions of the State and Defense Departments is discussed in further detail in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss for Lack of Jurisdiction, at 18-23 (ECF No. 34-2, Jan. 13, 2009), and the Reply Memorandum in Support of Defendants' Motion to Dismiss for Lack of Jurisdiction, at 13-23 (ECF No. 56, Feb. 3, 2009).

trial on this outcome-determinative point.[16]   The Indictment's quotation of the bare statutory language, bereft of facts, has left the government free to search for supporting facts right up through trial, and to vary its theory as necessary depending on what the facts show.  *See Russell*, 369 U.S. at 766, 770.  Trial by surprise, however, is not permitted.  The very purpose of requiring written notice of the charges is to fix the charges and allow the accused to prepare a defense.

A.     **The government's prior statements on MEJA are insufficient to give notice or substitute for a proper indictment**

In response to Defendants' motion to dismiss the original indictment for lack of jurisdiction, the government declined to commit itself to any fixed set of factual allegations that would satisfy MEJA.  The government vaguely alluded to a hodgepodge of possible theories, including the strained contention that if any of the Defendants had ever performed any action while in Iraq that somehow benefited the military in some way—for instance, riding in a convoy guarding a military official, even though Defendants' contract was to guard State Department protectees—that that Defendant's contract work thereby related to supporting the mission of the Department of Defense.[17]   If that is the government's theory, the government must allege what actions each Defendant took to provide such support, so that each Defendant may investigate and prepare to defend himself against such a charge.  "The law does not expect a man to be prepared to defend every act of his life which may be suddenly and without notice alleged against him.  In

---

[16] The original lead prosecutor emphasized this point in opposition to Defendants' motion to dismiss for lack of jurisdiction: "With all due respect to [defense counsel], he doesn't know what the government's got.  We haven't had trial yet, and we haven't given a complete proffer as to what our evidence would be in this case."  Mot. Hrg. Tr., 02/17/2009, at 28 (ECF No. 127).

[17] *See* Gov. Opp. to Mot. to Dismiss, at 33-34 (ECF No. 51, Jan. 27, 2009).

common justice, the particular fact with which he is charged ought to be stated." *United States v. Burr*, 25 F. Cas. 55, 170 (C.C.D. Va. 1807) (Marshall, C.J.).  Similarly, Due Process and the Sixth Amendment do not permit the government to quote the statute, promise to satisfy it in some unspecified way, and then search for evidence and a viable theory of proof right up until the time of trial.  *See Russell*, 369 U.S. at 768, 770-71.

Apart from allowing preparation of the defense, requiring allegation of facts in the Indictment is necessary to protect Defendants' right to be held to answer only for charges indicted by the grand jury.  *See Russell*, 369 U.S. at 760-61, 768, 770-71; *Hitt*, 249 F.3d at 1016; *Sunia*, 643 F. Supp. 2d at 77.[18]  By declining to specify the facts that it contends will satisfy MEJA, the government seeks to continue to sift the evidence right up until trial (or even during trial), in search of facts showing some way by which Defendants' work related to supporting the Department of Defense.  But whatever the government might find (if anything), there is no way to know that the grand jury heard those facts and found probable cause to charge MEJA offenses based on them, as those facts are not included in the Indictment on which the grand jury voted:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.  For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell*, 369 U.S. at 770 (citation omitted); *accord Sunia*, 643 F. Supp. 2d at 77.

---

[18] *Accord, e.g.*, *United States v. Cabrera-Teran*, 168 F.3d 141, 143, 145 (5th Cir. 1999) (following *Russell* and collecting Fourth, Fifth, and Eighth Circuit cases), *abrogated on other grounds by United States v. Cotton*, 535 U.S. 625, 631 (2002).

The indictment is not a placeholder that the grand jury may approve with blanks left for prosecutors to fill in later. *See Russell*, 369 U.S. at 770-71. The government may not be left "free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial." *Id.* at 768. Rather, the Fifth and Sixth Amendments require that the *facts* that are charged—the facts constituting every element of the offense—be fixed at the outset, in a charging document *voted by the grand jury*. *See id.* at 760-62, 768, 770; *Sunia*, 643 F. Supp. 2d at 77.

**B.    The government's grand jury presentation similarly fails to give notice or substitute for a proper indictment**

In this case, because of the *Kastigar* proceedings, the government has disclosed the complete grand jury record, including the government's summary of the evidence, legal instructions, and presentation of the draft indictment to the grand jury. That record similarly fails to show the factual basis for the Indictment's conclusory quotation of the MEJA statute, Ind. ¶ 1.a. Even if the grand jury record did show the facts on which the grand jury found probable cause to charge this element, which it does not, the grand jury record could not substitute for a proper indictment.

