## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Cr. No. 08-360 (RCL)** |
| | : | |
| **v.** | : | |
| | : | |
| **PAUL ALVIN SLOUGH,** | : | |
| **NICOLAS ABRAM SLATTEN,** | : | |
| **EVAN SHAWN LIBERTY, and** | : | |
| **DUSTIN LAURENT HEARD,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT
### SLATTEN'S MOTION FOR STAY OF TRIAL

The government opposes defendant Nicolas Slatten's request that the trial in this matter be stayed pending resolution of his petition for a writ of mandamus.  [Dkt. #395].

**I.      Trial in this matter should not be delayed.**

In a brazen attempt to circumvent the proscription against an interlocutory appeal of a statute of limitations ruling, Slatten has taken the extraordinary step of seeking a writ of mandamus.  Slatten has also asked that trial be delayed while his frivolous petition is resolved. If the trial in this matter were delayed pending resolution of Slatten's mandamus petition, the government would suffer substantial prejudice, while Slatten would suffer no cognizable harm if this matter proceeds as scheduled.   Accordingly, Slatten's desperate ploy should not be countenanced by granting his request for a stay of the trial.

**II.      Procedural Posture.**

On December 4, 2008, a grand jury empanelled in this district returned an indictment charging Slatten, along with four others, with 14 counts of voluntary manslaughter, in violation

of 18 U.S.C. §§ 1112, 2, and 3261(a)(1) (the Military Extraterritorial Jurisdiction Act ("MEJA")); 20 counts of attempted manslaughter, in violation of 18 U.S.C. §§ 1113, 2, and 3261(a)(1); and one count of using and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c), 2, and 3261(a)(1). [Dkt. #1]. Thereafter, Slatten and his co-defendants moved to dismiss the indictment, alleging sweeping *Kastigar*[1] violations. [Dkt. #159]. On December 31, 2009, the district court granted Slatten's motion (and denied the government's motion to dismiss on very limited grounds). [Dkt. #218]. On January 29, 2010, the government appealed the district court's December 31, 2009, order dismissing the indictment, [Dkt. #235], and on April 22, 2011, the court of appeals reversed the district court.

On October 17, 2013, a different grand jury impaneled in this district returned a 33-count superseding indictment. Among others, it charges Slatten with 14 counts of voluntary manslaughter, in violation of 18 U.S.C. §§ 1112, 2, and 3261(a)(1) (MEJA)); 15 counts of attempted manslaughter, in violation of 18 U.S.C. §§ 1113, 2, and 3261(a)(1); and one count of using and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c), 2, and 3261(a)(1).

Slatten moved to dismiss the superseding indictment on November 18, 2013, claiming that it was barred by the statute of limitations [Dkt. #315], and on February 18, 2014, the Court denied that motion. [Dkt. #388]. Attempting to bypass well-established legal precedent that a denial of a motion to dismiss on statute of limitations grounds is not eligible for an interlocutory appeal, on March 6, 2014, Slatten sought a writ of mandamus [USCA #14-3007; Dkt.

---

[1]     *Kastigar v. United States*, 406 U.S. 441 (1972).

#1482617].  Concurrently, he has asked that trial in this matter be stayed pending resolution of his mandamus petition.

### III.    Slatten has not satisfied the criteria for the issuance of a stay.

District courts have "inherent power" to stay their own proceedings incident to the power to control their dockets.  *See Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).[2]  In exercising this power, *Landis* instructs district courts to "weigh competing interests and maintain an even balance."  *Id.* at 255.  While affirming the power of the district courts to stay proceedings, the Supreme Court cautioned that if a stay "will work damage to some one else," it may be unwarranted absent a showing of "hardship or inequity."  *Id.*  Here, a stay would "damage" the government, as it may imperil the ability to prosecute this matter (*see* §III.C, *infra*), while Slatten would suffer no cognizable "hardship" if his request for a stay is denied (*see* §III.B*, infra).*  Accordingly, when the Court "weigh[s] competing interests and maintain[s] an even balance" it will be clear that Slatten's motion for a stay should be denied.

