UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:08-cr-360-RCL |
| | ) |
| PAUL ALVIN SLOUGH, | ) |
| NICHOLAS ABRAM SLATTEN, | ) |
| EVAN SHAWN LIBERTY, and | ) |
| DUSTIN LAURENT HEARD, | ) |
| | ) |
| Defendants. | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE,
OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**

Defendants, through counsel, respectfully submit this reply memorandum in support of their Motion to Dismiss the Indictment for Failure to State an Offense, or in the Alternative for a Bill of Particulars (ECF No. 389, Feb. 21, 2014).

**INTRODUCTION**

To state an offense, the Indictment must contain "a plain, concise, and definite written statement *of the essential facts constituting the offense charged*." Fed. R. Crim. P. 7(c)(1) (emphasis added); *see, e.g.*, *Russell v. United States*, 369 U.S. 749, 765 (1962). Here, every count charges an offense under the Military Extraterritorial Jurisdiction Act, 18 U.S.C. § 3261(a) (MEJA). The central requirement of MEJA—which determines whether any of the purely extraterritorial conduct alleged in the Indictment is an offense under U.S. law—is that the conduct have been committed "while [Defendants were] employed by . . . the Armed Forces outside the United States," *id.*, *i.e.*, "while" and "to the extent [their] employment relate[d] to supporting the mission of the Department of Defense overseas." 18 U.S.C. § 3267(1)(A)(ii)(II).

Though the Indictment describes Defendants' subcontract employment by the *State Department*, it contains *not a single factual allegation* that "such employment relate[d] to supporting the mission of the Defense Department." Instead, on this critical element, the Indictment contains only a quotation of the language of the statute, along with naming the Republic of Iraq. Ind. ¶ 1.a (ECF No. 304, Oct. 17, 2013).

The government baldly contends no more is required—that parroting the statute is sufficient. Gov. Opp. to Mot. to Dismiss at 7 (ECF No. 397, Mar. 14, 2014) ("Opp."). The government is wrong. *Hamling v. United States*, 418 U.S. 87 (1974), and *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), did not confine *Russell* to its facts, as the government claims (Opp. 9). Indeed, *Hamling* reiterated that the indictment must allege facts constituting the offense *in the very next sentence after that quoted by the government* (which the government omits). *Hamling*, 418 U.S. at 117-18 (quoted *infra* at 4). *Hamling* and *Resendiz-Ponce* merely distinguished *Russell*, ruling that the offense elements charged in those cases—obscenity and attempt—were terms of art defined by case law, such that those words themselves were sufficient to describe fully the factual conduct charged.

Unlike well-defined terms such as obscenity or attempt, the MEJA element in dispute here—"relate[d] to supporting the mission of the Department of Defense"—is not, to our knowledge, defined in a single case. Nothing in that language itself fully and expressly encompasses the facts that satisfy that element. Indeed, the government has emphasized that "'relating to supporting' is about as broad a language as you can possibly get," Mot. Hrg. Tr., 02/17/2009, at 36:20-21 (ECF No. 127), and contends it can simply quote those generic terms in the Indictment, and leave itself free to fill in supporting facts at any time through the end of trial.

*Russell* and its progeny squarely reject that approach, which would violate Defendants' right to be tried only on factual allegations for which the grand jury found probable cause to charge. The government does not contend otherwise—its defense of the Indictment is limited to its specious argument that *Russell* is no longer good law.

*Russell,* its antecedents and progeny, the Fifth and Sixth Amendments to the Constitution, and Rule 7(c) do indeed require that the Indictment state facts constituting the elements of the offense. Because the Indictment alleges no facts on the critical element of MEJA, which is the foundation of every count charged, it fails to state an offense, and must be dismissed.

Neither a bill of particulars nor discovery can cure a deficient indictment. However, if the Court does not dismiss the Indictment, it should order the government to specify its allegations as to how Defendants' State Department employment related to supporting the Defense Department's mission. Defendants do not seek itemization of the government's evidence; instead, they seek to pin down the *factual allegations* the government intends to prove at trial.

