# ATTACHMENT D

```
 1                    UNITED STATES DISTRICT COURT

 2                        DISTRICT OF COLUMBIA

 3   UNITED STATES OF AMERICA         CRIMINAL ACTION NO. 08-360

 4                                    WASHINGTON, D.C.

 5   VERSUS                           MONDAY, SEPTEMBER 14, 2009

 6   PAUL ALVIN SLOUGH, ET AL         2:00 P.M.

 7                          STATUS HEARING

 8              BEFORE THE HONORABLE RICARDO M. URBINA

 9                UNITED STATES DISTRICT COURT JUDGE

10   A P P E A R A N C E S:

11   FOR THE PLAINTIFF,              Kenneth C. Kohl, Esq.
                                     U.S. ATTORNEY'S OFFICE
12                                   Judiciary Center Building
                                     555 4th Street, NW
13                                   Room 11-850
                                     Washington, DC 20530
14                                   (202) 616-2139

15                                   Jonathan M. Malis, Esq.
                                     U.S. ATTORNEY'S OFFICE
16                                   Judiciary Center Building
                                     555 4th Street, NW
17                                   Room 5224
                                     Washington, DC 20530
18                                   (202) 305-9665

19                                   Michael J. Dittoe, Esq.
                                     U.S. DEPARTMENT OF JUSTICE
20                                   National Security Division
                                     10th & Constitution Avenue, NW
21                                   1539
                                     Washington, DC 20530
22                                   (202) 307-3804

23

24

25
```

WENDY C. RICARD, RPR, CCR
OFFICIAL COURT REPORTER

1  government can produce what it believes it can, would that
2  moot the issue as far as the defense is concerned?
3          MR. CONNOLLY: It would, Your Honor.
4          THE COURT: It would?
5          MR. CONNOLLY: Yes.
6          THE COURT: All right. Well, I'll take the
7  government's word for it. All right. The next issue, then,
8  is computer-generated evidence. The defense requests that the
9  government disclose any computer evidence that it may seek to
10 use at trial, particularly, any computerized animations or
11 demonstrations related to ballistics' evidence or trajectories
12 of shots fired.
13         I think we can anticipate what the arguments would
14 be on either side of that issue. Has any compromise or accord
15 been reached on that?
16         MR. KOHL: Your Honor, we know we have turned over
17 what information we have at this point, that the experts and
18 that the evidence technicians have given us in terms of some
19 of these specifics, but we're -- until we get these graphic
20 displays, these images, some of it is computer-generated
21 displays. We don't -- we can't answer many of these questions
22 because you have to work back from that finished product to
23 determine what went into it, what pictures went into it, what
24 measurements went into it, and I have already tasked, we have
25 sat done with the lab, and we've said whatever you produce in

```
 1   this case, you're going to have to produce all of this
 2   information that supports all the underlying data that
 3   supports this, and we're working very diligently to do that.
 4            THE COURT: It sounds like timing is an issue here.
 5            MR. KOHL:  That's right.
 6            THE COURT:  You're prepared to turn it over.
 7   Defense says they have an expert waiting in the wings to
 8   analyze what you've analyzed, and that expert says he or she's
 9   going to need some time to do that in advance of trial.
10            MR. KOHL:  Well, I definitely think that -- I
11   understand that they need some time.  I understand why the
12   Court would want to set a date.  I think we shouldn't -- I'd
13   ask the Court to consider the fact that we've turned over 90-
14   something pages of expert reports that put them on notice in
15   terms of what experts to call.  They've only been able to
16   retain experts because they know the nature of the evidence
17   that we're about to produce.
18            THE COURT: Can we count on the government turning
19   over this information by October the 31st?
20            MR. KOHL:  I think that's realistic.  That is
21   realistic, and we can do that.
22            THE COURT: Counsel.
23            MR. SCHERTLER:  Your Honor, thank you.  David
24   Schertler on behalf of the defendants jointly on this.  I
25   think October 31st is difficult for us.  We -- again, I think
```

1  we're harking back to January of this year, the government
2  proposed a fall trial date saying they could be ready for
3  trial. I imagine they knew at this time this would be part of
4  their evidence at trial.
5      Our problem is two-fold with computer-generated
6  evidence. First of all, there is -- we believe that that
7  evidence is inherently unreliable for a variety of reasons
8  that we would lay out to the Court, but until we actually see
9  the basis on which the government's computer-generated
10 evidence is, we can't even figure out what kinds of motions we
11 would file to address the reliability issue and whether that
12 evidence should even be admissible.
13     But the other part of it is that while we have
14 retained our own experts believing that the government would
15 use ballistics in this case and metallurgy in this case, as
16 well as computer-generated evidence, those experts can't even
17 begin to do their work until they see not only the conclusions
18 of what the government has as result of their experts, but,
19 also, the underlying basis for those conclusions, and I think
20 that goes to the heart of both our requests for all the
21 information underlying the computer-generated evidence, as
22 well as our broader request for all the underlying information
23 that forms the basis for the other government experts; in this
24 case, the metallurgy expert and the ballistics' expert.
25     THE COURT: We'll get to that; but why isn't three

