UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 1 3 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 08-360 (RCL) |
| | ) | |
| PAUL A. SLOUGH, | ) | |
| EVAN S. LIBERTY, and | ) | |
| DUSTIN L. HEARD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Before the Court is the defendants' Motion [389, 391] to dismiss the superseding indictment [304] for failure to state an offense under the Military Extraterritorial Jurisdiction Act, or in the alternative, for a bill of particulars under Federal Rule of Criminal Procedure 7(f). Upon consideration of the defendants' motion [389, 391], the government's opposition [397], the defendants' reply [401], the applicable law, the entire record herein, and for the reasons set forth below, the Court will DENY defendants' motion to dismiss and DENY defendants' motion in the alternative for a bill of particulars.

## I.    BACKGROUND

Both the District Court and the Court of Appeals for the District of Columbia Circuit have previously described the factual background of this case. *United States v. Slough*, 677 F. Supp. 2d 112, 116–129 (D.D.C. 2009) ("*Slough I*"), *vacated*, 641 F.3d 544, 555 (D.C. Cir. 2011) ("*Slough II*"); *Slough II*, 641 F.3d at 547–49. Thus, the Court will now only highlight the relevant facts and procedural background. In 2007, the defendants all served as security contractors employed by Blackwater Worldwide. *Slough I*, 677 F. Supp. 2d at 116. At the time, Blackwater provided diplomatic security services for U.S. Embassy personnel in Iraq through a

contract with the Department of State. Defs.' Mot. 1, Feb. 21, 2014, ECF. No. 389.   The defendants were all members of a Blackwater Tactical Support Team called "Raven 23" that operated in Baghdad to support other Blackwater security teams. *Slough I*, 677 F. Supp. 2d at 116.

"On September 16, 2007 a car bomb exploded near the Izdihar Compound in Baghdad, where a U.S. diplomat was conferring with Iraqi officials. American security officials ordered a team from Blackwater Worldwide to evacuate the diplomat to the Green Zone." *Slough II*, 641 F.3d at 547.   In order to secure a safe evacuation route for the diplomat and the other Blackwater team, Raven 23 "took up positions in Nisur Square, a traffic circle located just outside the [Green] Zone in downtown Baghdad," and attempted to stop traffic. *Slough I*, 677 F. Supp. 2d. at 116.   Shortly afterwards, "a shooting incident erupted, during which the defendants allegedly shot and killed fourteen [Iraqi civilians] and wounded twenty others." *Id.*

On December 4, 2008, a grand jury empaneled by this Court returned an indictment charging the defendants with the following: (1) fourteen counts of voluntary manslaughter, in violation of 18 U.S.C. §§ 1112, 2, and 3261(a)(1); (2) twenty counts of attempted manslaughter, in violation of 18 U.S.C. §§ 1113, 2, and 3261(a)(1); and (3) one count of using and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§924(c), 2, and 3261(a)(1). Indictment, ECF No. 1. Each count of the indictment charged the defendants under the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. §§ 3261–3267. *Id.*   The indictment also specifically alleged that the defendants were "employed by the Armed Forces outside of the United States" using the statutory language defining that term found in 18 U.S.C. § 3267(1)(A)(ii)(II). *Id.* ¶ 1; 18 U.S.C. § 3267(1)(A)(ii)(II). The District Court, Judge Ricardo Urbina presiding, subsequently dismissed the indictment against all the defendants for violations

of *Kastigar v. United States*, 406 U.S. 441 (1972).  Upon appeal, the Court of Appeals for the District of Columbia Circuit found that Judge Urbina failed to apply the correct legal standard under *Kastigar* and vacated and remanded the case for a new *Kastigar* hearing.  *Slough II*, 641 F.3d at 554–55.

Upon remand, the government elected to pursue a superseding indictment rather than attempt to defend the original indictment on *Kastigar* grounds.  On October 17, 2013, a second grand jury empaneled by this Court returned a superseding indictment charging each the defendants with the following: (1) thirteen counts of voluntary manslaughter, in violation of 18 U.S.C. §§ 1112, 2, and 3261(a)(1); (2) sixteen counts of attempted manslaughter, in violation of 18 U.S.C. §§ 1113, 2, and 3261(a)(1); and (3) one count of using and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§924(c), 2, and 3261(a)(1).[1] Superseding Indictment, ECF No. 304.  Again, each count of the superseding indictment charged the defendants under MEJA, *id.*, and the indictment specifically alleged that the defendants were "employed by the Armed Forces outside of the United States" using the statutory language defining that term found in 18 U.S.C. § 3267(1)(A)(ii)(II).   *Id.*  ¶  1;  18 U.S.C. § 3267(1)(A)(ii)(II).  The defendants have moved to dismiss the superseding indictment for failure to state an offense under MEJA, or in the alternative, for a bill of particulars.

