**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL A. SLOUGH,<br>EVAN S. LIBERTY, and<br>DUSTIN L. HEARD,**<br><br>Defendants. | No. 1:08-cr-360-RCL |
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**NICHOLAS A. SLATTEN,**<br><br>Defendant. | No. 1:14-cr-107-RCL (joined) |

**DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANTS' MOTION *IN LIMINE* TO LIMIT THE USE OF GRAPHIC
PHOTOGRAPHS AND PREJUDICIAL BALLISTICS DEMONSTRATIONS AT TRIAL**

The Defendants, through undersigned counsel, hereby reply to the Government's Response to their Motion *in Limine* to Limit the Use of Graphic Photographs and Prejudicial Ballistics Demonstrations at Trial. The government does not oppose the central request made in the Defendants' motion *in limine* – that the Court "examine all photographs and demonstrative ballistics exhibits that the government intends to introduce so that it can rule on the admissibility of such evidence before trial, with the benefit of argument from the parties." Defendants' Motion *in Limine*, ECF No. 438, at 2. The government acknowledges that the Court will be called upon to exercise its discretion with respect to the admissibility of these categories of evidence (although it has yet to specify the particular items within those categories that it will seek to admit at trial), and it does not

dispute that a pre-trial hearing is the appropriate setting for the Court to view the evidence, hear arguments on admissibility, and issue its rulings.  *See* Gov't Response to Motion *in Limine*, ECF No. 480, at 3.

The government has previewed certain arguments it intends to offer in support of the admissibility of "photographic evidence showing the harm that [the Defendants] caused to the victims in this case." We respond briefly to those arguments here, and will supplement our responses at a pre-trial hearing when the particular evidence that the government seeks to admit has been identified.

First, the government notes that the harms to the victims in Nisur Square were caused by "powerful weaponry," namely, "a sniper rifle, two types of machine guns, and grenade launchers." Gov't Response to Motion in Limine, ECF No. 480, at 1.  The government's focus on the "power" of the weapons with which the Defendants were armed, and the seriousness of the injuries that resulted from use of those weapons, only confirms the significant potential for unfair prejudice that flows from the photographic evidence that the government will seek to admit at trial.  As the Defendants noted in their opening motion, the Defendants had *nothing to do* with selecting the weapons with which they were armed on September 16, 2007, and the nature of those weapons thus can have *no* probative value as to the only issues in dispute: whether the Defendants shot any particular victim, whether they did so in the belief they were under attack, and whether that belief was reasonable under the circumstances as they perceived them. .  ECF No. 438, at 6.  Here, the "powerful weaponry" with which the Defendants were armed was issued to the Defendants by the United States Government, because the government deemed "powerful weaponry" necessary to accomplish the Defendants' mission of protecting Department of State personnel in an active war zone.  The jury

2

must decide whether the circumstances that each Defendant perceived in Nisur Square legally justified the use of force, but the nature of the weapons the Defendants possessed and the kinds of injuries those weapons are capable of causing are not at issue in this case.  Allowing the government to demonstrate, through graphic and emotionally-charged photographic evidence, the "power" of the weapons that the government itself issued to the Defendants, instead would create "an undue tendency to suggest decision on an improper basis." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013).

The government further asserts that graphic photographs of injuries and/or deaths would serve to (1) "corroborate witness accounts about how the shooting occurred and what caused the deaths and injuries at issue" and (2) substitute for unavailable or sparse autopsy and hospital records for the alleged victims.  ECF No. 480, at 2-3.  On the "corroboration" point, and as the Defendants noted in their opening motion, there will be no dispute at trial that some persons were injured or killed in Nisur Square and that multiple members of Raven 23 fired weapons during the event.  Indeed, government witnesses Jeremy Ridgeway, James Watson, and Donald Ball, who were all members of Raven 23, have all admitted to firing at various targets in the course of the events in Nisur Square.  The admission of graphic photographs of injuries or corpses to "corroborate" the undisputed nature of the weapons that were fired by Raven 23 and the kinds of injuries that resulted from the use of those weapons would "inappropriately dispose a jury to exact retribution" without contributing any probative value to a "fact of consequence."  *See United States v. Rezaq*, 134 F.3d 1121, 1138 (D.C. Cir. 1998) (photographic evidence had minimal probative value where it "only provided further corroboration" of a point that "did not especially need elucidation"); Fed. R. Evid.

401 (to be relevant, evidence must bear on a "fact [that] is of consequence in determining the action").[1]

As to the government's avowed necessity of admitting photographic evidence as a substitute for unavailable or sparse autopsy and hospital records, the government has not (1) identified which photographs of which victim(s) it intends to introduce, (2) disclosed the nature of the medical records that are or are not available for each of those victim(s), or (3) indicated whether any or all of the surviving victim(s) at issue will testify at trial. Whether, what kind, and what quantity of photographic evidence relating to any victim should properly be admitted under the Rules of Evidence will depend on the answers to all of these questions, which should be addressed at a pre-

