**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Crim. No. 1:08-CR-360 (RCL)** |
| | ) | |
| **PAUL A. SLOUGH,** | ) | |
| **EVAN S. LIBERTY,** | ) | |
| **DUSTIN L. HEARD,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Crim. No. 1:14-CR-107 (RCL)** |
| | ) | |
| **NICHOLAS A. SLATTEN,** | ) | **Judge Royce C. Lamberth** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANTS' OPPOSITION TO GOVERNMENT'S SUPPLEMENT TO MOTION
TO EXCLUDE LEGAL OPINIONS REGARDING APPLICABILITY OF MEJA**

Defendants Paul Slough, Evan Liberty, and Dustin Heard, in No. 08-CR-360, and

Defendant Nicholas Slatten, in No. 14-CR-107, respectfully submit this memorandum in

opposition to the Government's Supplement to Motion to Exclude Out-of-Court Legal Opinions

Regarding Applicability of MEJA to Private Contractors in Iraq (ECF 501, filed June 2, 2014).

**I.    DEFENDANTS' EVIDENCE ON MEJA IS FACTUAL EVIDENCE, NOT LEGAL
OPINION**

The government's entire motion to exclude out-of-court statements regarding MEJA is

based on a false premise: that the Defendants intend to offer legal opinions on whether

jurisdiction for this prosecution exists under MEJA.  Defendants' evidence going to the MEJA

element will not consist of legal opinion, but instead of *factual evidence* on whether Defendants'

  
employment by the State Department to provide diplomatic security "relate[d] to supporting the mission of the United States Department of Defense," as alleged in the indictment.[1]  The government may not exclude Defendants' factual evidence on that central disputed issue by mislabeling it "legal opinion."

This Court ruled in February 2009, and the parties both now agree, that whether Defendants' employment by the State Department "related to supporting the mission of the Department of Defense" is a factual issue for jury determination.[2]  It is an element of each charged offense, under the statute defining the offenses charged.[3]

Defendants do not seek, as the government claims, to admit out-of-court legal opinions stating whether jurisdiction exists under MEJA.[4]  Instead, Defendants intend to adduce evidence to disprove the charged element as a matter of fact: to show that their employment by the State Department—both in general under their subcontracts, and during their charged conduct on

---

[1] Sup. Ind., No. 08-CR-360, ¶ 1(a); Ind., No. 14-CR-07, ¶ 1(a).

[2] *See* May 29, 2014 Mot. Hrg. Tr. at 6:22 (government); *id.* at 11:8-16 (defense); ECF No. 201, at 3 (Gov. Mot. in Limine, Dec. 18, 2009); ECF No. 212, at 2 (Def. Opp., Dec. 28, 2009); Feb. 17, 2009 Mot. Hrg. Tr. at 45-46 (bench ruling by Judge Urbina).

To be sure, Defendants believe the evidence on this question will permit only one possible conclusion, and that this Court will be able to resolve the question as a matter of law on a motion for judgment of acquittal under Rule 29.  *See* ECF No. 212, at 2 n.1; Feb. 17, 2009 Mot. Hrg. Tr. at 46.

[3] *See* 18 U.S.C. § 3261(a)(1) (defining MEJA offense, including element that the defendant be "employed by ... the Armed Forces outside the United States" "while" "engag[ing] in [proscribed] conduct"); *id.* § 3267(1)(A)(ii)(II) (defining subcontract employees of non-Defense agencies to be "employed by the Armed Forces outside the United States" only "to the extent such employment relates to supporting the mission of the Department of Defense overseas"); Sup. Ind. ¶¶ 1, 9, 11, 13 (No. 08-CR-360) (charging MEJA offenses); Ind. ¶¶ 1, 5 (No. 14-107) (same).  Both parties have submitted proposed jury instructions requiring the jury to determine whether the government has proven this element, like every other element of the charged offenses, beyond a reasonable doubt.

September 16, 2007—did not relate to supporting any mission of the Department of Defense, but instead was in support of the *State Department*'s responsibility to provide diplomatic security. The fact that some evidence may be phrased in the words of the statute does not convert it to a prohibited legal conclusion.[5]  Indeed, it is difficult to imagine evidence addressing whether Defendant's employment "related to supporting the mission of the Department of Defense" that would not use those words.  The issue is still a factual issue, every bit as factual as whether the Defendants caused the deaths or injuries alleged in the indictment, or whether the Defendants acted in self-defense.

