**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )    No. 1:08-cr-360-RCL |
| PAUL A. SLOUGH, | ) |
| EVAN S. LIBERTY, and | ) |
| DUSTIN L. HEARD, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )    No. 1:14-cr-107-RCL |
| | ) |
| NICHOLAS A. SLATTEN, | ) |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR RECONSIDERATION</u>**

Defendants respectfully submit this reply in support of their Motion for Reconsideration of the Court's June 16, 2014 Order With Respect to Defense Expert Witness Don Mikko (*Slough*, ECF No. 532; *Slatten*, ECF No. 91).[1]

The government's opposition ignores what this Court stated plainly in its June 16 Order: "[o]nly once has the D.C. Circuit approved the exclusion of an expert due to inadequacy of the Rule 16 disclosure," ECF No. 528, at 8-9, and in that case the defense engaged in willful misconduct amounting to bad faith. *See United States v. Day*, 524 F.3d 1361, 1372 (D.C. Cir. 2008) (discussed in ECF No. 532 at 9 & n.2). No such misconduct has occurred here; the government does not contend otherwise. Under these circumstances, there is no need to exclude

---

[1] This memorandum will refer to the ECF entries in *Slough*, No. 08-cr-360.

Mr. Mikko's expert testimony to remedy a disclosure issue.  This is particularly so where the government was aware of the general subject of testimony and the forthcoming supplement, as the government acknowledged (ECF No. 444, at 16 n.1), and has had extensive expert analysis conducted on the same evidence.  While the government would suffer no prejudice from Mr. Mikko's testimony, excluding it entirely would infringe on Defendants' fundamental right to introduce non-cumulative, exculpatory evidence in their defense.  *See* ECF No. 532 at 9 n.2, 16 (citing Supreme Court authorities).  Defendants' motion for reconsideration should be granted.

## ARGUMENT

### I.      The Government Never Objected to the Timing of Mr. Mikko's Inspection

Contrary to the government's contention, Defendants do not blame the government for the timing of Mr. Mikko's disclosure.  Opp. at 1.  Rather, Defendants point out that the government knew about the timing of the inspection, as well as the reasons for that timing, and did not object to the schedule.  Since the parties were working together to facilitate a mutually convenient time for Mr. Mikko's inspection, Defendants did not raise this issue with the Court.

Indeed, the government informed the Court that "at least one of these experts is currently seeking to review the ballistics evidence in this case and after which, the government presumes that defendants will supplement their Rule 16 notice with the conclusions that the defense will seek to introduce at trial, at least as it relates to firearms and toolmark identification."  *See* Gov's Mot at 16 n.1 (ECF No. 444).  This footnote referred to Mr. Mikko.  The government was aware of Mr. Mikko's inspection, and anticipated receiving his supplemental disclosure, which it received before trial.  The government has suffered no harm.

**II.    The Government's Opening Ignored Substantial Evidence of Incoming Fire, of Which the Government Was Well Aware, For Its Own Reasons**

The government claims it crafted its opening statement based on the Court's order excluding Defendants' proposed expert testimony (which was issued the day before openings), and that Mr. Mikko's supplemental disclosure "would have significantly affected the government's opening statement."  Opp. at 2.  That claim rings hollow given the substantial evidence of incoming fire that was known to the government before the Court's June 16, 2014 order.  Mr. Mikko's expected testimony—while important to the defense—should not have been a surprise given that one of the government's own experts concluded that the AK-47 casings found on the scene were fired by multiple weapons.  The government nonetheless made a tactical decision not to acknowledge this issue, presenting a case theory to the jury that conflicted with abundant evidence of incoming fire of which the government was well aware irrespective of Mr. Mikko's opinion.

To begin, the government had ample grand jury testimony from various members of Raven 23 that they perceived incoming fire and heard radio calls broadcasting incoming fire.  The government also had the TOC Log, memorializing the incoming gunfire Raven 23 faced.

In addition, the government had ample physical evidence of incoming fire—evidence that it directed its principal forensic firearms expert to ignore. See Mot. for Recon. at 16-17 (ECF No. 532).  Specifically, the government has possession of both conclusively identified and possible AK-47 and Dragunov cartridge casings found in various locations south and north of Nisur Square. *Id.*  The government also had evidence of damage to Vehicle No. 3—both the bullet marks on its left side, and the damage to the radiator that disabled the vehicle during the incident.

