IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:08-cr-360-RCL |
| PAUL A. SLOUGH, | ) | |
| EVAN S. LIBERTY,   and | ) | |
| DUSTIN L. HEARD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:14-cr-107-RCL (joined) |
| NICHOLAS A. SLATTEN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' MOTION TO COMPEL DISCLOSURE OF *BRADY* AND *GIGLIO*
INFORMATION RELATED TO COOPERATING WITNESS JEREMY RIDGEWAY**

Defendants respectfully renew their motion to compel the production of *Brady* and *Giglio*[1] information related to the government's cooperating witness, Jeremy Ridgeway. Specifically, the Defendants again ask the Court to compel the government to disclose any notes or other memorializations of its first proffer session with Mr. Ridgeway on October 23, 2008.[2] In addition, Defendants move to compel the production of (1) any written communications (including emails) between prosecutors and attorneys for Mr. Ridgeway relating to Mr. Ridgeway's plea negotiations

---

[1] Referring generally to the government's obligation to disclose any material favorable to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.

[2] Defendants filed a similar motion to compel in connection with the pre-trial sealed *Kastigar* hearing. That motion was denied for the purposes of Mr. Ridgeway's *Kastigar* testimony. For the reasons that follow, Defendants hereby renew their motion as the notes are relevant for the purposes of Mr. Ridgeway's upcoming trial testimony.

and (2) any materials in the government's possession that reflect the substance of any oral communications between prosecutors and attorneys for Mr. Ridgway relating to those negotiations and/or proffers as to the substance of those communications. These materials would encompass any records of communications by prosecutors to Mr. Ridgeway's attorneys to the effect that, if Mr. Ridgeway did not plead guilty, he would be indicted and charged with a 30-year mandatory minimum weapons offense, among other charges. This information is essential to a thorough and effective cross-examination of Mr. Ridgeway, who is one of the government's most important witnesses in the case. Mr. Ridgeway is expected to testify this week.

## FACTUAL BACKGROUND

The government has acknowledged that Mr. Ridgeway's first direct contact with prosecutors was an attorney proffer session on October 23, 2008.[3] A "proffer letter" to Mr. Ridgeway's attorneys, signed by Mr. Ridgeway and dated October 23, 3008 states as follows:

> We are writing to confirm our discussion concerning an "off-the-record" debriefing of your client, Mr. Jeremy Ridgeway, in connection with the ongoing criminal investigation into the shooting that occurred at Nisur Square, Baghdad, Iraq, on September 16, 2007. We understand that your client is interested in meeting with us for a voluntary "off-the-record" debriefing . . . I trust that you will find these ground rules fair and reasonable. If your client wishes to engage in an "off-the-record" debriefing under these ground rules, both you and your client should sign this letter where indicated below and return it to us when we meet on October 23, 2008.

(October 23, 2008, Ltr. from Kenneth C. Kohl to William M. Sullivan, attached as Ex. B.)

We do not understand the term "off-the-record" debriefing, but for purposes of *Brady* analysis there can be no distinction between a so-called "off-the-record" debriefing and any other type of government interview of a witness or suspect. The government has represented that no FBI agent notes or "302" Report exists for the October 23, 2008 proffer session. However, there is no

---

[3]     *See* November 8, 2013 Ltr. at 1 (Ex. A).

doubt that an interview was conducted on that date.  Indeed, the notes of the subsequent October 30, 2008, proffer session make reference to a previous interview, *i.e.*, the proffer session on October 23, 2008.  As far as Defendants are aware, the only materials that would reflect the substance of that initial proffer session are a prosecutor's notes of the session, which the government has refused to disclose to the Defendants. *See* November 27, 2013 Letter (Ex. C).

