**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  No. 1:08-cr-360-RCL |
| PAUL A. SLOUGH, | ) |
| EVAN S. LIBERTY, and | ) |
| DUSTIN L. HEARD, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  No. 1:14-cr-107-RCL |
| NICHOLAS A. SLATTEN | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANTS' OBJECTION TO THE GOVERNMENT'S**
**NOTICE OF INTENT TO INTRODUCE SELF-AUTHENTICATING**
**DOCUMENTS PURSUANT TO 18 U.S.C. SECTION 3505**

Defendants Paul A. Slough, Evan S. Liberty, Dustin L. Heard, in No. 08-CR-360, and

Nicholas Slatten, in No. 14-CR-107, by and through undersigned counsel, object to the

Government's Notice of Intent to Introduce Self-Authenticating Documents Pursuant to 18

U.S.C. Section 3505 (Dkt. 87 (14-CR-107); Dkt. 529 (08-CR-360)) ("Notice of Intent").  As a

statutory matter, the government's effort to introduce foreign death certificates without the live

testimony of a qualified witness under the procedure set forth in 18 U.S.C. § 3505 is untimely.

Section 3505 requires notification of the intent to introduce such documents through a foreign

certification *at the time of arraignment* or as soon thereafter as practicable, and requires the

Court to make a final determination on any objections to such a notice *before trial begins*.  The

government's notice, provided two weeks into trial and months after arraignment, is thus invalid.

Furthermore, as a constitutional matter, the "Certification for Records of Regularly Conducted

Activity" that the government seeks to introduce constitutes "testimonial" hearsay that, under

recent Confrontation Clause jurisprudence, cannot be admitted against the defendants in this

criminal trial without affording them the opportunity to cross-examine the Iraqi declarant who

executed the certification.

## ARGUMENT

**I.     THE GOVERNMENT'S NOTICE IS UNTIMELY UNDER 18 U.S.C.
        SECTION 3505.**

The government seeks to introduce the purported death certificates of fourteen

individuals who were allegedly killed during the Nisur Square incident.  But rather than call a

witness who can testify and be cross-examined as to the authenticity of the records and the

circumstances under which they were created and compiled, the government seeks to admit the

records solely through a sworn, written certification in which an Iraqi government official attests

to a variety of facts concerning the nature of the records.  Federal Rule of Evidence 803(6),

which provides an exception to the hearsay rule for records of a regularly conducted activity,

allows the admission of such records only where "all the[] conditions [required to satisfy the

hearsay exception] are shown by the testimony of the custodian or another qualified witness, *or*

*by a certification that complies with Rule 902(11) or (12) or with a statute permitting*

*certification*."  Fed. R. Evid. 803(6) (emphasis added).  Thus, in order to admit records of

regularly conducted activity under Rule 803(6) with a certification presented in lieu of the

testimony of a custodian or other qualified witness, the documents must qualify for self-authentication under Federal Rule of Evidence 902(11) or (12) or under other statutory authority.

Here, neither Rule 902(11) nor (12) provides authority for self-authentication of the death certificates the government seeks to admit.  Rule 902(11) applies only to "domestic records," and the records here are foreign.  *See* Fed. R. Evid. 902(11).  While Rule 902(12) applies to "foreign records," it is limited the introduction of such records "civil case"—and this is a criminal matter.  *See* Fed. R. Evid. 902(12).  The government therefore attempts to rely on a statutory provision that provides, in certain circumstances and with pre-trial authorization by the trial court, for self-authentication of foreign records of regularly conducted activity in criminal cases: 18 U.S.C. § 3505.