The government's summary of the evidence that it believed supported an indictment, which consumed 18 pages of transcript, detailed the alleged actions of each Defendant throughout the incident, and summarized the testimony of more than a dozen grand jury witnesses.[19] That summary of the evidence contained *not one fact* concerning Defendants' contract employment for the State Department, the mission of the Department of Defense in Iraq,

---

[19] The transcript was filed as Gov. App. B-121 in the *Kastigar* proceedings. The summary appears at pages 13-31.

or whether the former related to supporting the latter.  *Id.*  After that summary of evidence, the prosecutors instructed the grand jury on the law governing the charges.  Although the prosecutors gave an instruction on MEJA's requirement that the contractors' employment must have "related to supporting the mission of the Department of Defense overseas," that legal instruction did not refer to a single fact that might support that element.[20]

To be sure, the prosecutors told the grand jury that their summary of evidence was not exhaustive, and that it was the grand jury's recollection of the evidence that controlled.  *Id.* at 14.  And the prosecutors may even have asked some individual witnesses occasional offhand questions about whether a witness thought some particular part of his work at some time related to the Department of Defense's mission.  Any such testimony about isolated actions by other witnesses does not establish that *Defendants' contract employment to provide diplomatic security, including their functions on September 16, 2007, when they were assigned to secure an evacuation route for a State Department protectee after a car bomb attack*, related to supporting the Department of Defense's mission.  Nothing in the grand jury record gives notice of facts voted by the grand jury with respect to MEJA, or substitutes for a proper indictment.

The absence of *any* facts showing that Defendants' contract work related to supporting the mission of the Department of Defense—either in the Indictment or in the grand jury record— fails to fix the charge against Defendants, fails to give notice of what they must defend at trial on this element, and fails to assure that the facts the government seeks to prove at trial on this element were found and voted by the grand jury.  The Indictment fundamentally fails to allege

---

[20] *Id.* at 39-40.  Defendants do not concede the accuracy of any of the prosecutors' legal instructions to the grand jury, and reserve all challenges on legal instructions for litigation in the context of the parties' requests to charge the trial jury.

any facts satisfying this critical element or establishing what the accused must defend against at trial.  Because this failure goes to the viability of every count of the Indictment, the Indictment fails to state a federal offense on every count, and must be dismissed in its entirety.

### III.    In the Alternative, the Court Should Grant a Bill of Particulars

It has long been "a settled rule that a bill of particulars cannot save an invalid indictment."  *Russell*, 369 U.S. at 770 (collecting authority); *accord Nance*, 533 F.2d at 701.  Because a bill of particulars is drafted by the prosecutors, not the grand jury, it cannot assure that the allegations contained in it are those on which the grand jury voted to indict.  *Russell*, 369 U.S. at 770 (quoted *supra* at 13); *accord Sunia*, 643 F. Supp. 2d at 77.

Nonetheless, if the Court declines to dismiss the Indictment for failure to state an offense under MEJA, the Court should order the government to furnish a bill of particulars specifying the facts that support the Indictment's allegation that Defendants' "employment related to supporting the mission of the Department of Defense overseas," Ind. ¶ 1.a.  For the reasons discussed above, particularization of the Indictment's conclusory quotation of MEJA's statutory language is necessary in order to apprise Defendants of what they must be prepared to meet at trial, allowing them to prepare their defense and preventing unfair surprise.  *See United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006).  Whether to require a bill of particulars is committed to the Court's discretion.  *Id.*

Defendants previously sought particularization of this allegation in their Motion for a Bill of Particulars, ¶ 1, filed on January 20, 2009 (ECF No. 40).  Judge Urbina denied the request, on the grounds that "the government has produced over 2,500 pages of documents concerning the contract between Blackwater Worldwide and the Department of State," giving the

defense adequate notice of the jurisdictional basis for the prosecution.  Status Hrg. Tr., 8/6/2009, at 9-10 (ECF No. 126, filed Sept. 4, 2009).

"The oral ruling of a trial judge is not immutable, and is of course subject to further reflection, reconsideration[,] and change."  *United States v. Green*, 414 F.2d 1174, 1175 (D.C. Cir. 1969), *quoted with approval in Sunia*, 463 F. Supp. 2d at 81.  Despite the general admonition against revisiting decisions already litigated, the Court may reconsider earlier interlocutory decisions as justice requires or for other good reasons.  *Sunia*, 643 F. Supp. 2d at 60-61 (reviewing standards).  This Court should reconsider Judge Urbina's oral denial of a bill of particulars, and should order particularization of the MEJA allegation contained in Paragraph 1.a of the Indictment, for three reasons.