Moreover, even if the factors cited by Slatten were considered, his request for a stay should still be denied.

### A.    Slatten is unlikely to succeed on his petition for a writ of mandamus.

Mandamus is an extraordinary remedy.  It is appropriate only where the petitioner's right

---

[2]    In his request for a stay, Slatten has relied on the standard for evaluating requests for a stay pending appeal – not pending a petition for a writ of mandamus.  Slatten states that when "reviewing a motion for a stay pending a petition for a writ of mandamus, the Court considers the same factors as a stay pending appeal . . . ."  [Dkt. #395 at 2].  The case relied upon by Slatten for this proposition, however, does not address a request for a stay pending the resolution of a petition for a writ of mandamus.  *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842 (D.C. Cir. 1977) (addressing stay pending appeal and containing no reference whatsoever to a petition for a writ of mandamus).

to relief is "clear and indisputable." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 729 (D.C. Cir. 2012) ("Because the writ [citation omitted] is a '"drastic and extraordinary" remedy,"' [citations omitted] 'only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify [its] invocation'""). Slatten cannot meet that standard. In fact, as set forth below, the Court ruled properly.

In order for Slatten to succeed on his petition for a writ of mandamus, the court of appeals must agree with his claim that it had affirmed Judge Urbina's order dismissing the indictment against him. As noted by this Court, that would be contrary to both the letter and the spirit of the court of appeals' mandate. [Dkt. #388 at 2, 3]. It is very unlikely that the court of appeals, after finding that Judge Urbina committed systemic errors, nevertheless, affirmed his decision with respect to Slatten. In turn, it is unlikely that Slatten will succeed on his petition.

As set forth in our pleadings addressing Slatten's status as a party in this case, Slatten's claim that the court of appeals affirmed, *sub silentio*, Judge Urbina's dismissal of the indictment with respect to him, alone, is baseless. *See generally* Dkt. #264, at 8-12; Dkt. #270, at 3-14. As noted in our prior briefs, the statement by the court of appeals that Slatten was "out of the case for now," *United States v. Slough*, 641 F.3d 544, 547 (D.C. Cir. 2011), was based on the factually incorrect premise that Judge Urbina had granted the government's motion to dismiss vis-à-vis Slatten, which he had actually denied as moot. *See* Dkt. #264, at 10 & n.5; Dkt. #270, at 3-4. Despite this factual error, it is easy to understand why the court of appeals believed Slatten was temporarily out of the case. The court of appeals was remanding for the district court to determine, with respect to the then-existing indictment, "as to each defendant, what

4

evidence—if any—the government presented against him that was tainted as to him, and, in the case of any such presentation, whether in light of the entire record the government had shown it to have been harmless beyond a reasonable doubt." *Slough*, 641 F.3d at 554-55.

Of course, the government had already conceded that it was not going to defend the then-existing indictment as to Slatten. That concession, however, did not effectuate a self-executing dismissal of the indictment. Rather, Fed. R. Crim. P. 48(a) requires the government to make a motion to dismiss an indictment and for the court to grant it before an indictment is actually dismissed. Fed. R. Crim. P. 48(a) advisory committee's note (1944 Adoption) ("The first sentence of this rule will change existing law. The common-law rule that the public prosecutor may enter a *nolle prosequi* in his discretion, without any action by the court, prevails in the Federal courts. [citation omitted] This provision will permit the filing of a *nolle prosequi* only by leave of court."); *see also United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975) ("From this, it seems altogether proper to say that the phrase 'by leave of court' in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives."); *United States v. N. V. Nederlandsche Combinatie Voor Chemische Industrie*, 75 F.R.D. 473, 475 (S.D.N.Y. 1977) ("An indictment having been returned, however, the decision to terminate the prosecution is not exclusively within the province of the executive. The 'leave of court' requirement in Rule 48(a) was clearly intended to change the then existing law that the prosecutor could dismiss a case solely in his discretion without any action by the court."). The government had previously made such a motion, and it had been denied as moot by Judge

Urbina.  The broader defense motion to dismiss the indictment had been granted by Judge Urbina, appealed by the government, and the district court's dismissal was then reversed by the court of appeals.