The current trial team has investigated this case for nearly twenty-two months. Trial is little more than two months away. The government knows what it intends to try to prove to satisfy MEJA. To refuse to commit those allegations to a charging document is gamesmanship.

## ARGUMENT

**I.    Bare Quotation of the Statute Is Not Sufficient: Its Generic Terms Must Be Accompanied By a Plain Statement of the Facts Constituting the Offense**

Contrary to the government's argument, *Russell v. United States*, 369 U.S. 749 (1962), and *United States v. Hess*, 124 U.S. 483 (1888) are still good law. As *Russell* explains, the Notice, Due Process, and Grand Jury requirements of the Fifth and Sixth Amendments require that the Indictment contain more than a conclusory quotation of the statute—it must contain a

3

plain statement of the facts constituting the elements of the offense. *Russell*, 369 U.S. at 765; *accord Hess*, 124 U.S. at 487; *see generally* ECF No. 389 at 6-9 (collecting authority); *Russell*, 369 U.S. at 760-61, 766, 768. *Russell* and *Hess* have not been "confined to the specific offense" charged in *Russell*, as the government claims. Opp. at 9.

The government faults the defense for relying on "pre-*Hamling* case law—*Hess* (1888) and *Russell* (1962)," *id.*, and contends that *Hamling* (1974) changed the law, approving indictments that merely track the language of the statute and state the time and place of the offense. Opp. at 7. For this proposition, the government quotes *Hamling*: "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words themselves, fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Id.* (quoting *Hamling*, 418 U.S. at 117). According to the government, no more is required. Opp. at 7. In particular, says the government, after *Hamling* (which the government faults the defense for not citing), *Hess* and *Russell* no longer control. Opp. at 6-7, 9.

Here is the very next sentence of *Hamling*, which the government omits: "Undoubtedly the language of the statute may be used in the general description of an offence, *but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.*" *Hamling*, 418 U.S. at 117-18 (emphasis added). For this accurate statement of the law, the Supreme Court quoted *Hess*—the decision the government claims did not survive *Hamling*. *See id.* at 118; Opp. at 6-7 & 9.

4

*Hamling* did nothing to limit *Hess* as the government claims.[1] Instead, *Hamling* noted that *if* the words of a criminal statute are sufficient, "of themselves, [to] *fully, directly, and expressly, without any uncertainty or ambiguity,* set forth all the elements necessary to constitute the offence," 418 U.S. at 117 (emphasis added), then charging the offense in those words may be sufficient. *Id.* If the statutory words are not so full, express, and unambiguous, however, the indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the *specific offence* . . . with which he is charged"—*i.e.*, the conduct alleged in the case, not merely the statute's general description. *Id.* at 117-18 (quoting *Hess*).

In *Hamling*, the language of the statute prohibiting mailing obscene materials provided such sufficient detail: the statute required only the knowing mailing of obscene material, *id.* at 98 n.8, and "the word 'obscene,' as used in [the statute], is not merely a generic or descriptive term, but a legal term of art" amply defined in case law. *Id.* at 118. "The legal definition of obscenity does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him." *Id.* at 118 (citations omitted).[2]

By contrast, the critical element of MEJA—whether Defendants' State Department employment "relate[d] to supporting the mission of the Department of Defense"—is not an established term of art, and is not defined by any case law whatsoever. The terms the government focuses on—"related to" and "supporting"—are generic terms, which the government has argued are "about as broad a language as you can possibly get." Mot. Hrg. Tr.,

---

[1] A Westlaw Keycite of *Hess* shows it is still good law.
[2] The indictment thus would have to add only such minimal circumstances as time and place, which apparently were sufficiently alleged in Hamling's indictment. *See id.* at 91 & n.1.

02/17/2009, at 36:20-21 (ECF No. 127).  Though the Defense Department defines its mission as being "to provide the military forces needed to deter war and to protect the security of our country,"[3] and the Defense Department has repeatedly stated that these Defendants were not supporting its mission in Iraq,[4] the prosecution appears to have no intention of confining itself to the Defense Department's view.  Instead, the government has raised a variety of glosses it intends to try to cast on the respective roles of the State and Defense Departments in Iraq, Opp. at 13-14, but it has pointedly refused to limit itself in any way, telling the Court, "we haven't made a full and complete proffer here," Mot. Hrg. Tr., 02/17/09 Tr. 36:17-18, and that the defense "doesn't know what the government's got." *Id.* at 28:5-7.  Unlike *Hamling*, there is nothing here about MEJA's "words of themselves" that "fully, directly, and expressly, without any uncertainty or ambiguity" notifies Defendants of what they must be prepared to defend at trial.  *Hamling*, 418 U.S. at 117.