1  months enough time?
2         MR. SCHERTLER: I think the analysis that our
3  experts have to perform will take several months to do at
4  least based upon our conversations with them after they get
5  the government's information. There's also the possibility
6  that based upon what the government has done and what our
7  experts see, they would want to conduct some of their own
8  tests on the evidence, and that just takes more than a few
9  months of time.
10        Again, I think that brings us to being very close to
11 our January 25th trial date when we begin jury selection in
12 this case, and I think it puts the defense just against the
13 wall in terms of trying to get this information, get it to our
14 experts, have them process it, and have them be able to even
15 test some of the government's evidence so that we can have our
16 own independent testing and come to their own conclusions. I
17 think three months is a very short period of time in which our
18 experts should be expected to do that, and that has been our
19 concern from day one.
20        That's why we came up here in January and told the
21 Court we didn't think it was realistic to have a fall trial
22 date, but all of these requests have been made of the
23 government in a very prompt manner. The discovery request
24 came out in December before this Court on arraignment and
25 immediately thereafter. The government's been on notice that

1  we wanted this information from as long as eight to nine
2  months ago, and now we're just -- we're setting deadlines that
3  are even six weeks from where we're now.  The government
4  should have had all this done long before now.
5          THE COURT: All right, Mr. Kohl, if --
6  hypothetically -- if I order that this information be turned
7  over by September the 30th, would it be physically possible?
8          MR. KOHL:  We won't be able to get all of that
9  information.  There's 90 requests in that letter, that 15-page
10 letter, that's sent by Mr. Cool, McCool.  We immediately
11 within the days turned it over to the lab, but until they've
12 got a final product, they won't be able to pull this together.
13         THE COURT: All right.  It will be turned over by
14 October the 15th. Next issue.  I'm having a call transferred
15 into the courtroom that is relevant to the interest and
16 concerns of the parties.  It's -- the call is from Lieutenant
17 Commander -- oh, it's Mr. Johnson.  Oh, okay.
18         This is Mr. Jay Johnson, General Counsel of the
19 Department of Defense.  Hello.
20         (Whereupon, there was technical difficulties which
21 delayed the phone call for a moment.)
22         MR. MALIS:  John Malis for the government.  I
23 understand the Court's trying to arrange a call, and I don't
24 want to interrupt that, but the government would like to be
25 heard on this issue.  We understand -- we believe where the

1  testifying with respect to each of those results that are in
2  those 90 pages of lab results and trajectory diagrams that
3  have been provided.
4           THE COURT:  All right.
5           MR. SCHERTLER:  Your Honor, may I briefly? I'm sorry
6  to go back and forth with the Court.
7           THE COURT:  Yes, sir.
8           MR. SCHERTLER:  Rule 16, as we point out in our
9  motion, requires explicit disclosure with respect to experts.
10 It requires the name of the expert; the opinions; the basis
11 for the any opinions and conclusions; the C.V.  We received
12 nothing like that from the government, and, again, I know this
13 is kind of the -- my constant complaint before the Court, but
14 this testing began before the indictment came out; it began
15 back in 2008.  The government has had over a year to test
16 these materials, and we still have not received any expert
17 disclosures that are required under Rule 16.
18          Again, the purpose of requiring the government to
19 give an expert disclosure to the defense is so that the
20 defense can examine that, analyze it, and prepare to rebut it.
21          THE COURT: All right.  So you're saying -- you're
22 not disagreeing with fact that the names have been disclosed,
23 but you're saying that none of the underlying reports that
24 under Rule 16 should accompany that disclosure have been
25 turned over.

1          MR. SCHERTLER: That's correct. And as the Court
2     knows when you get one of those F.B.I. reports, it's a highly-
3     conclusionary(Phonetic) report that basically has one
4     statement that says that this particular cartridge shell came
5     from an AK-47 or something akin to that. There is no basis --
6     there's no explanation for what the basis is for any of those
7     conclusions, and that's what we have been asking Mr. Kohl
8     for, again, since January of this year.
9          MR. KOHL: Well, Your Honor, the -- all that's left
10    under Rule 16 is to identify -- and, usually, we turn over a
11    curriculum vitae. We turn over a paragraph that summarizes
12    what some of the more global conclusions that the expert's
13    making, but they have all of the specific conclusions that are
14    summarized in each of these reports. They've got the reports.
15         Now, there are some -- you know, we're only talking
16    about the date at this point. We know we have to turn this
17    over. We -- our belief is, Your Honor, 90 days before trial
18    is still plenty of time for their experts to respond to this,
19    especially where they already have the underlying data in
20    terms of the reports that have been produced to date. There
21    is nothing in my office right now that's sitting there; it's
22    only the reports that haven't been generated yet because the
23    lab is still working on some of the evidence that we've just
24    recovered.
25         So we would ask that the Court go with the October

```
 1   30th date that it had proposed on the other evidence.
 2           THE COURT: Can you live with the October 30th date?
 3           MR. SCHERTLER:  Your Honor, we're still -- you know,
 4   Mr. Mc Cool has been the person in charge of our computer-
 5   generated evidence, and he's very concerned about the October
 6   15th date that you set for the computer-generated evidence.
 7   Obviously, we'll do our best with whatever date the Court
 8   sets.
 9           What I would ask, though, at this point, today is
10   September 14th.  If we could have -- you've established a
11   September 30th cutoff date for other aspects of discovery; if
12   we could have an October 15th cutoff date for the computer-
13   generated evidence, the expert disclosures required under
14   Rule 16, as well as the -- what Mr. Hulkower referred to as
15   "the bench notes," which may not be in Mr. Kohl's office, but
16   they are in the F.B.I. lab, either here in Washington, D.C.,
17   or at Quantico, and are easily accessible.  We see no reason
18   why they couldn't have that by October 15th.  With that
19   October 15th, you know, we will do our best to perform the
20   analysis and tests by our experts as expeditiously as we can.
21           THE COURT: It is so ordered.  October 15th for all
22   three categories.  Expert witness disclosures -- I think we
23   just did that.  We've discussed that.
24           Defendants' statements.  The defendants have
25   presented nothing to suggest that the government has not
```