## II.   LEGAL STANDARD

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. Const. amend VI.  The government must prosecute non-capital felonies punishable by imprisonment for greater than one year by indictment, and the indictment "must be a plain, concise, and definite written statement of the essential facts

---

[1] The indictment also charged defendant Paul Slough with two additional counts of attempted manslaughter. Superseding Indictment ¶ 11, ECF No. 304.

constituting the offense charged." Fed. R. Crim. P. 7(a), (c). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citing *United States v. Debrow*, 346 U.S. 374 (1953); *Hagner v. United States*, 285 U.S. 427 (1932)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). "'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" *Id.* at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). "The test for sufficiency [of an indictment] is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment." *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980).

## III. ANALYSIS

### A. Defendants' Motion to Dismiss for Failure to State an Offense Under MEJA

The defendant's argue that the government's recitation of MEJA's statutory jurisdictional language in the superseding indictment, without further factual elaboration, is insufficient. Congress enacted MEJA in response to a "jurisdictional gap" identified by the United States Court of Appeals for the Second Circuit in *United States v. Gatlin*, 216 F.3d 207, 209 (2d. Cir. 2000). Specifically, the Second Circuit noted "the lack of any congressional authorization to try civilians who commit crimes while accompanying the military overseas in civilian courts of the

United States." *Id.* MEJA grants jurisdiction over crimes committed outside the United States by persons "employed by or accompanying the Armed Forces outside the United States." 18 U.S.C. § 3261(a)(1). Originally, MEJA only applied to those employed as civilians by the Department of Defense or as contractors or subcontractors for the Department of Defense. Congress expanded MEJA's scope in 2004 to include civilian employees, contractors, and subcontractors of any federal agency "to the extent such employment relates to supporting the mission of the Department of Defense overseas." 18 U.S.C. § 3267(1)(A); Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, § 1088, 118 Stat. 1811, 2066–67 (2004).

The defendants previously moved to dismiss the original indictment for lack of jurisdiction under MEJA, which Judge Urbina denied. *See* Mot. to Dismiss 2 n.2, ECF No. 389; Mot. Hr'g Tr. 45–47, Feb. 17, 2009, ECF No. 127. The defendants do not seek to revisit Judge Urbina's ruling here, however, and instead challenge the superseding indictment on a different ground: The defendants argue, citing *Hess* and *Russell v. United States*, 369 U.S. 749 (1962), that the superseding indictment's assertion that the defendants' "employment related to supporting the mission of the United States Department of Defense in the Republic of Iraq," ¶ 1.a, ECF No. 304, alleges insufficient facts to state an offense under MEJA. Mot. to Dismiss, ECF No. 389.

In both *Russell* and *Hess*, the Supreme Court rejected indictments that quoted the statutory language but failed to allege key facts going to the core of the criminal conduct. In *Russell*, the Supreme Court reviewed convictions in several cases under 2 U.S.C. § 192, which penalizes the failure "to answer any question pertinent to [a] question under inquiry" by Congress or any of its committees. *Id.*; *Russell*, 369 U.S. at 751–52. In each of the cases under

review, the indictment simply asserted, using the language of the statute, that the defendant refused to answer questions "'pertinent to the question then under inquiry'" by a congressional subcommittee. *Russell*, 369 U.S. at 752. Each defendant moved to quash the indictment for failure "to state the subject under investigation at the time of the subcommittee's interrogation of the defendant." *Id.* at 753. In rejecting the challenged indictments, the Court noted that "the very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer." *Id.* at 764. The Court therefore concluded that the subject under inquiry by Congress or the relevant committee was "central to every prosecution under the statute." *Id.* The Court held that, "[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* As the Court later explained, this increased factual specificity is required "[b]oth to provide fair notice to defendants and to ensure that any conviction would arise out of the theory of guilt presented to the grand jury." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109–10 (2007); *see also Russell*, 369 U.S. at 766–71.

Similarly, the indictment in *Hess* charged the defendant with using the mail in furtherance of a scheme to defraud. *Hess*, 124 U.S. at 483–84. The indictment in *Hess* provided facts concerning Hess's use of the mail, but gave no facts about the scheme to defraud that Hess had formulated. *Id.* Instead, the indictment merely alleged in the words of the statute that Hess had "devised a scheme to defraud." *Id.* at 484. The Court found that "the absence of all particulars of the alleged scheme render[ed] the [indictment] as defective as would be an indictment for larceny without stating the property stolen, or its owner or party from whose possession it was taken." *Id.* at 487. Again, the Court emphasized that the indictment must give

the defendant notice "of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense." *Id.* at 488 (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)).