---

[1] The Government cites three out-of-Circuit cases in support of the admissibility of graphic evidence of victim injuries, but all three of those cases arose in death penalty proceedings in which the nature of the injuries to the victim(s) were directly relevant to issues the jury was required to decide. In both *United States v. Corley*, 519 F.3d 716 (7th Cir. 2008), and *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), the photographs at issue were admitted in the *penalty phase* of the proceedings and were relevant to aggravating circumstances that the juries were required to address in deciding whether to impose the death penalty. They were not shown to the jury when it was determining whether the defendants had committed the offense. *See Corley*, 519 F.3d at 723-26 (two photos of post-mortem charred body relating to unadjudicated conduct in which defendant set on fire a sleeping woman were properly admitted in penalty phase where viciousness of attack was relevant to jury's determination of whether defendant had engaged in "a continuing pattern of violence" and had "low rehabilitative potential" and because extent of victim's injuries provided a context of statements she made before death, which defendant relied on as evidence of his innocence); *Sampson*, 486 F.3d at 42-44 (crime scene and autopsy photos that shed light on how victims were killed were relevant to whether murders were committed in an especially heinous, cruel, or depraved manner for purposes of the death penalty deliberations). In the third case, *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007), 32 crime scene and autopsy photographs depicting the decomposed body of a victim were admitted in the guilt phase of the death penalty case where the decomposed condition of the victim (whose body was not discovered for more than two weeks) was directly relevant to certain arguments made by the Defendant, including the "key theme" of his defense that the Government "had little physical evidence" linking him to the crime, and to illustrate why the body was not discovered sooner. These cases are inapposite to the circumstances of this case, where the nature of the injuries suffered by the alleged victim(s) has no equivalent relevance to issues the jury must decide.

4

trial hearing. Indeed, it is notable that even in the out-of-Circuit death penalty cases on which the government relies as authority for the admissibility of graphic photographic evidence, the Courts made clear that the district courts in those matters exercised discretion to *exclude* from evidence some (and in some cases many) of the photographs that the government had offered into evidence because of the danger of unfair prejudice or other concerns. *See Corley*, 519 F.3d at 726 (district court allowed admission of only two out of ten or fifteen photos depicting the burning victim's injuries); *Sampson*, 486 F.3d at 43 (noting that the district court excluded a number of photographs that it deemed cumulative, redundant, duplicative, or repetitive and handled "gruesomeness concerns" with "a thoughtful consideration of potential prejudice"). This approach is consistent with the admonition of the D.C. Circuit in *Rezaq* that district courts should assess the admissibility of graphic evidence with attention to the broadly-recognized principle that "photographs of gore may inappropriately dispose a jury to exact retribution." *Rezaq*, 134 F.3d at 1138. For this reason, we ask the Court to review any photographic evidence of injuries or deaths that the government seeks to admit at trial in order to assess the admissibility of that evidence under Evidence Rules 401, 402, and 403. *See United States v. Cunningham*, 694 F.3d 372, 386 & n.24 (3d Cir. 2012) (district court should personally examine challenged evidence before deciding to admit it under Rule 403, especially in the case of visual images because of the "impact" they may have on a jury).

      Turning to the admissibility of ballistics demonstrations, the government states that it intends to "use limited demonstrations to show the jury how the weapons [allegedly used by the Defendants] function as well as their capabilities." Gov't Response to Motion *in Limine*, ECF No. 480, at 3. These "limited" demonstrations apparently will include, at a minimum, the "ballistic gelatin block" videos addressed in the Defendants' opening motion as well as photographic and video

demonstrations of a grenade launcher. *Id*. at 3-4 & n.1. Again, the apparent purpose of the gelatin block videos—to show the effect on a flesh-like substance of the weapons issued by the State Department to protect its personnel in a war zone—is not relevant to any disputed issue to be tried. In any event, as with the graphic photographs of human injuries and deaths, it is critical that the Court review in advance any ballistic demonstrations that the government intends to introduce at trial so that the Court can fairly and accurately assess the government's relevancy arguments, as well as the danger of unfair prejudice presented by the evidence, before the jury is exposed to the evidence. *See Cunningham*, 694 F.3d at 386 & n.24. We do not understand the government to disagree that a pre-trial review of its photographic and ballistics demonstration evidence, followed by admissibility rulings by the Court based on the arguments of the parties, is appropriate.

## CONCLUSION

Because the graphic images and ballistics demonstrations discussed above present a significant potential for causing unfair prejudice to the Defendants if they were admitted at trial, the Court should review this evidence and evaluate its admissibility under the Federal Rules of Evidence at a pre-trial hearing.

Dated: May 27, 2014                                    Respectfully submitted,

                                                                                     /s/ David Schertler
David Schertler (No. 367203)
Danny Onorato (No. 480043)
Lisa H. Schertler (No. 430754)
Janet Foster (Admitted *Pro Hac Vice*)
Schertler & Onorato, L.L.P.
575 7th Street, N.W., Suite 300 South
Washington, D.C. 20004
Telephone: (202) 628-4199
*Counsel for Defendant Dustin L. Heard*

/s/ Brian M. Heberlig
Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Linda C. Bailey (No. 985081)
Scott P. Armstrong (No. 993851)
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
Telephone:  (202) 429-3000
*Counsel for Defendant Paul A. Slough*


/s/ Thomas G. Connolly
Thomas G. Connolly (No.420416)
Steven A. Fredley (No. 484794)
Jared P. Marx (No.1008934)
Anne K. Langer (No. 501389)
Harris, Wiltshire & Grannis LLP
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*

/s/ William Coffield
William Coffield (No. 431126)
Coffield Law Group LLP
1330 Connecticut Avenue, N.W., Suite 220
Washington, D.C.  20036
Telephone:  (202) 429-4799
*Counsel for Defendant Evan S. Liberty*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May, 2014, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Anthony Asuncion
T. Patrick Martin
Christopher Kavanaugh
John Crabb, Jr.
David Mudd
United States Attorney's Office
for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

/s/ David Schertler
David Schertler