The government tries to convert Defendants' evidence into prohibited legal opinion by contending it goes to the "ultimate issue" of whether there is jurisdiction.[6]  But there has never been a bar on factual evidence going to a disputed element, "ultimate issue" or not.  Fact evidence is admissible if it is relevant, *i.e.*, if it tends to make a material fact "more or less probable than it would be without the evidence."[7]  Evidence from government sources knowledgeable about the Defense Department's mission, stating that diplomatic security is not the Defense Department's responsibility, or that these Defendants were not employed to support the Defense Department, easily clears Rule 401's relevance hurdle.  Moreover, even for opinion evidence, the Federal Rules of Evidence *expressly abolish* the common-law rule against opinion

---

[4] *See* May 29, 2014 Tr. at 6:4-5, 6:18-19, 15:3-4; ECF No. 201, at 1, 3 (Gov. Mot. in Limine); ECF No. 501, at 4 (Gov. Supp. to Mot.).

[5] *See, e.g.*, *Huthnance v. District of Columbia,* 793 F. Supp. 2d 183, 208 (D.D.C. 2011) (Lamberth, C.J.) ("[A]lthough it's true that [witnesses] shouldn't testify as to legal conclusions, [a witness] may use terms such as 'probable cause' or 'deliberate indifference,' as long as he or she uses them in a manner that is readily understood by the jury and not likely to cause confusion or lead the jury to an incorrect view of the law.").

[6] *See* ECF No. 501, at 3 ¶ 4 (Gov. Supp. to Mot.); May 29, 2014 Tr. at 8:17-19.

[7] Fed. R. Evid. 401(a); *see* Fed. R. Evid. 402.

on the "ultimate issue."[8]   The rules' drafters did away with the prohibition because it was

"unduly restrictive, difficult of application, and generally served only to deprive the trier of fact

of useful information."[9]

In any event, the Defendants do not seek to adduce legal opinion on whether jurisdiction

exists under MEJA.  Instead, they will adduce factual evidence showing that Defendants'

contract employment for the State Department—providing personal security for diplomatic

personnel—did not support, or relate to supporting, the Defense Department's mission in Iraq.

### A.   Deputy Secretary England's Letters State Relevant Facts

The government chiefly focuses on two letters from then-Deputy Secretary of Defense

Gordon England, to then-Senator Barack Obama and Representative David Price, in which

Deputy Secretary England stated that these Defendants' employment by the State Department as

private security contractors did not support the mission of the Department of Defense:

> Your letter referenced the recent incident in Iraq involving Blackwater
> USA private security contractors under contract with the Department of State.
> I am informed that these private security contractors were not engaged in
> employment supporting the DoD mission overseas[.][10]

---

[8] *See* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

[9] *Id.* adv. comm. notes, 1972 Proposed Rules (quoting 7 Wigmore §§ 1920, 1921; McCormick § 12).  The drafters further noted that "The basis usually assigned for the rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric.'"  *Id.* (citing 7 Wigmore § 1920, p. 17).

[10] ECF No. 501-1, at 4 (Ltr. from Dep. Sec. England to then-Sen. Obama, USAO_009046).  Defendants do not seek to admit, and are willing to redact, the remainder of the sentence, "and, therefore, are not subject to Federal criminal prosecution under the Military Extraterritorial Jurisdiction Act."  A copy of the letter to then-Sen. Obama with the proposed redaction is attached as Exhibit 1.

> I am informed that the Blackwater USA private security contractors working under a Department of State contract were not engaged in employment that was in support of the DoD mission.[11]

If anyone is in a position to know the mission of the Department of Defense, or whether

Defendants' employment was in support of that mission, it is the Deputy Secretary of Defense.

On that question, Deputy Secretary England's statements are factual and could not be more

centrally relevant.

### B.    Other Government Reports Similarly State Relevant Facts

Other government reports that Defendants may seek to introduce also contain relevant

factual information bearing on whether Defendants' State Department employment related to

supporting the Department of Defense.  Most prominently, a panel commissioned by the

Secretary of State investigated the use of personal security contractors in Iraq in direct response

to this incident, and found, among its principal findings, that the U.S. military in Iraq in 2007 did

not consider providing diplomatic security to be part of the DoD's responsibility.[12]  That finding

---

[11] ECF No. 501-2, at 3 (Ltr. from Dep. Sec. England to Rep. Price, USAO_009042).