Additionally, one of the government's own experts, Doug Murphy, identified various AK-47 shells, and concluded that five of them were fired from the same firearm, four were loaded

and extracted from the same firearm, and the others could not be matched to those firearms or to each other.[2]  It is unclear whether the government will call Mr. Murphy for the purposes of this analysis.  *See* 7/3/14 AM Tr. at 107; 7/14/14 PM Tr. at 5.  The government has thus long been aware that physical evidence indicated that multiple AK-47s left cartridges at the scene.  Thus, Mr. Mikko's findings—while crucial to the defense in terms of proving multiple shooters—should have had relatively little impact on the government's opening.

The government trial team was certainly well aware of the issue of incoming AK-47 fire when it made its expert disclosures on March 28, 2014, disclosing among other things that a government expert (Scott Patterson) conducted live-fire demonstrations of AK-47 bullets against sheet metal (simulating the sides of armored vehicles).[3]

The AK-47 shell casings themselves were passed to the current trial team no later than April 11, 2014.[4]  The issue of incoming AK-47 fire was addressed in subsequent briefs submitted in May 2014.[5]  Thus, it was no surprise to the government that Defendants would present evidence that they took incoming fire from multiple threats, including incoming AK-47 fire.

The government has two experts who have analyzed ballistics in this case:  Douglas P. Murphy and Brandon Giroux.  Mr. Murphy conducted microscopic analysis of a portion of the AK-47 shell casings (see Ex. J at 6), while Mr. Giroux followed an FBI case agent's instructions not to analyze shell casings (see  Mot. for Recon. at 16-17, ECF No. 532).  The government called

---

[2] *See* Oct 2, 2009 Report of Examination at 6, BWTT_007506 (7.62 x 39 mm Cartridge Cases) (Ex. J hereto) (Exhibits A through I are attached to Defendants' Motion for Reconsideration, ECF No. 532.)

[3] *See* the government's expert disclosure letter, March 28, 2014, at 8-9 (Ex. K hereto).

[4] *See* Notice of Withdrawal of Gov. Mot. to Authorize Pretrial Passage of Info. (ECF No. 418, April 11, 2014) and the April 10, 2014 letter agreement attached thereto.

[5] *See, e.g.,* Defs.' Reply Supp. Mot. In Limine to Exclude Testimony Regarding Raven 23's Departure from the Green Zone, at 5-6 (noting recovery of AK-47 shell casings and bullet fragments) (ECF No. 496, May 27, 2014).

Mr. Murphy but expressly declined to question him regarding his ballistics analysis.  *See* 7/3/14 AM Tr. at 107.  Instead, the government plans to call Mr. Giroux, who has no personal knowledge of the microscopic analysis of the AK-47 shells.

In light of this substantial evidence of incoming fire, the government's assertion that Mr. Mikko's testimony would have changed the government's calculus is unpersuasive.  The government has faced this issue from the beginning, and has simply chosen to downplay rather than confront this issue of which it was well aware.

Regardless, the government received notice that both complied with Rule 16 and remedied the Court's concerns before presenting its opening.  Indeed, Defendants informed the government—with a copy to Chambers—that Defendants intended to move for reconsideration of this order.[6]  This provided the government with an opportunity to adjust its opening accordingly.  Such adjustments on the day of opening occur regularly—for instance, if a court issues an order in limine or determines what anticipated evidence can, or cannot, be shown to the jury.  The government chose not to do so here because it had predetermined its position: that the convoy did not take incoming fire.[7]

In the final analysis, the jury—the fact finders—should have before it all relevant, admissible evidence to determine the central issues in this trial, including whether the convoy took incoming fire and the Defendants acted in self-defense.  The purpose of a jury trial in criminal (and civil) cases is to "assure a fair and equitable resolution of factual issues."  *Colgrov v. Battin*, 413

---

[6] *See* Defendants' supplemental notice letter, June 17, 2014, Ex. A to Def. Mot. to Recon., ECF No. 532-1.

[7] Defendants anticipate that the government will persist making the same argument about the AK-47 shells as they made in opening, whether or not Mr. Mikko is allowed to testify.  They will argue that the AK-47 shells are old, and not unusual to find in Iraq.  Indeed, the government has already spent considerable effort attempting to establish a basis for that claim with various Iraqi witnesses.  *See, e.g.*, 7/9/14 PM Tr. at 17:7-11; 7/9/14 PM Tr. at 67:1-6.