In refusing to disclose these notes to the Defendants, the government has represented that Mr. Ridgeway's October 23, 2008, attorney proffer  contained roughly the same information conveyed in his October 30, 2008 interview, for which  the government has disclosed a one-paragraph FD 302 and the FBI agent's notes.  If this representation is accurate, then at his first meeting with the prosecutors Mr. Ridgeway must have asserted that he committed no crime, defended his actions in Nisur Square, and asserted that he fired only at  defined targets that were real threats.  Mr. Ridgeway also likely identified specific threats at which he fired, including the white Kia car approaching the convoy and muzzles flashes he observed southwest of the circle that he believed to be incoming gunfire.   It is also evident that in the October 23, 2008 proffer, Mr. Ridgeway provided information to the government about post-incident statements that the Defendants are alleged to have made or not made.  For example, the notes of Mr. Ridgeway's October 30, 2008 interview explicitly refer back to the earlier session regarding statements supposedly made after the incident, for example:  "Liberty told him what JR discussed ***at last proffer***."  In short, it is clear from records available to Defendants that Mr. Ridgeway's October 23, 2008 proffer adhered to Ridgeway's then-consistent position "that Mr. Ridgeway did nothing wrong."[4]   Moreover, we believe that much of the information that Mr. Ridgeway provided to prosecutors during these first meetings about the alleged actions of the Defendants is materially

---

[4]    August 14, 2008 Ltr. from W. Sullivan to K. Kohl *et al.*, at 2 (Ex. D).

inconsistent with what he later told prosecutors and testified to in the Grand Jury.

Although the government asserts that there is nothing in the October 23 proffer notes that is not also contained in the October 30 interview notes, it is impossible for the Defendants to test that assertion or evaluate the exculpatory and impeachment value of the October 23 notes without their disclosure. Furthermore, if the government's assertion concerning the perfect overlap between the two sets of notes is correct, then the government has no arguable reason to refuse to disclose the October 23 proffer notes so that the defense can make its own assessment of the usefulness of that information in cross-examining Mr. Ridgeway.[5]

Moreover, at some point shortly after these initial proffer sessions, the government apparently informed Mr. Ridgeway and his attorneys of the fact that they did not believe Mr. Ridgeway's version of events and that, if he did not admit his criminal conduct, plead guilty and cooperate, they intended to indict him on charges that would include, *inter alia*, a 30-year mandatory minimum firearms offense. Defendants have received absolutely no information or materials related to these critical communications, which have obvious relevance to Mr. Ridgeway's credibility and bias. Based on the materials that Defendants have seen, Mr. Ridgeway told the government in multiple proffer sessions in October 2008 that he did nothing wrong in Nisur Square. But within weeks of those proffers, Mr. Ridgeway entered an agreement to plead guilty to crimes and cooperate with the government. Mr. Ridgeway's plea agreement was signed on November 18, 2008. The government has not provided the Defendants any information or records relating to the communications that must have occurred between Mr. Ridgeway's attorneys and the prosecutors and that led to Mr. Ridgeway's decision to change his position, admit criminal responsibility, and enter a plea agreement that involved cooperating against the Defendants. Any

---

[5] *See* Ex. C at 1-2.

communications by government prosecutors to Mr. Ridgeway's attorneys indicating, for instance, that the prosecutors did not believe Mr. Ridgeway and intended to indict him on a 30-year mandatory minimum weapons offense, whether in written or oral form, clearly constitute *Brady/Giglio* information that must be disclosed to the Defendants. Yet the government has refused to provide the Defendants with any information regarding Mr. Ridgeway's plea negotiations despite numerous requests. Nor have Defendants been provided with any communications between the government and Mr. Ridgeway's attorneys to the effect that unless Mr. Ridgeway pled guilty, he would be indicted and charged with a 30 year mandatory minimum weapons charge, despite the fact that such discussions evidently took place.

**ARGUMENT**

I. **THE GOVERNMENT HAS FAILED TO SATISFY ITS *BRADY* AND *GIGLIO* OBLIGATIONS**

At this stage, nearly seven weeks into trial, there is no basis for the prosecution to withhold the only notes that exist of the first proffer session of Mr. Ridgeway, the government's chief cooperating witness.[6] It is clear that Mr. Ridgeway's first proffer contained a wealth of favorable information for the defense, both exculpatory to the Defendants on the merits of the charges they face and critical to the impeachment of Mr. Ridgeway. Under well-established due process principles, the notes of the October 23, 2008, interview and/or a proffer as to the substance of that interview should be produced to Defendants immediately and prior to Mr. Ridgeway's trial testimony. In addition, any written or oral communications between the government and Mr. Ridgeway or his