Section 3505 repeats the requirements for the hearsay exception for regularly conducted activity found in Rule 803(6), but it further provides that records of this nature (or duplicate copies of them) may be authenticated in a criminal trial through a "foreign certification" that attests that the foundational requirements for such records are met.  Section 3505 conditions a party's ability to substitute a "foreign certification" for live testimony with a strict notice and timeliness requirement:

> **At the arraignment or as soon after the arraignment as practicable, a party intending to offer in evidence under this section a foreign record of regularly conducted activity shall provide written notice of that intention to each other party**. **A motion opposing admission in evidence of such record shall be** made by the opposing party and **determined by the court before trial**. Failure by a party to file such motion before trial shall constitute a waiver of objection to such record or duplicate, but the court for cause shown may grant relief from the waiver.

18 U.S.C. § 3505 (emphasis added).

The language of this section is not permissive—the notice of intent to submit foreign

records under Section 3505 "shall" be provided at arraignment or as soon as practicable

thereafter, and any judicial determination concerning admissibility "shall be" made before trial.

*Id.* Here, the government submitted its notice of intent to introduce evidence pursuant to Section

3505 on June 23, 2014, nearly a week after the June 17, 2014 start of trial (*i.e.*, when the jury

was sworn), months after the Defendants were arraigned, and nearly five years after the State

Department received the underlying materials and Iraqi certification.  Section 3505(b) thus bars

the government's reliance on the statute's certification procedure based on its untimely notice.

And there is simply no excuse for the government's failure to comply or any conceivable

argument that the government acted "as soon after the arraignment as practicable."  See 18

U.S.C. § 3505(b).  By its own admission, it has had within its possession the death certificates

and certification for years, yet never informed the Defendants that it did not intend to attempt to

authenticate and establish the admissibility of the death certificates through live testimony.

Section 3505's timeliness requirement is strict with good reason, and the government's

lack of appropriate notice cannot be dismissed as a mere technical failure.  As the domestic

records and civil-case counterparts to section 3505 in Federal Rules of Evidence 902(11) and

(12) make clear, adequate advance notice of an intent to submit self-authenticating business

records is imperative so that "the opponent of the evidence [has] a full opportunity to test the

adequacy of the foundation set forth in the declaration."  Advisory Committee Notes to Fed. R.

Evid. 902 (2000).  Here, the defense's need for pre-trial notice in order to investigate and test the

foundation of the purported death certificates is pronounced.  These are foreign records created

in a war-torn country in which the governmental structure has experienced upheaval over a

period of years.  It is not at all clear that the conditions in Iraq before and since 2007 have

permitted "regularly conducted business activity" to occur in any sense of that phrase that is

accepted for evidentiary purposes in United States courts.  Moreover, the FBI was not the lead investigatory agency in this case.  Rather, the investigation was led by the Iraqi National Police and Colonel Kareem Faris, which then handed the FBI the results of its investigation, including the identity of alleged victims and witnesses.  Consequently, routine investigatory procedures that our criminal system demands were not followed.  The crime scene was not documented, evidence was not preserved and safeguarded, and the allegedly deceased victims were not subjected to an autopsy or even photographed at the scene (the two exceptions being the victims in the white Kia sedan).  In fact, many of the alleged victims and family members affected by this incident self-identified themselves in response to an advertisement placed on Iraqi television. Moreover, the mere fact that an Iraqi citizen died on or about September 16, 2007 (as the Iraqi certification offered by the government avers) does not mean that the individual was killed at Nisur Square—especially in Baghdad in 2007, which one witness described as a "bloody year" in which citizens were regularly killed by insurgents and terrorists.  In short, the need for the defense to probe and test the reliability of the evidence offered to show both that deaths occurred and that they were tied to the events in Nisur Square is critical, given the serious questions that exist about the integrity of the Iraqi investigation and the functioning of its public institutions.