*First*, it is well established that discovery—and in particular voluminous document discovery—is not a substitute for a straightforward identification of what the prosecution intends to prove at trial.  *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam); *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988); *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) ("[I]t is not a sufficient response to a motion for a bill of particulars to point to . . . a governmental open file policy."); *United States v. Trie*, 21 F. Supp. 2d 7, 21 n.12 (D.D.C. 1998).[21]  Indeed, voluminous document discovery is often "precisely what necessitates a bill of particulars," *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *see Bortnovsky*, 820 F.2d at 574-75.  Defendants "should not have to waste precious pre-

---

[21] *See also United States v. DeGroote*, 122 F.R.D. 131, 143 (W.D.N.Y. 1988) ("While the practice of voluntary discovery is to be encouraged . . . it may not substitute for a straightforward identification in a bill of essential matters that the defendant needs to avoid surprise at trial . . . .") (citation and internal quotation marks omitted).

trial preparation time guessing which [allegations] [they have] to defend against . . . when the

government knows precisely the [facts] on which it intends to rely and can easily provide the

information." *Trie*, 21 F. Supp. 2d at 21.

*Second*, discovery, unlike a bill of particulars, does not fix the allegations against which

the accused must defend at trial.  "A bill of particulars is designed to limit and define the

government's case."  *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012)

(citation and ellipsis omitted).  Without fixed notice in a bill of particulars, the defendant would

be required to defend against a moving target: the prosecution would be "free to roam at large—

to shift its theory . . . so as to take advantage of each passing vicissitude of the trial and appeal."

*Russell*, 369 U.S. at 768; *accord id.* at 770-71; *see also Burr*, 25 F. Cas. at 170 (quoted in note

10, *supra*).

*Finally*, the discovery cited by Judge Urbina—the 2,500 pages related to Blackwater

Worldwide's contract with the State Department to provide diplomatic security in Baghdad—

does nothing to illuminate the Indictment's allegation that Defendants' employment "related to

supporting the mission of the Department of Defense."  As discussed above and in Defendants'

prior motion to dismiss for lack of jurisdiction, all of the documents relating to Blackwater's

contract (and Defendants' subcontracts) to provide diplomatic security to the State Department

establish that Defendants' employment supported the *State Department*'s mission, and did *not*

relate to supporting the mission of the Department of Defense.  The Indictment's allegation of

support for the Department of Defense does *not* rest on the State Department contracts; instead,

the government apparently intends to attempt prove its MEJA allegation *despite* those contracts,

based on *other* facts.  *See* Mot. Hrg. Tr., 2/17/2009, at 31-32 (ECF No. 127) (Prosecutor: "So it's

not simply a matter of looking at the contract. . . .  Congress could have said 'contract.'  It could have said 'whose contract relates to supporting.'  They didn't; they said 'employment.'  They used a broader term.").  Though the government hinted at relying on other factors such as Defendants' job descriptions, historical activities, and agreements between the State and Defense Departments, *id.* at 32, it refused to commit itself, or reveal how it intended to prove the MEJA element at trial.  *See id.* at 28 (Prosecutor: "[The defense] doesn't know what the government's got.  We haven't had trial yet, and we haven't given a complete proffer as to what our evidence would be in this case.").

Whether or not Defendants' "employment related to supporting the mission of the Department of Defense" determines whether the conduct alleged in the Indictment constitutes a federal criminal offense.  Trial by surprise on this critical element is not permitted: the defense is entitled to know what it must be prepared to meet at trial, in order to prepare its defense.  The basis for the allegation is not contained in the Indictment, and it is not contained in the discovery regarding the State Department personal protective services contract, as Judge Urbina assumed in his initial denial of a bill of particulars.  If this Court does not dismiss the Indictment for failure to state an offense, it should order the government to provide a bill of particulars specifying the facts it intends to prove to satisfy this case-dispositive element of MEJA.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Indictment in its entirety for failure to state an offense under the Military Extraterritorial Jurisdiction Act.

In the alternative, the Court should order the government to provide a bill of particulars specifying the factual allegations underlying the conclusory allegation in Paragraph 1.a of the

Indictment that Defendants' employment related to supporting the mission of the Department of

Defense overseas.

Respectfully submitted,

By:   */s/ Brian M. Heberlig*

Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Linda C. Bailey (No. 985081)
Scott P. Armstrong (No. 993851)
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Defendant Paul A. Slough*

Thomas G. Connolly (No. 420416)
Steven A. Fredley (No. 484794)
Wiltshire & Grannis LLP
1200 Eighteenth Street N.W.
Suite 1200
Washington, D.C. 20036
(202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*

William Coffield (No. 431126)
Coffield Law Group LLP
1330 Connecticut Ave. N.W. Suite 220
Washington, D.C.  20036
 (202) 429-4799
*Counsel for Defendant Evan S. Liberty*

David Schertler (No. 367203)
Danny Onorato (No. 480043)
Schertler & Onorato, LLP
575 7th Street, N.W. – Suite 300 South
Washington, D.C.  20004
(202) 628-4199
*Counsel for Defendant Dustin L. Heard*

Dated:  February 21, 2014