Presumably, once the case was remanded, had the government chosen to defend the previous indictment vis-à-vis the other defendants, as the court of appeals had contemplated, we would have filed a new motion to dismiss the indictment vis-à-vis Slatten.  That never happened because, instead, the government announced at the first post-appeal status hearing, held on July 25, 2012, that we did not intend to defend the then-existing indictment as to any of the defendants.  Rather, the government was starting with a new trial team and a new filter team and would present the evidence to a new grand jury.  This course of action put all the defendants in the same position, with an existing indictment in place that the government did not intend to defend.  Notably, any of the defendants, including Slatten, could have objected to this course of action and moved to dismiss the then-existing indictment.  None of them did so – presumably because they perceived it to be to their advantage to have a new prosecution team take a fresh look at the evidence.  As a result, following the return of the mandate from the court of appeals, the original indictment remained in place for all defendants, including Slatten, until the government's motion to dismiss the indictment vis-à-vis defendant Ball was granted by the Court on October 1, 2013, and until the superseding indictment was returned against the remaining defendants on October 17, 2013.

Additionally, the nature of Slatten's claim makes mandamus particularly inappropriate.  As discussed in §III.B, Slatten has a remedy post-trial, but mandamus is reserved for the

extraordinary situation where the defendant has no other recourse.  *Belize Soc. Dev. Ltd.*, 668 F.3d at 730.  Accordingly, Slatten cannot show that he is likely to prevail on his petition for a writ of mandamus, and that reason alone supports denial of his request for a stay.

**B.      Inasmuch as Slatten's motion to dismiss was based exclusively on his claim that the superseding indictment is barred by the statute of limitations, he would suffer no cognizable prejudice if the trial proceeds as scheduled.**

A statute of limitations claim is not subject to interlocutory appeal.  Slatten is, therefore, attempting to use mandamus as a mechanism to obtain a *de facto* interlocutory appeal.[3]  On November 18, 2013, Slatten moved to dismiss the superseding indictment, "for violation of the statute of limitations."  [Dkt. #315].  *See also* Slatten's counsel's email of August 6, 2013 [Dkt. #296, Ex. 1] (characterizing his motion as a "request the Court find that the Statute of Limitations has run against [him]").  The merits of a statute of limitations defense are determined post-conviction; therefore, there is nothing unique or prejudicial about Slatten's current position.  *See United States v. Davis*, 873 F.2d 900, 909 (6th Cir. 1989) ("defendants in criminal proceedings often find themselves in comparable situations, and we are not convinced that [the defendant] possesses any right arising from the Constitution or from a statute that will be irretrievably lost if we wait to decide the statute of limitations question until the conviction – if there is a conviction – is appealed").

There is no generalized right to be free from prosecution, and the statute of limitations does not confer such a right to be free from the burdens of prosecution and trial.  *Id.* at 908–910; *United States v. Levine*, 658 F.2d 113, 123-29 (3rd Cir. 1981) (the rights established by statutes of

---

[3]       Given that the court of appeals explicitly contemplated that Slatten could be re-indicted following the issuance of its mandate, *see Slough*, 641 F.3d at 547, it is clear that Slatten is not seeking to enforce the mandate but, rather, to take an interlocutory appeal of a statute of limitations ruling.

limitations cannot be seen as rights to be free from the burden of trial; they are, instead, a safeguard against unfair conviction that do not deserve the collateral order appeal protection conferred on some constitutional grounds for dismissal); *United States v. Garib-Bazain*, 222 F.3d 17, 18–19 (1st Cir. 2000) ("This is well settled practice in the federal courts and is based upon obvious practical considerations.  . . .  [T]he statute of limitations is an ordinary defense and it can fully and fairly be vindicated by appeal after a final judgment."); *United States v. Pi*, 174 F.3d 745, 750 (6th Cir. 1999) ("It is well settled law that an order denying a motion to dismiss an indictment on statute of limitations grounds is not immediately appealable under the collateral order doctrine."); *United States v. Weiss*, 7 F.3d 1088, 1091 (2nd Cir. 1993) ("In sum, we lack jurisdiction over Weiss's interlocutory appeal [of statute of limitations ruling].").