Similarly, nothing in *Hamling* or *Resendiz-Ponce* confined *Russell* to the particular statute charged there, as the government claims (Opp. at 9), or even purported to do so.  *See Hamling*, 418 U.S. at 118; *Resendiz-Ponce*, 549 U.S. at 109-110 (expressly following "[o]ur

---

[3] U.S. Dep't of Defense, *DoD 101: An Introductory Overview of the Department of Defense—What We Do,* http://www.defenselink.mil/pubs/dod101 (ECF No. 56-7, Feb. 3, 2009).

[4] *See* Letter from Dep. Sec. Def. Gordon England to then-Senator Barack Obama, Dec. 7, 2007, at 3 ("I am informed that these private security contractors were not engaged in employment supporting the DoD mission overseas") (ECF No. 56-3, Feb. 3, 2009); Letter from Dep. Sec. Def. Gordon England to Rep. David Price, Sep. 27, 2007, at 2 ("I am informed that the Blackwater USA private security contractors working under a Department of State contract were not engaged in employment that was in support of the DoD mission.") (ECF No. 56-4, Feb. 3, 2009); Matt Apuzzo, "Pentagon letter undercuts DOJ in Blackwater case," *Associated Press*, Feb. 2, 2009 ("Defense Department spokesman Chris Isleib said Monday that the views in the letter [from Dep. Sec. England to Rep. Price] remain the view of the Defense Department.") (ECF No. 56-16, Feb. 3, 2009).

reasoning in *Russell*" to reach a different result for a different statute).  *Russell*'s continued vitality is shown by the panoply of decisions continuing to apply its requirements well after *Hamling* (1974) and *Resendiz-Ponce* (2007).[5]

---

[5] *See United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980) ("The more generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged.") (citing *Russell*); *United States v. Nance*, 533 F.2d 699, 701-02 (D.C. Cir. 1976) ("That these basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure, is illustrated by many recent federal decisions.") (quoting extensively from *Russell*, *Hess*, and related precedents); *United States v. Sunia*, 643 F. Supp. 2d 51, 77 (D.D.C. 2009) ("[A]s nearly every circuit court of appeals has expressly held, 'a valid indictment must . . . *allege the essential facts constituting the offense*'") (emphasis in original, alteration marks omitted) (following *Russell* and collecting authorities); *id.* at 81 ("To adequately charge [an offense,] . . . the government must do more than simply recite the language of the statute without comment.  It must also allege facts supporting the [statutory elements of the offense].") (following *Nance*); *United States v. Martinez*, 764 F. Supp. 2d 166, 170 (D.D.C. 2011) (citing *Russell* and *Sunia* to explain that an indictment must "allege the essential facts constituting the offense," and quoting *Hamling*'s statement that the statutory language "'must be accompanied by such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged'"); *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 108, 109-11 (D.D.C. 2012) (citing *Russell* and *Martinez*).

Other courts are in accord.  *See, e.g.*, *United States v. McGarity*, 669 F.3d 1218, 1239-40 & n.25 (11th Cir. 2012) (noting Eleventh Circuit's adoption of *Russell*, and vacating conviction because indictment that merely tracked the statute did not contain a factual predicate, thereby "wholly fail[ing]" to "notify the accused of the charges to be defended against"); *United States v. Schmitz*, 634 F.3d 1247, 1261 (same), *reh'g denied*, 433 Fed.Appx. 899 (11th Cir. 2011); *United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010) ("[A]n indictment must do more than simply repeat the language of the criminal statute.") (quoting *Russell*); *United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000) (quoting *Russell* for requirement that indictment allege facts in addition to tracking statute, and emphasizing that "[t]he Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."); *United States v. Awan*, 459 F. Supp. 2d 167, 175-76 (E.D.N.Y. 2006) (following *Russell* and *Pirro* to dismiss indictment), *aff'd*, 384 Fed. Appx. 9 (2d Cir. 2010).