The defendants' argument from *Russell* and *Hess*, however, is inapposite. The language in *Hess* comparing the defective indictment in that case to an indictment for larceny that failed to identify the stolen property or the person from whom it was stolen, *id.* at 487, is particularly instructive in this case. Any such indictment would not "fairly inform[] a defendant of the charge against which he must defend," *Hamling*, 418 U.S. at 117, because the lack of detail prevents the defendant from marshaling any information at his disposal to mount an effective defense. Because the defendant's guilt in a case charging larceny "depends so crucially," *Russell*, 369 U.S. at 764, on the facts of what was taken, when, and from whom, basic fairness demands giving the defendant notice of these facts so that he may attempt to negate them in his defense.

In contrast, recitation of the jurisdictional elements of MEJA using the statutory language presents no unfairness to the defendants: the recitation of the statutory language gives the defendants notice of the jurisdictional elements of the charges against them and allows them to marshal any information at their disposal to challenge this Court's jurisdiction. This is to say that the defendants need not know how the government intends to prove that their employment was related to supporting the mission of the Department of Defense in Iraq in order to mount a defense that their employment was unrelated to that mission. *C.f. United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991) ("[T]he function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them.") Indeed, the defendants have already done so. *See* Defs.' Mot. to Dismiss for Lack of

Jurisdiction, Jan. 13, 2009, ECF No. 34.  Thus, this case is most similar to the many cases in which the Courts of Appeal have held that indictments need only state the jurisdictional elements of federal statutes using the statutory language and without alleging additional evidence.  *See United States v. Hill*, 386 F.3d 855, 859 (8th Cir. 2004) (finding indictment sufficient where it alleged interstate commerce elements of 18 U.S.C. 922(g)(1) using statutory language); *United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004) (noting that indictments charging crimes under the Hobbs Act or RICO "need not set forth facts alleging how interstate commerce was affected, nor otherwise state any theory of interstate impact" (citing *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995)); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ("We have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial, and we decline to do so now."); *United States v. Williams*, 679 F.2d 504, 509 (5th Cir. 1982) ("An indictment which alleges the interstate commerce element of a federal offense in conclusory terms, without setting forth evidentiary detail, is not insufficient.").  The superseding indictment tracked the jurisdictional language in MEJA and thereby gave the defendants fair notice of the jurisdictional elements of the charges against them.  The Court therefore concludes that the indictment is sufficient.

### B. Defendants' Motion in the Alternative for a Bill of Particulars

The defendants have moved in the alternative for a bill of particulars.  The defendants previously moved for a bill of particulars in connection with their motion to dismiss the indictment for lack of jurisdiction under MEJA.  Defs.' Mot. for Bill of Particulars, Jan. 20, 2009, ECF No. 40.  Judge Urbina denied the defendants' motion for a bill of particulars with respect to the jurisdictional elements of the indictment.  Mot. Hr'g Tr. 9–10, Aug. 6, 2009, ECF

No. 126.

"The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). "The determination of whether a bill of particulars is necessary rests within the sound discretion of the trial court." *Id.* at 1194. The Court notes, however, that "'[i]t is not the function of a bill of particulars to provide detailed disclosure of the government's evidence in advance of trial.'" *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (quoting *Overton v. United States*, 403 F.2d 444, 446 (5th Cir. 1968)). "[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Id.* at 1193.

The Court finds that a bill of particulars is unnecessary. In dismissing the defendants' prior motion for a bill of particulars, Judge Urbina noted that "the government has produced over 2,500 pages of documents concerning the contract between Blackwater Worldwide and the Department of State. Under these circumstances, the defense cannot seriously maintain that they lack adequate notice of jurisdictional information or the jurisdictional basis for the prosecution." Mot. Hr'g Tr. 9–10, Aug. 6, 2009, ECF No. 126. In denying the defendants' motion to dismiss for lack of jurisdiction under MEJA, Judge Urbina noted that jurisdictional issues under MEJA could present "a vulnerability in the government's case" at trial, and Judge Urbina noted he would "closely scrutinize" the government's evidence for jurisdiction in ruling on the defendants' motion for judgment of acquittal. Mot. Hr'g Tr. 46, Feb. 17, 2009, ECF No. 127. The Court is not inclined to disturb Judge Urbina's ruling denying a bill of particulars here,

though it will closely scrutinize the government's jurisdictional evidence in ruling on the defendants' motion for judgment of acquittal.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' Motion [389] to dismiss the superseding indictment for failure to state an offense under MEJA is **DENIED**; and it is further

**ORDERED** that the defendants' Motion [391] in the alternative for a bill of particulars is **DENIED**.

It is **SO ORDERED** this _13th_ day of May 2014.

ROYCE C. LAMBERTH
United States District Judge