Defendants believe that the preceding four sentences of that paragraph, describing MEJA, are a neutral and accurate description of the statute and do not constitute legal opinion.  Instead they are responsive to Representative Price's request for "information regarding the [Defense] Department's approach to contractor accountability under the UCMJ": they are part of the context for understanding the Department's approach to criminal enforcement against various contractors, both DoD contractors and non-DoD contractors.

Defendants submit that those four sentences provide context and do not state opinion, and that the letter is admissible in unredacted form.  Nonetheless, to the extent those four sentences could be viewed to state legal opinion, Defendants are amenable to redacting those four sentences if necessary.  The last sentence of the paragraph, quoted above, is factual, and centrally relevant to the disputed issue charged in the indictment.

A copy of the letter to Rep. Price with the potentially redactable sentences highlighted is attached as Exhibit 2.

[12] *Report of the Secretary of State's Panel on Personal Protective Services in Iraq*, at 5 (Principal Finding 6) (October 2007) (the "Kennedy Report") (previously filed as ECF No. 34-24, *discussed in* ECF No. 212, at 5 & nn.4-5).  We re-attach the Kennedy Report here as Ex. 3.

is obviously centrally relevant to whether Defendants' State Department employment to provide

diplomatic security supported the Defense Department's mission.

Other government reports bear on the same factual issue.  The Congressional Budget

Office, for instance, found as part of its reporting responsibility to Congress that the Defense

Department provides security only to its own contractors and to those who deploy with combat

forces or directly support the military mission, and that U.S. government agencies not meeting

the latter requirement must provide their own security—as the State Department did here.[13]   The

Government Accountability Office, under similar reporting responsibilities, published similar

findings.[14]  In explaining the State and Defense Departments' differing security responsibilities,

the GAO reported that the military uses soldiers, not private security providers, to provide

security for work in support of the military's mission, because of concerns about the status of

security personnel under the international law of war.[15]  By contrast, the State Department has

responsibility for providing diplomatic security in Iraq, and uses private security providers to

fulfill that responsibility.[16]

---

[13] Congressional Budget Office, *Contractors' Support of U.S. Operations In Iraq*, at 12-13 (Aug. 2008) ("CBO Report") (previously filed as ECF No. 34-16 and 34-17, *discussed in* ECF No. 212, at 4-5 & n.3).  We re-attach the CBO Report here as Ex. 4.

[14] Government Accountability Office, *REBUILDING IRAQ:  Actions Needed to Improve Use of Private Security Providers*, at 10-13 (July 2005) ("GAO Report") (excerpt previously filed as ECF No. 34-23, *discussed in* ECF No. 212, at 4-5 & n.3) (reporting that "The U.S. Military Provides Security For Civilians and Contractors Who Deploy with the Force").  We re-attach the GAO Report here as Ex. 5.

[15] *Id.* at 10-11 (Ex. 5).

[16] *Id.* at 12-13 (Ex. 5).

All of this information is factual, and highly relevant to whether Defendants' State Department employment supported the Defense Department's mission.  All of it easily clears Rule 401's standard for relevance.

In addition, all of this evidence is directly relevant to rebutting anticipated argument and evidence from the government.  The government is likely to state in opening, and will elicit evidence in its case-in-chief, that Defendants' provision of diplomatic security allegedly supported the Department of Defense in a number of claimed ways:  by relieving the military of responsibility for providing for such services; by providing security assistance to certain military actors on certain isolated occasions; and/or by serving the "overarching" "overall mission of the United States."[17]  We fully expect the government's evidence and argument to open the door wide to evidence refuting these contentions.

### C.   The Government's Overbroad Proposed Order Seeks Prematurely to Exclude Wide Swaths of Relevant Factual Evidence

Apart from the specific documents discussed above, which were addressed in the original briefing of this motion,[18] the government has now attached to its Supplement a proposed order broadly seeking to exclude dozens of proposed defense exhibits bearing on MEJA.  Whereas the government's original proposed order sought simply to exclude "any out-of-court statements of legal opinion concerning the applicability of [MEJA] to private security contractors in Iraq,"[19] the government has now slipped in a proposed order expressly barring a wide swath of defense

---

[17] May 29, 2014 Tr. at 9:21-22 (government argument).