U.S. 149, 157 (1973) (citation omitted).  The jury should decide the truth based on all of the

evidence.  *See Taylor v. Illinois*, 484 U.S. 400, 408 (1988) ("Few rights are more fundamental than

that of an accused to present witnesses in his own defense.   Indeed, this right is an essential

attribute of the adversary system itself.") (citing *Chambers v. Mississippi*, 410 U.S. 284, 302

(1973)).  Given the Defendants' pretrial supplement to Mr. Mikko's expert disclosure, the

government's awareness of Mr. Mikko's examination and the general subject of his testimony, and

the complete lack of any bad faith, there is no reason for the jury not to hear all of the admissible

evidence on this critical issue in this case.

### III.     The Original Rule 16 Notice for Mr. Mikko Informed the Government about Testimony Relating to the M-203

The government complains that Defendants seek to introduce expert testimony about the

M-203, which was not based on Mr. Mikko's examination of the physical evidence, and thus

should have been disclosed earlier and not in the supplement.  But this testimony was disclosed in

Defendants' original Rule 16 disclosure for Mr. Mikko.  Specifically, "[w]ith respect to the M203

grenade launcher, his testimony may include information about the safe and effective ranges, the

kill and casualty radius, firing characteristics and other mechanical features."[8]  In its supplement,

Defendants provided additional information regarding Mr. Mikko's anticipated testimony—which

Defendants did not need to do pursuant to Rule 16.  *See* Ex. A to Mot. to Recon. (ECF 532-1).

The government implies that it did not realize that the defense would be critical of the

government's failure to conduct expert testing of the fragmentary blow-back radius of an M433

projectile—which, despite no expert testing to support its theory, the government will apparently

blame for disabling, and causing impact marks on, the Bearcat.  The government also complains

---

[8] *See* Defendants' expert disclosure re Mr. Mikko, at 1-2 (April 25, 2014) (Ex. C to Defs. Mot. to Recon., ECF No. 532-3).

that it did not know Defendants would point out that the government's expert used a forklift to stand his target vehicle on its side because he would otherwise have been unable to hit it at the correct angle with a M-203.  Mr. Mikko could have made these points during his examination, consistent with the scope of the original notice, and there would have been no basis to object. Indeed, defense counsel could have raised these limitations on cross-examination without need for expert testimony.

Regardless, the government claims surprise at Mr. Mikko's observations of these failures and asserts that it cannot now "meaningfully arrange for additional testing to be conducted in the middle of its case-in-chief."  Opp. at 4.  This claim is again unpersuasive.  First, the government has already requested additional testing from an expert during this trial.  For example, the government requested that its expert—Scott Patterson—shoot holes through steel plates the day before his testimony and presented those plates as evidence as trial.  *See* 7/8/14 AM Tr. at 68. Second, the fact that government counsel are in trial has no impact on the ability of the FBI lab or Mr. Whitworth to conduct this test, if the government so desires.

In short, the government would suffer no prejudice if Mr. Mikko were permitted to testify, while exclusion of this evidence would affect Defendants' substantial rights.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to reconsider its ruling excluding Mr. Mikko's testimony.

  /s/ Brian M. Heberlig
Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Linda C. Bailey (No. 985081)
Scott P. Armstrong (No. 993851)
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Defendant Paul A. Slough*

William Coffield (No. 431126)
Amanda Montee (No. 1018326)
Coffield Law Group LLP
1330 Connecticut Ave. N.W. Suite 220
Washington, D.C.  20036
(202) 429-4799
*Counsel for Defendant Evan S. Liberty*

Thomas G. Connolly (No. 420416)
Steven A. Fredley (No. 484794)
Jared P. Marx (No. 1008934)
Anne K. Langer (No. 501389)
Harris, Wiltshire & Grannis LLP
1200 Eighteenth Street N.W. Suite 1200
Washington, D.C. 20036
(202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*

David Schertler (No. 367203)
Danny Onorato (No. 480043)
Janet Foster (*Admitted Pro Hac Vice*)
Schertler & Onorato, LLP
575 Seventh Street N.W.
Suite 300 South
Washington, D.C.  20004
(202) 628-4199
*Counsel for Defendant Dustin L. Heard*

Dated:  July 18, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July 2014, I caused the foregoing to be filed with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Anthony Asuncion
T. Patrick Martin
Christopher Kavanaugh
John Crabb, Jr.
David Mudd
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530


/s/ Bruce C. Bishop