---

[6] The government's main contention in refusing to turn over the notes prior to the pre-trial *Kastigar* hearing was that the notes contained no information relevant to *Kastigar* issues. Gov't Mot. at 3. Mr. Ridgeway is now just days away from appearing as a witness at trial, where he will testify about the same matters that were the subject of his proffer sessions and his eventual guilty plea. There no longer is any colorable argument that the proffer session notes are not relevant to the issues that will be addressed in court.

counsel relating to plea negotiations, including any representations by prosecutors that Mr. Ridgeway would be charged with a 30-year mandatory minimum offense if he did not plead guilty, should be disclosed to the Defendants.

### A. The Prosecutor's Notes from the October 23, 2008 are Exculpatory and Impeaching.

The government does not dispute that Mr. Ridgeway's initial proffer contained both exculpatory and impeaching information, disclosable under *Brady* and *Giglio*. The government's only stated reason for withholding the proffer notes is its view that they are "cumulative" of Ridgeway's formal interview a week later. *See* November 27 Letter (Ex. C).

As *Brady* and its progeny have held, however, due process requires the prosecution to disclose *all* evidence in its possession that is material to guilt or punishment and favorable to the accused. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). "Information is favorable to the accused if it 'relates to guilt or punishment' and 'tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses.'" *United States v. Singhal*, 876 F. Supp. 2d 82, 104 (D.D.C. 2012) (*quoting United States v. Safavian*, 233 F.R.D. 12, 116 (D.D.C. 2005)). "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Safavian*, 233 F.R.D. at 17. "Courts in this jurisdiction look with disfavor on narrow readings by prosecutors of the government's obligations under *Brady*." *Singhal*, 876 F. Supp. 2d at 104.

It does not matter that *Brady* information is contained in attorney notes: "the format of the information does not determine whether it is discoverable"[7]; *see also United States v. Andrews*,

---

[7] Department of Justice guidance issued in the wake of the Senator Stevens case "encourage[s] [prosecutors] to provide discovery broader and more comprehensive than the

6

532 F.3d 900, 906 (D.C. Cir. 2008) ("'[I]t seems too plain for argument that rough notes from any witness interview could prove to be *Brady* material.'") (citation omitted). Indeed, the apparent tactical decision by the government *not* to prepare an FBI FD-302 or other report of its initial interview of Ridgeway in no way excuses the government from its obligation to comply with *Brady* by disclosing the substance of that session and any other records in its possession memorializing it. "[W]hen the Government is in possession of material information that impeaches its witness or exculpates the defendant, it does not avoid the obligation under *Brady/Giglio* to disclose the information by not writing it down." *United States v. Rodriguez*, 496 F.3d 221, 225-27 (2d Cir. 2007).

Nor does it make any difference if some or all of the information was presented by way of an attorney proffer, rather than from Mr. Ridgeway himself. In that format, Mr. Ridgeway's counsel speaks for Mr. Ridgeway, who was present at the interview and did not disavow or qualify any of his attorney's statements.[8] Where an attorney's proffer statements are exculpatory or impeaching, just as when the witness's own statements are exculpatory or impeaching, they must be disclosed to the defense under *Brady* and/or *Giglio*. *See United States v. Triumph Capital Group*, 544 F.3d 149, 161-65 (2d Cir. 2008); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1201-02 (C.D. Cal. 1999).

In this trial, the credibility and motivations of Mr. Ridgeway are critical issues, and it

---

discovery obligations" required by Rule 16, the Jencks Act, *Brady*, and *Giglio*. Memorandum for Department Prosecutors Re Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010), *available at* http://www.justice.gov/dag/discovery-guidance.html (last visited Jul. 27, 2014) (the "Ogden Memo").

[8] In fact, prior to conducting the October 23, 2008 interview, the government required Mr. Ridgeway to sign a letter acknowledging that any client statements made during the "off-the-record debriefing" could be used against him in a criminal prosecution for perjury. *See* October 23, 2008 Letter. (Ex. B)

7

is evident that government-sponsored inducements played a central role in transforming Mr. Ridgeway from an advocate of his own innocence into a key prosecution witness. In this context, any evolution of Mr. Ridgeway's accounts, any inconsistencies that have occurred in his accounts, and any motivations or incentives underlying those changes constitute exculpatory evidence to which the Defendants are entitled under *Brady, Giglio,* and their progeny.