The timing of the government's notice, which comes in the midst of trial, provides the defendants *no* opportunity to test the reliability or adequacy of the foundation set forth in the Iraqi certification.  The inability to do so compromises the Defendants' ability to challenge a core element of the crimes for which they have been charged—whether the alleged victims were actually killed at Nisur Square—and thus implicates a fundamental constitutional right.  Since the defendants do not have the benefit of being able to investigate the basis for the government's certification, the documents submitted here cannot be admitted without live testimony.  What is

more, the prejudice the Defendants would suffer by permitting the government to circumvent the

clear statutory requirements of Section 3505 far outweighs any inconvenience the government

may experience.  Indeed, the only justification the government offers for requesting self-

authentication is that it will decrease the total number of witnesses called at trial.  But in a case

of this length, which by the government's estimate will take four to five months to present just its

case-in-chief, a few hours of direct and cross examination related to the foundation for the

admissibility of death certificates is inconsequential as a scheduling matter.  Moreover, as

discussed next, the presentation of live witnesses and the opportunity for cross-examination on

these matters is essential as a constitutional matter.

## II.   ADMISSION OF THE SECTION 3505 CERTIFICATION IN LIEU OF LIVE TESTIMONY BY THE DECLARANT WOULD VIOLATE THE CONFRONTATION CLAUSE

The government's failure to comply with the mandatory pre-trial notice requirement of

Section 3505 precludes it, on statutory grounds, from admitting the Iraqi death certificates at trial

through a written declaration.  The Confrontation Clause of the Sixth Amendment prohibits the

same course on constitutional grounds.  In *Crawford v. Washington*, 541 U.S. 36 (2004), the

Supreme Court held that, notwithstanding hearsay and other evidentiary rules or statutes to the

contrary, "testimonial" evidence is inadmissible against a defendant in a criminal trial "unless the

witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for

cross-examination."  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (*citing Crawford*, 541

U.S. at 54).  Applying these principles to "certificates of analysis" executed by state laboratory

analysts that reflected the results of drug analyses they had performed, the Court held in

*Melendez-Diaz* that the declarations were "testimonial" statements that could not admitted

against a criminal defendant "[a]bsent a showing that the analysts were unavailable to testify at

trial *and* that [the defendant] had a prior opportunity to cross-examine them." *Id*. at 311

(emphasis in original).   In support of its holding, the Court noted, *inter alia*, that (1) the

documents were "quite plainly affidavits" as they constituted declarations written down and

sworn to by the declarant and the fact(s) reflected in the certificates was "the precise testimony

the analysts would be expected to provide if called at trial," *id*. at 310; (2) the purpose of the

affidavits was evidentiary, as they were intended to be made available for use at a later trial, *id*.

at 311; (3) it was irrelevant under the Confrontation Clause that the certificates "[did] not

directly accuse [the defendant] of wrongdoing," *id*. at 313; and (4) confrontation rights are not

confined to "conventional" witnesses, *id*. at 314.

The "Certification for Records of Regularly Conducted Activity" that the government

seeks to admit in this criminal trial under 18 U.S.C. § 3505 shares the same "testimonial"

features that were present in the certificates of analysis addressed in *Melendez-Diaz*.  The Iraqi

certification is "quite plainly" an affidavit, as it contains the factual assertions of an employee of,

apparently, the Iraqi Ministry of Health, attested to under the Iraqi equivalent of penalties of

perjury.[1]  Moreover, the facts to which the affiant attests mirror the testimony that he would be

expected to provide at trial concerning the nature of the records he claims to have extracted from

official files and the manner in which the records allegedly were created and maintained.

Furthermore, as in *Melendez-Diaz*, the sole purpose of the certification is an evidentiary one, as

the certification is intended to be offered into evidence at trial against the defendants in lieu of

sworn live testimony by the declarant.

---

[1]  The handwritten portions of the certification make it difficult to discern the exact name and
position of the affiant.  Moreover, although the "Individual Acknowledgment Certificate" that
was executed by a United States consular officer directs explicitly that the name of the
underlying individual should be typed, the affiant's name is handwritten on that form as well.