*DeGeorge v. United States District Court,* 219 F.3d 930 (9th Cir. 2000), is particularly instructive.  In *DeGeorge*, the defendant moved to dismiss an indictment, which had been returned after an *ex parte* motion to extend the statute of limitations had been granted.  *Id.* at 934. When his motion was denied, the defendant sought a writ of mandamus.  The Ninth Circuit refused to grant the writ, stating:  "Being forced to stand trial despite the running of the statute of limitations on certain charges is not inherently prejudicial:  'The limitations statute . . . creates a safeguard against unfair *convictions* arising from delinquent prosecutions but does not entail a right to be free from trial . . . .'"  *Id.* at 936 (emphasis in original).  Significantly, the court found that the defendant would suffer no prejudice from standing trial, despite the fact that (unlike Slatten) he was being detained pending trial.  *Id.* at 935-36.[4]

---

[4]      The cases relied upon by Slatten are inapposite, as they involve double jeopardy – not statute of limitations – claims.  *Abney v. United States,* 431 U.S. 651, 659 (1977) (emphasis added) ("Although it is true that a pretrial

**C.      The government would be prejudiced by delaying the trial.**

Trial of this matter was scheduled over four months ago.  Since that time, the government has undertaken extensive efforts to prepare.  It is anticipated that the trial will last several months and involve over 80 witnesses.  Significantly, over 50 of those witnesses will be Iraqi citizens, including victims, relatives and associates of deceased victims, and other fact witnesses who live and work in and around the Baghdad area, and who, therefore, will have to travel from Iraq to the United States for the proceedings.  We believe that this will constitute the largest group of foreign witnesses ever to travel to the United States for a criminal trial.  Not surprisingly, this trial has presented a significant logistical challenge for the government, which has required extensive advance coordination among the FBI, ICE, and the Department of State, including the U.S. Embassy in Baghdad.  This trial has also imposed a significant hardship on the Iraqi witnesses, who have been required to make arrangements with work and family to accommodate their planned absence from home.  Accordingly, with the travel arrangements largely finalized, it would be exceedingly difficult to change them at this point.  There can be no mistaking that any delay in prosecuting this matter prejudices the government and increases the complexity of this case, which involves so much foreign evidence.

Perhaps equally important, many Iraqi victim-witnesses have already expressed frustration about how long this case has taken to come to trial.  As the Court is aware, foreign

---

order denying a motion to dismiss an indictment *on double jeopardy grounds* lacks the finality traditionally considered indispensable to appellate review, we conclude that such orders fall within the 'small class of cases' that *Cohen* has placed beyond the confines of the final-judgment rule."); *Reimnitz v. State's Attorney of Cook Cnty.*, 761 F.2d 405, 408 (7th Cir. 1985) (emphasis added) ("If Reimnitz was retried in violation of *the double-jeopardy clause*, the judgment of conviction entered in that trial is invalid and must be set aside; and it would hardly do to subject him to further delay and uncertainty while he pursues his remedies in the state court system, merely because this court let the state retry him while his appeal to us was pending.").

nationals residing abroad are not subject to compulsory process.  The government's ability to secure their presence at trial depends on their willingness voluntarily to travel to the United States and testify.  If the trial is further delayed, the government is likely to encounter logistical difficulties in maintaining contact with witnesses and securing the continuing commitment of the witnesses to travel to the United States for trial.  Further delay of the trial in this case might even dissuade some witnesses from agreeing to appear.