The government omits approving citations of *Russell* from the first two cases it quotes after *Hamling* (Opp. at 7), including the D.C. Circuit's *Haldeman* decision.  *See United States v. Haldeman*, 559 F.2d 31, 123 n.260 (D.C. Cir. 1976) ("An indictment in the language of the statute may also be defective if the statute is in general terms and the indictment fails to specify the offense of which the defendant is accused.") (citing *Russell*), *holding limited on other*

(Continued …)

Far from confining *Russell* to the specific offense charged there, Opp. at 9, *Hamling* and *Resendiz-Ponce* merely <u>distinguished</u> *Russell*, based on the particular indictments and offenses at issue. In *Russell*, a contempt-of-Congress prosecution, the crucial element was pertinence of the question to the subject under inquiry. "What the subject actually was, therefore, is central to every prosecution under the statute." *Russell*, 369 U.S. at 764 (quoted in *Hamling*, 418 U.S. at 118, and *Resendiz-Ponce*, 549 U.S. at 109). Because that subject was not defined in the statute, an indictment that failed to state that critical fact was insufficient to give notice of the offense: "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the statute." *Id.* (quoted in *Hamling*, 418 U.S. at 118, and *Resendiz-Ponce*, 549 U.S. at 110).

In *Resendiz-Ponce*, as in *Hamling*, the offense element charged in the statutory term—"attempt"—had a recognized legal meaning under abundant legal precedent. Resendiz-Ponce's indictment charged that after an earlier specified deportation, he "knowingly and intentionally

---

*grounds by Zafiro v. United States*, 506 U.S. 534, 538 (1993); *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("We note the Supreme Court's caveat that when the definition of an offense includes 'generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.'" (quoting *Russell*)). That the government found three out-of-circuit cases that do not cite *Russell* at all, Opp. at 7, hardly shows that *Russell*'s standard has been "confined" as the government claims (Opp. at 9)—a limitation not reflected in a Westlaw Keycite of *Russell*.

Finally, *Hamling*'s reaffirmation, not confinement, of *Russell*'s requirement is noted in 1 Charles Alan Wright et al., *Federal Practice & Procedure (Criminal)* § 125, at 549-550 (4th ed. 2008) ("[A] 'bare-bones' indictment that uses only the statutory language is permissible only if either the language itself gives sufficient notice to the accused, or if the language is accompanied by 'such a statement of facts and circumstances as will inform the accused of the specific offense.'") (quoting *Hamling*); *accord id.* at 551 & n.21 ("[I]f the statute is couched in general terms the indictment must identify the offense sufficiently to inform the accused of the precise charge that he must meet.") (citing *Russell*).

attempted to enter the United States" on a particular date at a particular point of entry. 549 U.S. at 105. Resendiz-Ponce argued the indictment was deficient because it did not allege "an overt act, or . . . the essential facts of such overt act" constituting the attempt. *Id.* Observing that the elements of attempted entry were only intent to enter the United States and an overt act toward that end, *id.* at 106-07, the Supreme Court held that the allegation that "'on or about June 1, 2003,' respondent 'attempted to enter the United States of America at or near San Luis in the District of Arizona'" was sufficient to allege both elements. *Id.* at 108. This was so because the word "attempt" by itself, both in common parlance and "as used in the law for centuries, . . . encompasses both the overt act and intent elements." *Id.* at 107.

Here, the allegation missing from the Indictment—facts showing that the Defendants' employment by the State Department "related to supporting the mission of the Department of Defense"—is more like the subject of congressional inquiry in *Russell* than like "obscene" in *Hamling* or "attempt" in *Resendiz-Ponce*. It is not a self-contained term, or a term of art carrying a fixed legal meaning. Instead, it is an allegation rooted in fact, which will vary from case to case. *Cf. Hamling*, 418 U.S. at 118. Indeed, the government points to a non-exclusive variety of ways in which it might try to satisfy the element, without committing itself to any particular factual allegation. Opp. at 13-14; ECF No. 51 at 32-34; Mot. Hrg. Tr., 02/17/2009, at 28:5-7, 36:17-18 (ECF No. 127); *cf. Awan*, 459 F. Supp. 2d at 175-76 (dismissing indictment that charged statute's generic term "material support," "without specifying which of a variety of activities . . . that the defendant must defend against or which the grand jury considered").