[18] *See* ECF No. 201, at 2 & nn.4-7; ECF No. 212, at 3-6 & nn. 2-4.

[19] ECF No. 201-1 (Gov. Proposed Order, Dec. 17, 2009), *incorporated in*  ECF No. 445 (Gov. Renewed Motion in Limine, May 16, 2014).

proposed exhibits, months before their being offered, without any individual analysis, and in the absence of a record as to foundation.

The government has made no effort to address these exhibits document-by-document and has no legitimate basis for their exclusion.  Defendants decline to be drawn into that premature dispute.  At the appropriate time, Defendants will offer fact evidence that is relevant and proper under the rules, including evidence to rebut that offered in the government's case-in-chief.

## II.    GOVERNMENT REPORTS OFFERED BY THE DEFENSE WILL BE ADMISSIBLE AS PUBLIC RECORDS UNDER FED. R. EVID. 803(8)

The government's motion in limine (ECF No. 201, *renewed*, ECF No. 445) sought to exclude "out-of-court statements of legal opinion concerning the applicability of [MEJA] to private contractors in Iraq."[20]  The only grounds asserted were that it is the sole province of the Court to tell the jury what the law is,[21] and that purported statements of legal opinion regarding the applicability of MEJA by others would be irrelevant and confuse the jury.[22]  Hearsay was not mentioned.[23]

At the May 29, 2014 motions argument, the government argued for the first time that out-of-court opinions regarding MEJA are "rank hearsay."[24]  The government now belatedly asserts this new argument in its supplement.  Its failure to raise the issue in its first two iterations of the motion is reason enough to deny the motion.  Moreover, since no documents have yet been

---

[20] ECF No. 445 at 1 (renewed motion); *see also* ECF No. 201, at 1 (original motion, title and first paragraph, relief requested).

[21] ECF No. 445, at 1 (quoting *Marbury v. Madison*).

[22] *Id.* at 1-2, 3.

[23] *See generally* ECF No. 201, ECF No. 445.

[24] May 29, 2014 Tr. at 7:10-11; *see also id.* at 9:3-6.

offered and no foundation has yet been laid, a motion on hearsay grounds should certainly be denied as premature.  In any event, when offered, any government statements or reports on this issue (to the extent offered for their truth) will be admissible as public records under Federal Rule of Evidence 803(8).

"A record or statement of a public office" is admissible, over hearsay objection, if:

(A)  it sets out:

(i)  **the office's activities**;

(ii)  a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; **or**

(iii)  in a civil case or **against the government in a criminal case, factual findings from a legally authorized investigation**; and

(B)  neither the source of information nor other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8) (emphasis added).  The government statements principally at issue here—Deputy Secretary England's letters, the Kennedy Report, and the CBO and GAO reports—will be admissible both as reports setting out public office activities under Rule 803(8)(A)(i), and as reports setting out factual findings from a legally authorized investigation under Rule 803(8)(A)(iii).[25]

Each of these reports—from the Deputy Secretary of Defense, a State Department blue-ribbon panel, the Congressional Budget Office, and the Government Accountability Office—is a "record or statement of a public office."  Rule 803(8).  The public records exception is

> based upon the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such

---

[25] Depending on the foundation shown, some may be admissible as well as reports of matters observed while under a legal duty to report, under Rule 803(A)(ii).

records are subject will disclose inaccuracies.  In addition the disruptive effect of bringing public officials into court to testify about matters that have generally been accurately reported and recorded is avoided.  Use of the record also serves the public convenience by saving time and the expenditure of public money.  Moreover, the record is likely to be much more reliable than the official's often hazy recollection.[26]

Further, each of these reports sets out the activities of its respective public office:[27]

- A principal duty of every Executive Department is to respond to congressional inquiries.  In providing an official Defense Department response to inquiries from a Senator and Representative on a matter of legislative concern, Deputy Secretary England was performing one of the activities of  his office as the Defense Department's number two official.