### B. Information Regarding Communications from the Prosecution to Ridgeway or his Attorneys that He Would Be Charged with A 30-Year Mandatory Minimum Firearms Offense is Exculpatory and Impeaching.

Pursuant to *Brady* and *Giglio*, Defendants also respectfully move the Court to compel the government to produce any records reflecting written or oral communications, or a proffer of any oral communications, pertaining to Mr. Ridgeway's plea negotiations with the government. These materials would include any communications by the government to Mr. Ridgeway or his counsel to the effect that the government disbelieved Mr. Ridgeway's initial proffers and intended to charge him with a 30-year mandatory minimum offense (among other charges) if he refused to plead guilty. The government has rejected the Defendants' numerous requests for this information, which has necessitated this request that the Court compel the production of such information to the Defendants. Any information relating to threats or promises the government made to Mr. Ridgeway to induce his cooperation bears squarely on Mr. Ridgeway's credibility and motives for testifying against the Defendants and must be disclosed. *United States v. Edwards*, 191 F. Supp. 2d 88, 90 (D.D.C. 2002) ("[T]he defendant is entitled under *Brady* at least to . . . the existence and substance of all promises of immunity, leniency or preferential treatment."), *aff'd* 76 Fed. App'x 335 (D.C. Cir. 2003). As stated above, Defendants seek this information regardless of whether the government possesses any documentation or recordings memorializing such communications. *See*

*United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form.").

Mr. Ridgeway is a key government witness. He is the only member of Raven 23 who has claimed to have fired his weapon without justification on September 16, 2007. And Mr. Ridgeway's initial representations to the government about his conduct in Nisur Square were exculpatory. Communications regarding when and how Mr. Ridgeway was informed that a 30-year mandatory minimum charge would be filed against him are critical to Defendants' ability to cross-examine Mr. Ridgeway concerning his motivations for abandoning his initial assertions of innocence, pleading guilty, and providing testimony against these Defendants.

## **CONCLUSION**

Based on these reasons and any other reasons and authorities that may be brought to the Court's attention, the government should be compelled to produce information and materials in its possession related to its October 23, 2008 "off-the-record" debriefing of Mr. Ridgeway and information and materials in its possession relating to the discussions that culminated in Mr. Ridgeway's plea agreement on November 18, 2008.

Dated: July 27, 2014                               Respectfully submitted,

 /s/ David Schertler
David Schertler (No. 367203)
Danny Onorato (No. 480043)
Lisa H. Schertler (No. 430754)
Janet Foster (Admitted *Pro Hac Vice*)
Schertler & Onorato, L.L.P.
575 7th Street, N.W., Suite 300 South
Washington, D.C.  20004
Telephone:  (202) 628-4199

9

*Counsel for Defendant Dustin L. Heard*

/s/ Brian M. Heberlig
Brian M. Heberlig (No. 455381)
Michael J. Baratz (No. 480607)
Bruce C. Bishop (No. 437225)
Linda C. Bailey (No. 985081)
Scott P. Armstrong (No. 993851)
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
Telephone:  (202) 429-3000
*Counsel for Defendant Paul A. Slough*

/s/ Thomas G. Connolly
Thomas G. Connolly (No.420416)
Steven A. Fredley (No. 484794)
Jared P. Marx (No.1008934)
Anne K. Langer (No. 501389)
Harris, Wiltshire & Grannis LLP
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
*Counsel for Defendant Nicholas A. Slatten*

/s/ William Coffield
William Coffield (No. 431126)
Coffield Law Group LLP
1330 Connecticut Avenue, N.W., Suite 220
Washington, D.C.  20036
Telephone:  (202) 429-4799
*Counsel for Defendant Evan S. Liberty*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 27th day of July 2014, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Anthony Asuncion
T. Patrick Martin
Christopher Kavanaugh
John Crabb, Jr.
David Mudd
United States Attorney's Office
for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

                                             /s/ David Schertler
                                             David Schertler