Nor does the Iraqi certification fit into the "narrow exception" to ordinary Confrontation Clause principles that was identified in *Melendez-Diaz*, "a clerk's certificate authenticating an official record – or a copy thereof – for use as evidence." *Melendez-Diaz*, 557 U.S. at 322. As the Court explained, this historical exception "was narrowly circumscribed" in that a clerk was permitted only "to certify to the correctness of a copy of a record kept in his office." *Id*. The Iraqi certification proffered by the government goes much farther into "testimonial" territory, as it contains the Iraqi declarant's factual assertions about (1) how and when the death certificates allegedly were created, (2) the identity and knowledge base of the person(s) who allegedly created the records, (3) the manner and purposes for which the records allegedly were maintained by the entity that possessed them. All of these assertions, as with the drug analysts' certificates in *Melendez-Diaz*, could be undermined by cross-examination that, for instance, shows the declarant (either intentionally or inadvertently) to be misstating or overstating facts that bear on the origin, integrity, and admissibility of the records at issue. *See id*. at 319 ("Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well.").[2] Thus, as with the certificates of analysis in *Melendez-Diaz*, the Iraqi certification offered here is "testimonial" hearsay that cannot be admitted in this criminal trial under the Confrontation Clause without providing the Defendants the opportunity to cross-examine the declarant.

---

[2]   The opinion of the D.C. Circuit in *United States v. Adefehinti*, 510 F.3d 319 (2007), which rejected a Confrontation Clause challenge to a certification under Federal Rule of Evidence 902(11) is not controlling, as it was decided before *Melendez-Diaz*. A more recent opinion of the D.C. Circuit emphasized the "narrowly circumscribed" nature of the official record exception to Confrontation Clause principles described in *Melendez-Diaz*. *See United States v. Smith*, 640 F.3d 358, 363 (D.C. Cir. 2011).

## CONCLUSION

The Defendants therefore oppose the government's introduction of Iraqi death certificates as self-authenticating documents.


Dated: August 17, 2014                    Respectfully submitted,

                                          /s/ William Coffield
                                          William Coffield (No. 431126)
                                          Coffield Law Group LLP
                                          1330 Connecticut Avenue, N.W., Suite 220
                                          Washington, D.C.  20036
                                          Telephone:  (202) 429-4799
                                          *Counsel for Defendant Evan S. Liberty*

                                          /s/ David Schertler
                                          David Schertler (No. 367203)
                                          Danny Onorato (No. 380043)
                                          Lisa Schertler (No. 430754)
                                          Schertler & Onorato, L.L.P.
                                          575 – 7th Street, N.W., Suite 300 South
                                          Washington, D.C.  20004
                                          Telephone:  (202) 628-4199
                                          *Counsel for Defendant Dustin L. Heard*

                                          /s/ Brian M. Heberlig
                                          Brian M. Heberlig (No. 455381)
                                          Michael J. Baratz (No. 480607)
                                          Bruce C. Bishop (No. 437225)
                                          Linda C. Bailey (No. 985081)
                                          Scott P. Armstrong (No. 993851)
                                          Steptoe & Johnson, LLP
                                          1330 Connecticut Avenue, N.W.
                                          Washington, D.C.  20036-1795
                                          Telephone:  (202) 429-3000
                                          *Counsel for Defendant Paul A. Slough*

/s/  Thomas G. Connolly
Thomas G. Connolly (No. 420416)
Steven A. Fredley (No. 484794)
Jared P. Marx (No. 1008934)
Anne K. Langer (No. 501389)
HARRIS, WILTSHIRE & GRANNIS LLP
1200 Eighteenth St., N.W., Suite 1200
Washington, D.C. 20036
Telephone: (202) 730-1300
Facsimile:  (202) 730-1301
*Counsel for Defendant Nicholas A. Slatten*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2014, I caused the foregoing Defendants'

Objection to the Government's Notice of Intent to Introduce Self-Authenticating Documents

Pursuant to 18 U.S.C. Section 3505 to be filed with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to

Anthony Asuncion
T. Patrick Martin
Christopher Kavanaugh
John Crabb, Jr.
David Mudd
United States Attorney's Office
for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530