Moreover, because of the logistical challenges cited above and the expected length of trial (the  government has estimated 15 weeks for its case-in-chief, the defense has estimated 4 to 6 weeks for its case), if a stay were granted for Slatten, it would not be feasible to go forward separately with the trial of the other three defendants.  Indeed, this Court recognized that fact when it stated that it would not go forward with a separate trial of the remaining three defendants.  Further, because this case involves so many attorneys, changing the presently scheduled trial date would likely necessitate an extensive delay to accommodate everyone's schedules.

Last, the Nisur Square shooting occurred almost seven years ago.  Any further delay could adversely affect the government's evidence.  *See, e.g., Clinton*, 520 U.S. at 707-08 ("delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a [witness]"); *United States v. Hunter*, 9 Fed.Appx. 857, 861 (10th Cir. 2001) (noting that government's case grew weaker with passage of time).  At bottom, delaying the trial may hamper or even jeopardize

the government's ability to prosecute this matter.[5]

**D.     The public's interest would be served by proceeding with trial as scheduled.**

The public has a general interest in this matter being resolved expeditiously.  *See, e.g.*, 18 U.S.C. § 3161 (h)(8)(A) (recognizing "interest of public . . . in a speedy trial").  The public also has a specific interest in this case being delayed no further, as it has attracted great attention both here and abroad.  "There are American men and women in uniform that were sent home in body bags because of the anger and hatred this created." Anthony H. Cordesman, Arleigh A. Burke Chair in Strategy, Center for Strategic and International Studies (http://abcnews.go.com/WN/vice-president-joe-biden-us-appeal-blackwater-ruling/story?id=964 5950Studies).  Additionally, as discussed above, delaying the trial may hamper or even jeopardize the ability for the case to proceed to trial, which is clearly not in the public's interest. Accordingly, it would not be in the public's interest for this matter to be delayed further.[6]

---

[5]     The cases relied upon by Slatten, *Hicks v. Bush*, 397 F. Supp. 2d 36, 42 (D.D.C. 2005), and *Al Sharbi v. Bush*, 430 F. Supp. 2d 1 (D.D.C. 2006), are inapposite.  They address requests for stays of military commission trials; accordingly, the delay in those cases arose from factors having nothing to do with this Article III criminal case, and they did not involve the evidentiary harm that may be caused by delay in this case.  Additionally, Slatten's suggestion that the government is responsible for delay in trying this case (Def. Mot. at 6) is misplaced.  It was the defendants who challenged the initial indictment in this case and sought a delay in the matter while they pursued both *en banc* review and a writ of *certiorari* following the government's successful appeal.  After the case was reinstated, in deference to the defendants' Fifth Amendment rights, the government assigned an entirely new prosecution team to this case.  This team took a fresh look at the case and presented it to a new grand jury.  This process, not surprisingly, was time consuming.

[6]     The fact that the *Washington Post* was mistaken regarding Slatten's status in this case (*see* Slatten's Mot. at 9, n.1 [Dkt. # 395]) cannot be equated with either the public's understanding of his status or the public's interest in this case being resolved expeditiously.

11

**IV.     Conclusion.**

Inasmuch as the government would suffer substantial prejudice from delaying the trial while Slatten would suffer none from the trial proceeding as scheduled, his motion for a stay of the trial should be denied.

Respectfully submitted

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar No. 447-889

_____/s/_____
John Crabb Jr.
Assistant United States Attorney
N.Y. Bar No. 2367670
john.d.crabb@usdoj.gov

 _____/s/_____
Anthony Asuncion
Assistant United States Attorney

_____/s/_____
David Mudd
Special Assistant United States Attorney

_____/s/_____
T. Patrick Martin
Assistant United States Attorney

_____/s/_____
Christopher Kavanaugh
Assistant United States Attorney

National Security Section
U.S. Attorney's Office
555 4th Street, NW, 11th Floor
Washington, D.C.  20530