At the same time, as in *Russell*, the MEJA allegation here is the central fact on which the existence of every charged offense depends. Under more than a century of precedent rooted in

9

international law, United States criminal law does not extend overseas to punish crimes against the person in foreign countries. *United States v. Bowman*, 260 U.S. 94, 97-98 (1922); *United States v. Ali*, 718 F.3d 929, 934-35 (D.C. Cir. 2013). It is undisputed that the federal manslaughter, attempted manslaughter, and firearm statutes do not themselves have force in Iraq. ECF No. 389 at 4 & n.5. Defendants' charged connection to the United States military (*i.e.*, their "employment by . . . the Armed Forces," §§ 3261(a), 3267(1)), is the only thing that can make the conduct alleged in the Indictment an offense under U.S. law.[6] It is, like the subject of inquiry in *Russell*, "central to every prosecution under the statute." *Russell*, 369 U.S. at 764 (quoted in *Hamling*, 418 U.S. at 118). "Where guilt depends so crucially upon such a specific identification of fact," that fact—not a mere statutory quotation—must be set out in the indictment. *Id.*

Here, it is undisputed that the Indictment alleges no facts showing Defendants' subcontract work for the Department of State related to supporting the mission of the Defense Department. For that charge, the only content in the Indictment is a conclusory quotation of the statute. Ind. ¶ 1.a. The government does not contend otherwise—its only answer is that no more is required. Opp. at 7, 9-12.[7] That assertion is wrong as a matter of law.

---

[6] Such "employment by . . . the Armed Forces" is not a mere jurisdictional hook akin to an effect on interstate commerce under the Hobbs Act or a business nexus under the Foreign Corrupt Practices Act. *See* Opp. at 8-9, 11 (discussing a First Circuit Hobbs Act case and a Fifth Circuit FCPA case). Though the Commerce Clause may have expansive interpretation as a matter of domestic law, *see Gonzalez v. Raich*, 545 U.S. 1, 16-22 (2005), which may sometimes give rise to cursory treatment of commerce-based federal criminal offenses, *see id.* at 46 (O'Connor, J., dissenting), the extension of U.S. criminal law to reach extraterritorial conduct within another sovereign's borders—an action with international law implications—is not done so lightly. *See Bowman*, 260 U.S. at 97-98; *Ali*, 718 F.3d at 934-35; *see also Kiobel v. Royal Dutch Petrol. Co.*, 133 S. Ct. 1659, 1664-65 (2013); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, __, 130 S. Ct. 2869, 2877-78 (2010).

[7] That the Indictment alleges Defendants were performing personal security services for

(Continued …)

The absence of *any* facts on this central element fails to fix the charge against Defendants, fails to give notice of what they must defend at trial on this element, and fails to assure that the facts the government seeks to prove at trial on this element were found and voted by the grand jury. *See* ECF No. 389 at 5-9; *Russell*, 369 U.S. at 760-61, 765-66, 768-70; *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2011); *Sunia*, 643 F. Supp. 2d at 77, 81. This failure goes to the viability of every count of the Indictment. Because facts are required, none are alleged, and this element makes the difference between whether or not the conduct alleged in every count constitutes an offense under U.S. law, the Indictment must be dismissed.