- The Kennedy Report set out the activities of a panel of State Department officials specifically tasked by the Secretary with conducting the investigation and making the findings set out in the report.

- The Congressional Budget Office and the General Accountability Office each regularly report to Congress on topics of legislative concern. Their published reports set out the regular activities of those offices.

Thus, each of these reports is admissible as a public record under Rule 803(8)(a)(i).

Each is also admissible as a report setting out factual findings from a legally authorized investigation under Rule 803(8)(A)(iii).  The Secretary of State's Panel, led by Ambassador Kennedy, and the CBO and GAO, were each authorized to investigate the matters on which they reported, and each issued a report containing factual findings based on its investigation.[28]  Such reports are broadly admissible, subject only to judicial limitation based on unreliability,

---

[26] Michael H. Graham, 30C *Fed. Prac. & Proc. (Evidence)* § 7049, at 214 (2011 interim ed.) (citations omitted).

[27] *See* Rule 803(8)(A)(i); *United States v. Clarke*, 628 F. Supp. 2d 15, 19-20 (D.D.C. 2009) (record is admissible under Rule 803(8)(A)(i) if it sets forth "a regular activity exercised by the agency"); *see also Direct Supply, Inc., v. Specialty Hosps. of Am.*, 878 F. Supp. 2d 13, 20 n.10 (D.D.C. 2012) (mayoral orders are public records setting out a public office's activities).

[28] *See* Kennedy Report at 3-4, 6-7 (Ex. 3); CBO Report at Preface, 1-2 (Ex. 4); GAO Report at cover page, 1-3 & n.2, 3-6 (Ex. 5).

relevance, or unfair prejudice.[29]  Significantly, admissibility is not restricted to the factual

findings; the *reports setting out those findings* come in, even if they contain opinions or

conclusions based on those findings.[30]

Deputy Secretary England's letters are no different.  The government implausibly claims

the letters do not reflect an authorized investigation from which Deputy Secretary England could

conclude that Defendants' employment did not relate to supporting the DoD mission.[31]  But the

letters were not based on speculation.  Deputy Secretary England, the Defense Department's

number two official, was responding on behalf of the Secretary and the Department of Defense

to specific inquiries from a member of each House of Congress.[32]  Heads of Executive

---

[29] *See, e.g.*, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 165-69 (1988) (noting the
Senate's broad conception of admissibility was more consonant with the Rule's text and advisory
committee notes than the House's narrower conception strictly construing "factual findings"); *In
re Korean Air Lines Disaster*, 932 F.2d 1475, 1481-83 (D.C. Cir. 1991); *accord* Michael H.
Graham, 30C *Fed. Prac. & Proc. (Evidence)* § 7049, at 238; *id.* at 263 (discussing *Beech
Aircraft*'s broad approach); *id.* at 260-61, n.35 (cont'd) (same, discussing *Korean Air Lines*).

The Rule "assumes admissibility in the first instance," and the burden of proving
untrustworthiness is on the party disputing admissibility.  *Korean Air Lines Disaster*, 932 F.2d at
1482 (citations omitted).  The government makes no argument that any of the evidence disputed
here is untrustworthy.  If it did, the Court's focus would be on the *reliability* of the report, not the
accuracy or completeness of its conclusions.  Thus, the Court would "examine the manner in
which the report was prepared, not 'whether the court agrees with the conclusions of the report.'"
*Barry v. Trustees of... Iron Workers' Pension Plan,* 467 F. Supp. 2d 91, 97 (D.D.C. 2006)
(quoting *Moss v. Ole South Real Estate*, 933 F.2d 1300, 1307 (5th Cir. 1991); *accord* Graham,
*supra*, at 240, n.23.

[30] *Beech Aircraft*, 488 U.S. at 163-64, 166-69; *accord English v. District of Columbia*,
651 F.3d 1, 8 (D.C. Cir. 2011); *see also Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 99-
100 (D.D.C. 2013) (Lamberth, C.J.) (evaluative report of independent D.C. agency admissible
under Rule 803(8)(A)(iii)); *Huthnance*, 793 F. Supp. 2d at 210 (same).

[31] ECF No. 501 at 2, 3.