## II.     In the Alternative, the Court Should Grant a Bill of Particulars

A bill of particulars cannot save a defective indictment. *Nance*, 533 F.2d at 701 (citing *Russell*, 369 U.S. at 770-71); *Conlon*, 628 F.2d at 156. Where, as here, the government has charged the offense in the words of the statute without factual allegations in the indictment, a bill of particulars cannot fill that hole because it would not satisfy the Defendants' right to stand trial only on charges found by the grand jury. *Russell*, 369 U.S. at 770. "Absent any allegation whatsoever in the indictment as to [the missing element], the United States Attorney would have

---

the State Department in Iraq, under subcontract through Blackwater Worldwide, and that they were not Iraqi nationals or residents, Opp. at 8, is irrelevant. Those undisputed facts do nothing with respect to the critical element for *military* extraterritorial jurisdiction—whether Defendants were "employed by . . . the Armed Forces," 18 U.S.C. § 3261(a), *i.e.*, that their contract work for the State Department "related to supporting the mission of the Defense Department." 18 U.S.C. § 3267(1)(A)(ii)(II). On the latter dispositive element, the Indictment is silent but for its quotation of the statute and its naming the country of Iraq. Ind. ¶ 1.a.

Similarly, that the Indictment alleges facts regarding alleged manslaughter, attempted manslaughter, and use of firearms in Iraq, Opp. at 8, does not suffice to state an offense. Such alleged conduct (which Defendants vigorously dispute) is not an offense under U.S. law unless and "to the extent that [Defendants'] employment [by the State Department] relate[d] to supporting the mission of the Defense Department." 18 U.S.C. § 3267(1)(A)(ii)(II).

a free hand to insert the vital part of the indictment without reference to the grand jury. The law does not vest him with such authority." *Nance*, 533 F.2d at 701; *accord Russell*, 369 U.S. at 770-71; *Sunia*, 643 F. Supp. 2d at 77. The government acknowledges none of this authority.

Nonetheless, if the Court declines to dismiss the Indictment, it should order the government to particularize the Indictment's allegation that Defendants' State Department employment related to supporting the mission of the Defense Department, Ind. ¶ 1.a, to fix the charge and give Defendants notice of what they must defend on this critical element.

In opposition to this reasonable request, the government attacks a straw man, arguing that Defendants seek "an exhaustive itemization of MEJA evidence" to which they are not entitled. Opp. at 14; *see also id.* at 12-13. That misstates Defendants' request. Defendants do not seek itemization of the government's *evidence*. Instead, they ask that the government be required to furnish what is wholly missing from the Indictment: a *fixed factual allegation* of what the government will attempt to prove to satisfy the charge, Ind. ¶ 1.a, that Defendants' State Department "employment related to supporting the mission of the Department of Defense."

"A bill of particulars is designed to limit and define the government's case." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (citation and alteration marks omitted). It gives the defendant notice of what he must be prepared to meet at trial. *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006). Without fixed notice in a bill of particulars, the accused would be required to defend against a moving target: the prosecution would be "free to roam at large—to shift its theory . . . so as to take advantage of each passing vicissitude of the trial and appeal." *Russell*, 369 U.S. at 768. Again, the government completely ignores this authority. By refusing to commit itself, and relying on its provision in discovery of what it

*currently* possesses, Opp. at 13, 14, the government seeks precisely what the Constitution and fundamental fairness prohibit—to keep itself free to fill the Indictment's MEJA hole with any additional facts it manages to develop between now and the end of trial. The defense is entitled to fixed notice in advance, in order to prepare for trial.

This is one of the precise reasons why discovery—particularly voluminous document discovery—does not substitute for straightforward identification of what the prosecution intends to prove. ECF No. 389 at 17-18. Defendants "should not have to waste precious trial preparation time guessing which [allegations] [they have] to defend against . . . when the government knows precisely the [facts] on which it intends to rely and can easily provide the information." *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998). Again, though it cites *Trie* generally, Opp. at 12, the government completely ignores its authority for this proposition.

The need to fix the MEJA allegation against which the accused must defend, to keep the target from moving, is also why the government's *nonexclusive* suggestion of a variety of theories does not suffice. Opp. at 13-14 (citing ECF No. 51 at 32-34; ECF No. 54 & Exs. 5 & 6; and various unspecified "accounts by certain Department of Defense and Blackwater individuals"). For those theories to serve the notice function of a bill of particulars, at a minimum the government would have to be limited to those allegations—something to which the government has steadfastly refused to commit. *See Sanford*, 841 F. Supp. 2d at 316 ("A bill of particulars is designed to limit and define the government's case."); *accord United States v. Ganim*, 225 F. Supp. 2d 145, 155-56 (D. Conn. 2002) (ordering government to furnish bill of particulars to cabin open-ended allegations, where government's list of charged theories was "by no means exclusive"); *United States v. Slaughter,* 89 F. Supp. 205, 207 (D.D.C. 1950).