[32] *See* England Ltr. to Sen. Obama at 1 ("Secretary Gates has asked me to respond on his
behalf.") (Ex. 1); England Ltr. to Rep. Price at 1 (responding to Representative Price's request
for "information regarding the Department's approach to contractor accountability under the
Uniform Code of Military Justice ("UCMJ")") (Ex. 2).

Departments do not respond to congressional inquiries without assigning subordinates to investigate the issue and report the relevant facts accurately. The notion that Deputy Secretary England's letters were not based on an investigation of the facts, or that the Deputy Secretary lacked authority to authorize such investigation, is preposterous.

## III.   THE GOVERNMENT MAY NOT CALL A DEPARTMENT OF JUSTICE WITNESS TO TESTIFY THAT THERE IS A BASIS FOR MEJA JURISDICTION HERE

Finally, the government contends (again for the first time at oral argument) that if Defendants' MEJA evidence comes in, the government should be permitted to call a Department of Justice witness, such as the Deputy Attorney General, to testify that there is a basis for MEJA jurisdiction in this case.  The government's purported tit-for-tat is a gross overreach.

*First*, as noted above, the government's contention is entirely based on a false premise. The defense does not intend to elicit the opinion of other government actors that there is or is not jurisdiction under MEJA in this case.  Instead, the defense will elicit *factual* evidence on whether the Defendants' contract employment by the State Department to provide diplomatic security supported the Department of Defense's mission in Iraq.  Such factual evidence has nothing to do with, and does not open the door to, legal opinion testimony from a senior official of the prosecuting agency that filed the charges in this case.

*Second*, a Department of Justice official has no competent basis on which to testify.  The issue in dispute is whether Defendants' *State Department* employment related to supporting the *Defense Department*'s mission.  The State Department (through its officials or documents) is competent to give evidence regarding its responsibility for diplomatic security, the Defendants' contract employment to provide such security, the Defendants' performance of that work, and whether their actions were within that responsibility.  The Defense Department (through its

officials or documents) is competent to give evidence regarding the military mission in Iraq, and whether Defendants' State Department employment was in support of that mission.  Again, if there is an agency that knows whether the Defendants' employment supported the Defense Department's mission, it would be the Department of Defense.

The Justice Department has no such knowledge.  It does not oversee the State Department's provision of diplomatic security, nor does it oversee or execute the military's mission.  The Justice Department is not competent to say what the Defense Department's mission was in Iraq in 2007, or whether the Defendants' State Department employment related to supporting  that mission.  The only thing to which a DOJ official could possibly testify is the DOJ's self-serving view that jurisdiction exists under MEJA to prosecute this case.  Such "testimony" from the prosecutors' superiors would be no different than argument from the prosecutors.  *That* would "'intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law.'"[33]

The government's suggestion that a DOJ official be permitted to testify in support of jurisdiction under MEJA is utterly baseless and should be disregarded.

## CONCLUSION

For the reasons discussed above and in the defense's opposition brief (ECF No. 212, renewed in ECF No. 475), this Court should deny the government's motion in limine.

---

[33] *Convertino v. U.S. Dep't of Justice*, 772 F. Supp. 2d 10, 12 (D.D.C. 2010) (Lamberth, C.J.) (citation omitted).

Respectfully submitted,

    /s/ *Brian M. Heberlig*
Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Linda C. Bailey (No. 985081)
Scott P. Armstrong (No. 993851)
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Defendant Paul A. Slough*


    /s/ *William Coffield*
William Coffield (No. 431126)
Coffield Law Group LLP
1330 Connecticut Ave. N.W. Suite 220
Washington, D.C.  20036
 (202) 429-4799
*Counsel for Defendant Evan S. Liberty*


Dated:  June 9, 2014

    /s/ *Thomas G. Connolly*
Thomas G. Connolly (No. 420416)
Steven A. Fredley (No. 484794)
Jared P. Marx (No. 1008934)
Anne K. Langer (No. 501389)
Harris Wiltshire & Grannis LLP
1200 Eighteenth Street N.W.,
Suite 1200
Washington, D.C. 20036
(202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*


    /s/ *David Schertler*
David Schertler (No. 367203)
Janet Foster (*pro hac vice*)
Schertler & Onorato, LLP
575 7th Street, N.W. – Suite 300 South
Washington, D.C.  20004
(202) 628-4199
*Counsel for Defendant Dustin L. Heard*