Notably, much of the material to which the government points shows why the government *cannot* satisfy MEJA in this case. All of the documentation regarding Defendants' contract employment to provide diplomatic security (which was relied on by Judge Urbina, ECF No. 389 at 18, and is among that relied on by the government, Opp. at 13, 14) shows Defendants' contract employment supported the Department of *State*, not Defense. ECF No. 389 at 11 n.15, 18. Provision of such diplomatic security did not relieve the Defense Department of such responsibility as the government claims, Opp. at 13-14, because the Defense Department never had any such responsibility. Diplomatic security is a *State*, not Defense, function, and the Defense Department did not consider such security in Iraq to be part of its mission. *See* ECF No. 389 at 11 n.15.[8] Similarly, the alleged provision of security services to military personnel by other Blackwater contractors, Opp. at 13, or the allegation that in *other* unspecified instances *other* unspecified Blackwater contractors may have responded to assist unspecified military forces under attack in Baghdad, *id.* at 14, does not show that *these* Defendants' contract employment to provide diplomatic security supported the Defense Department's mission, or that these Defendants were supporting the Defense Department's mission on September 16, 2007, when they responded to secure a safe return to the Green Zone for a *civilian State Department protectee* being evacuated from the scene of a car bomb attack. ECF No. 389 at 12-13; *see also* Reply Mem. Supp. Mot. to Dismiss at 9-12, 17-18 (ECF No. 56).

---

[8] *See also* Mem. Supp. Def. Mot. to Dismiss For Lack of Jurisdiction at 6-8, 18-23 (ECF No. 34-2, Jan. 13, 2009); Reply Mem. Supp. Def. Mot. to Dismiss For Lack of Jurisdiction at 16-19 (ECF No. 56, Feb. 3, 2009).

The Defendants are four individuals charged with offenses under MEJA. The elements of the MEJA offenses charged against them under 18 U.S.C. § 3261(a) must be analyzed and satisfied *as to these four individuals*, with respect to their conduct on September 16, 2007, as charged in the Indictment. Analysis of other security actions by the State Department, or other services by Blackwater, or the actions of other Blackwater subcontractors on other occasions (Opp. at 13-14), cannot establish that *these* four individuals, performing *their* work under *their* State Department subcontracts on September 16, 2007, were "employed by the Armed Forces," § 326a(a), *i.e.*, were performing employment "related to supporting the mission of the Department of Defense." § 3267(1)(A)(ii)(II).[9]

There is no allegation that Defendants' actions charged in the Indictment—responding to secure a diplomatic guest's safe return to the Green Zone after a car bomb attack—was outside their core contract function of providing diplomatic security, a State Department function. The

---

[9] MEJA, § 3261(a), reaches only conduct committed "*while* employed by . . . the Armed Forces" (emphasis added). By statute, non-Defense subcontractors such as Defendants could be considered "employed by the Armed Forces" *only* "*to the extent* such employment related to supporting the mission of the Department of Defense." § 3267(1)(A)(ii)(II) (emphasis added).

"To the extent" is express language of limitation. *See, e.g., John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 104-05 (1993). When Congress uses "these words of limitation," *id.*, it expressly provides for something—here, U.S. jurisdiction to prosecute extraterritorial conduct—"to *some* extent," but not beyond. *Id.* (emphasis in original). Significantly, Congress did not state that non-Defense contractors are employed by the Armed Forces "*if*" their employment "relates to supporting" the military, but only "*to the extent*" that it does—meaning that if a contractor's employment relates to supporting the military at some times but not others, or in some capacities but not others, it is within the Act's reach *only at the times or in the capacities that it relates to supporting the military*. *See In re Silveira (East Cambridge Sav. Bank v. Silveira*), 141 F.3d 34, 36 (1st Cir. 1998) ("If Congress intended [the statutory provision] to be an 'all-or-nothing' matter, one might wonder why the provisions' drafters chose to use the connective phrase 'to the extent that,' in lieu of the word 'if,' which obviously would have been a simpler construction.").

15

actions of *other* individuals on *other* occasions, potentially under *other* contracts or orders, cannot change that.  Nonetheless, to the extent the government intends to try to prove that the actions of other individuals on other occasions somehow shows that these four individuals' State Department employment on September 16, 2007 "relate[d] to supporting the mission of the Defense Department," it needs to say so, and needs to give notice of the facts it intends to prove: *which* actions on *which* occasions by *which* individuals constitute the allegations supporting the charge against these individuals in Indictment paragraph 1.a?  "The law does not expect a man to be prepared to defend every act of his life which may be suddenly and without notice alleged against him." *United States v. Burr*, 25 F. Cas. 55, 170 (C.C.D. Va. 1807) (Marshall, C.J.).  Even less does it expect the accused to defend every allegation about *other* individuals on *other* occasions, in a war zone over a period of months or years, without at least advance notice of those alleged actions, to permit the accused to investigate them and prepare a defense as to those alleged actions by those individuals.

       This trial team has investigated this case for nearly two years.  Trial is two and a half months away. (By the time this motion is argued on April 23, 2014, trial will be in less than six weeks.)  The prosecution knows the facts it will attempt to prove to show that these four individuals' State Department contract employment "related to supporting the mission of the Defense Department" as charged in Ind. ¶ 1.a.  Defendants are entitled to know—not to guess— what the government intends to prove, and to have the government pinned down to those allegations, without freedom to make new ones as the trial proceeds.  The government's effort to go to trial without defining its factual allegations as to MEJA "smacks of gamesmanship," *Trie*, 21 F. Supp. 2d at 21, and would deny Defendants a fair trial.

**CONCLUSION**

For the reasons set forth above and in Defendants' opening motion, the Court should dismiss the Indictment in its entirety for failure to state an offense under the Military Extraterritorial Jurisdiction Act. In the alternative, the Court should order the government to provide a bill of particulars specifying the factual allegations underlying the conclusory allegation in Indictment Paragraph 1.a that Defendants' State Department employment "related to supporting the mission of the Department of Defense" in Iraq.

Respectfully submitted,

By: */s/ Brian M. Heberlig*

| | |
|---|---|
| Brian M. Heberlig (No. 455381) | Thomas G. Connolly (No. 420416) |
| Michael J. Baratz (No. 480607) | Steven A. Fredley (No. 484794) |
| Bruce C. Bishop (No. 437225) | Wiltshire & Grannis LLP |
| Linda C. Bailey (No. 985081) | 1200 Eighteenth Street N.W. |
| Scott P. Armstrong (No. 993851) | Suite 1200 |
| Steptoe & Johnson LLP | Washington, D.C. 20036 |
| 1330 Connecticut Ave. N.W. | (202) 730-1300 |
| Washington, D.C. 20036 | *Counsel for Defendant Nicholas A. Slatten* |
| (202) 429-3000 | |
| *Counsel for Defendant Paul A. Slough* | |
| | |
| William Coffield (No. 431126) | David Schertler (No. 367203) |
| Coffield Law Group LLP | Danny Onorato (No. 480043) |
| 1330 Connecticut Ave. N.W. Suite 220 | Schertler & Onorato, LLP |
| Washington, D.C. 20036 | 575 7th Street, N.W. – Suite 300 South |
| (202) 429-4799 | Washington, D.C. 20004 |
| *Counsel for Defendant Evan S. Liberty* | (202) 628-4199 |
| | *Counsel for Defendant Dustin L. Heard* |

Dated: March 21, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2014, I caused the foregoing Reply Memorandum in Support of Defendants' Motion to Dismiss the Indictment for Failure to State An Offense, or in the Alternative for a Bill of Particulars to be filed with the Clerk of the Court using the CM/ECF system.  The CM/ECF system will send notification of such filing to:

Anthony Asuncion
T. Patrick Martin
Christopher Kavanaugh
John Crabb Jr.
David Mudd
United States Attorney's Office
for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530


   /s/ *Brian M. Heberlig*
    Brian M. Heberlig